## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,**<br>840 Courtland Avenue<br>Park Ridge, IL 60068<br><br>   **Plaintiff,**<br><br>  **vs.**<br><br>**VACATION ACQUISITION,**<br>**LLC, d/b/a**<br>**VACATION EXPRESS**<br>301 Perimeter Center North<br>Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>   **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Case No. _____**<br><br>  **JURY DEMANDED** |

## COMPLAINT

COMES NOW Tech 7 Systems, Inc., and respectfully requests that this Court enforce the intellectual property and contract rights from encroachment and breach by the Defendant, Vacation Acquisition, LLC, doing business as Vacation Express. In support thereof, Plaintiff Tech 7 Systems ("Tech 7") states as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Tech 7 is an Illinois corporation licensing the Tech 7 software product to users throughout the United States and abroad. The Tech 7 software was at one time the premier software platform used by tour companies in the United States and continues to be used by some of the largest tour companies in the country. Tech 7 Systems, Inc. purchased all rights to the

software and is the licensor of the Tech 7 software to a shrinking number of users. Tech 7 depends upon its licensing rights to survive as a viable business.

2.    Tech 7 does business in the District of Columbia.

3.    Defendant Vacation Acquisition, LLC, doing business as Vacation Express ("Vacation Express") is a Delaware limited liability corporation, using the Tech 7 software in its business as a tour company with its principle place of business in Georgia.

4.    Vacation Express actively does business in the District of Columbia, specifically marketing tour products and tour arrangements in the District of Columbia using the Tech 7 software to complete such tour arrangements. Vacation Express advertises in the Washington Post and on the Washington Post website to target residents of the District of Columbia.

5.    On information and belief, hundreds of District of Columbia residents book their tour arrangements through Vacation Express using the Tech 7 software.

6.    This Court has subject matter jurisdiction over the dispute as the parties are from different states and diversity jurisdiction under 28 U.S.C. Section 1332 is satisfied because the matter in controversy exceeds the value of $75,000.

7.    This case also involves the interpretation and application of Federal copyright law, thereby giving this Court Federal Question Jurisdiction, pursuant to 28 U.S.C. Section 1331.

8.    Venue in this District Court is appropriate under the provisions of 28 U.S.C. Section 1391(a) and (c) as the Defendant has significant contacts in the District of Columbia and is therefore subject to personal jurisdiction in the District of Columbia.

### FACTS

9.    On June 26, 1990, a predecessor of Vacation Acquisition, LLC, using the name Vacation Express, Inc. signed a License Agreement with Tech 7 Systems, Inc. agreeing to

2

purchase a license for the Tech 7 System software under terms which were revocable if the Vacation Express and its successor corporations failed to comply with the contract terms. The License Agreement is attached to this Complaint as **Exhibit 1**.

10.    The Tech 7 software was identified in the License Agreement as the "exclusive and confidential property of the SELLER or its licensor. BUYER [Vacation Express] shall have no ownership interest therein other than the aforesaid License to use the software on equipment furnished by the SELLER in the manner specified by SELLER."

11.    The Tech 7 Licensing Agreement also mandates that the BUYER [Vacation Express] shall not permit any modification to the equipment or software furnished by seller without the prior written consent of SELLER." On information and belief, Vacation Express has breached this contract term.

12.    The Tech 7 Licensing Agreement further requires that "BUYER permits SELLER access to the system at BUYER'S site and access via communications link." Despite demand by Tech 7's counsel, Vacation Express has refused to allow Tech 7 access to the Tech 7 System software to determine the scope of the breach of contract rights and the misappropriation of intellectual property rights.

13.    The Tech 7 Licensing Agreement states: "BUYER [Vacation Express] agrees not to employ, in any capacity, either now or in the future, any individual who has been employed by or is employed by SELLER." On information and belief, Vacation Express violated this clause of the License Agreement by retaining Data Plus, Inc. to service the Tech 7 System software, knowing that Data Plus, Inc. was formed by and staffed with former employees of Tech 7 who had proprietary knowledge of the Tech 7 System software.

14.     The License Agreement provides that "in the event of any breach or threatened breach of this Agreement, SELLER shall have the right to terminate BUYER'S license to use all or any portion of the software as designated by SELLER and, in the event of such termination, SELLER shall be entitled to immediate possession of the software."

15.     The License Agreement provides that "SELLER shall have the right to specifically enforce any provision of the Agreement, or to enjoin its breach, and shall have the right to enter BUYER'S premises without being deemed guilty of trespass and remove all software whenever SELLER deems it appropriate to protect its proprietary interest in the software when revoking BUYER's license to use the software."

16.     Vacation Express was purchased by My Travel, PLC, a United Kingdom-based company, in 1998 and made part of MyTravel subsidiary, North American Leisure Group (NALG). Vacation Express continued to use the Tech 7 software.

17.     In 2001, NALG considered using Tech 7 for several of its travel companies in addition to Vacation Express. Tech 7 prepared a proposal and draft contract, but did not win the business and was advised that NALG had selected another vendor and would be discontinuing its use of the Tech 7 system.

18.     The assets of Vacation Express were purchased by FlightServ, Inc. doing business as One Travel Holdings in 2003. To the public, the business continued to use the name Vacation Express. The license agreement for the Tech 7 software did not allow the license to be transferred without the "express written consent" of Tech 7. Neither NALG nor FlightServe, Inc. asked Tech 7 to transfer the license.

19.     The assets of the Vacation Express business were sold by FlightServ, Inc. to Vacation Acquisition, LLC in 2005. Once again, contrary to the terms of the Licensing

4

Agreement, Vacation Acquisition failed to obtain the express written consent of Tech 7 when FlightServ, Inc. transferred the Tech 7 software to Vacation Acquisition, LLC. In December 2007, Tech 7 learned that Vacation Express was still using the Tech 7 software that supposedly had been discontinued in 2001. Vacation Acquisition, LLC continues to operate the business as "Vacation Express" and it continues to use the Tech 7 software, despite lacking any contractual agreement with Tech 7 and despite the clear violations of the License Agreement entered into between Tech 7 and Vacation Express, Inc.

20.    Vacation Express continues to use the software without providing any compensation to Tech 7, denying access to the software by Tech 7 employees, and modifying the software contrary to the terms of the License Agreement. Such actions threaten the viability of Tech 7 and cause substantial harm to Tech 7's financial interests and its intellectual property rights.

21.    On or about January 9, 2008, Tech 7 delivered notice of the breach to Vacation Express. Attached hereto as **Exhibit 2** is the January 9, 2008 demand letter. On February 9, 2008, counsel for Vacation Express contacted the undersigned counsel indicating that notice had been received. Counsel for Vacation Express subsequently notified the representative of Tech 7 that Vacation Express would not allow Tech 7 access to the software, despite the contractual requirements of the License Agreement.

22.    Tech 7 has no other remedy other than filing suit and seeking the injunctive relief and damages that it is entitled to receive under the contract and at law.

23.    The License Agreement provides that Tech 7 shall be entitled to collect reasonable attorney fees incurred to enjoin the breach of the agreement.

## COUNT I - INJUNCTIVE RELIEF – ACCESS TO THE SOFTWARE SYSTEM

24.    The Plaintiff incorporates the allegations contained in paragraphs 1 through 23, as if such allegations are fully set forth herein.

25.    The License Agreement confirms that Tech 7 shall always have access to the Tech 7 software during the business hours of the Buyer, Vacation Express.

26.    Vacation Express has denied Tech 7 access to the system in an effort to prevent Tech 7's discovery of substantial abuse of the software system and misappropriation of Tech 7's intellectual property.

27.    Tech 7 is entitled to an injunction granting access to the software system via communications link during Vacation Express business hours.

28.    Tech 7 is entitled to an injunction granting access to the software system at Vacation Express' business offices during Vacation Express business hours.

**WHEREFORE**, Tech 7 respectfully requests that this Court grant immediate injunctive relief authorizing Tech 7 to access the software system via communications link and/or in person in the offices of Vacation Express and for such other relief as this Court deems just, including attorney fees and costs.

## COUNT II – INJUNCTIVE RELIEF – REMOVAL OF THE SOFTWARE

29.    The Plaintiff incorporates the allegations contained in paragraphs 1 through 28, as if such allegations are fully set forth herein.

30.    The License Agreement confirms that Tech 7 shall have the right to "specifically enforce any provision of the Agreement, or to enjoin its breach, and shall have the right to enter BUYER'S [Vacation Express'] premises without being deemed guilty of trespass and remove all

software whenever SELLER [Tech 7] deems it appropriate to protect its proprietary interest in the software when revoking BUYER'S license to use the software."

31.    Due to Vacation Express' multiple breaches of the License Agreement, Tech 7 terminates the license to use the software and is entitled to remove the software.

**WHEREFORE**, Tech 7 respectfully requests that this Court grant injunctive relief authorizing Tech 7's agents to enter the Vacation Express premises and to remove the Tech 7 software and for such other relief as this Court deems just, including attorney fees and costs.

## COUNT III – BREACH OF CONTRACT

32.    The Plaintiff incorporates the allegations contained in paragraphs 1 through 31, as if such allegations are fully set forth herein.

33.    Vacation Express has breached the License Agreement by:

    a.    Refusing Tech 7 to access the system either via communications link or through inspection at the Vacation Express office.

    b.    Allowing persons unaffiliated with Tech 7 to modify, revise and add to the software, and expand the number of users of the software, without seeking the advance approval of Tech 7.

    c.    Hiring the unauthorized Data Plus contractors to modify the software, knowing that such persons were former employees of Tech 7 Systems, Inc.

    d.    Transferring the software to entities which were not approved to use the software by Tech 7.

    e.    Failing to pay Tech 7 for modifications to the software, with such modification work to be contracted on an hourly rate.

    f.  Failing to pay Tech 7 for additional license fees arising from the expanded use of the software to the estimated 75 users.

    g.  Modifying the Tech 7 software source code to allow Vacation Express to use an unapproved web booking engine and thereby bypassing the Tech 7 booking engine.

34.    Such contract breaches have caused damage and financial injury to Tech 7 in an amount of not less than $1,376,012 – an amount that continues to grow during this litigation.

35.    Tech 7 has incurred and will continue to incur fees for attorneys, legal expenses and court costs arising from Vacation Express' contract breach.

**WHEREFORE**, Tech 7 respectfully requests that this Court award damages to Tech 7 in an amount in excess of $1,376,012, and such other relief as this Court deems just, including attorney fees and costs.

## COUNT IV – MISAPPROPRIATION OF INTELLECTUAL PROPERTY

36.    The Plaintiff incorporates the allegations contained in paragraphs 1 through 35, as if such allegations are fully set forth herein.

37.    Vacation Express has prevented Tech 7 from exercising any of its rights and powers as the owner of the Tech 7 Systems software and appropriated for its own use the software that was developed and owned by Tech 7 and its predecessors in interest.

38.    The Tech 7 software is protected by copyright. The copyright to the version misappropriated by Vacation Express is registered with the Copyright Office of the Library of Congress.

39.    The License Agreement with Vacation Express requires that Vacation Express preserve the copyright protection for the Tech 7 software.

40.     Vacation Express has modified the proprietary product of Tech 7, without the consent of the licensor, to allow it to avoid paying for the Tech 7 support services that accompany the grant of the license.

41.     Vacation Express has been operating as if it were the owner of the intellectual property rather than a mere licensee.

42.     Vacation Express is profiting from the misappropriation of Tech 7's copyrighted software.

43.     Vacation Express is profiting from the misappropriation of Tech 7's intellectual property.

44.     Vacation Acquisition, LLC made no effort to contact Tech 7 to gain approval for the use of Tech 7 software, but sought to misappropriate the software secretly and intentionally from the time of its acquisition of the Vacation Express business in 2005.

45.     Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

46.     The actions taken by Vacation Express were taken deliberately and with malice and entitle Tech 7 to recover compensatory and punitive damages under the contract and at law.

**WHEREFORE**, Tech 7 respectfully requests that this Court award immediate injunctive relief and damages to Tech 7 for compensatory losses in excess of $1,376,012 and award punitive damages in excess of $5 million and such other relief as this Court deems just, including attorney fees and costs.

March 13, 2008                                Respectfully submitted,

                                              SCHERTLER & ONORATO, LLP

                                              David H. Dickieson
                                              D.C. Bar #321778
                                              601 Pennsylvania Avenue, NW
                                              North Building, 9th Floor
                                              Washington, DC 20004
                                              Telephone: (202) 628-4199
                                              Facsimile: (202) 628-4177

                                              *Counsel for Tech 7 Systems, Inc.*

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues so triable.

                                              David H. Dickieson

                                              *Counsel for Tech 7 Systems, Inc.*

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Tech 7 Systems, Inc. | Vacation Acquisition LLC d/b/a Vacation Express |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888 (EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 88888 (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| David H. Dickieson, DC Bar #321778 Schertler & Onorato, LLP 601 Pennsylvania Ave., NW - North Bldg., 9th Flr. Washington DC 20004 | |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

◉ **E. General Civil (Other)**    OR    ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☒ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○  G. *Habeas Corpus/ 2255* | ○  H. *Employment Discrimination* | ○  I. *FOIA/PRIVACY ACT* | ○  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○  K. *Labor/ERISA (non-employment)* | ○  L. *Other Civil Rights (non-employment)* | ○  M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

○ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

28 U.S.C. Sec. 1498 - Copyright infringement and/or breach of contract

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | DEMAND $ $6,376,012.00 | Check YES only if demanded in compla |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒   NO ☐ |

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☐   If yes, please complete related case form.

DATE   3/12/08      SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.      COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.     CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.     CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

DEC-13-07 17:58  FROM-SOLARS USA

503-245-0750  T-129  P.01  F-675

8950 S.W. HAMPTON – SUITE 200
PORTLAND, OREGON 97223
PHONE: (503) 684-1772
FAX: (503) 684-8989

# TECH 7 SYSTEMS INC

SALES AND LICENSING AGREEMENT

BETWEEN

VACATION EXPRESS, INC.

AND

TECH 7 SYSTEMS, INC.

PLAINTIFF'S
EXHIBIT

1

## SALES AND LICENSING AGREEMENT BETWEEN

VACATION    EXPESS , INC.

### AND

### TECH 7 SYSTEMS, INC.

This Sales and Licensing Agreement effective this ___26___ day of
___Dec.___ 19 _7o_, is made between TECH 7 SYSTEMS, INC.
(hereinafter SELLER), and _VACATION EXPRESS, INC._ (hereinafter
BUYER), who agree as follows:

### ARTICLE I.   GRANT AND SCOPE OF THE AGREEMENT

1.  SELLER will provide BUYER with the equipment and software as
described in the proposal sheet attached to the Agreement and
signed by the BUYER.

2.  BUYER shall obtain the following rights in the equipment and
the software:

    (a)  Title and complete ownership of the equipment described
    in the proposal sheet attached to the Agreement and
    signed by the BUYER.

    (b)  A perpetual, single system License, revocable on the
    terms herein stated, to use the software provided by
    SELLER in the manner described in paragraphs 3 and 4 of
    this Article.

3.  The software, its revisions, modifications, and/or additions,
now or hereafter provided by SELLER is the exclusive and
confidential property of SELLER or its licensor.  BUYER shall
have no ownership interest therein other than the aforesaid
License to use the software on equipment furnished by SELLER in
the manner specified by SELLER.   The exclusivity and
confidentiality of SELLER's proprietary interest in the software
must be protected to retain the special and intrinsic value of
the software to SELLER.

4.  BUYER shall not permit the software to be copied in whole or
in part, nor be exhibited, donated, sold or loaned and shall not
permit its accessibility to other than bona fide employees of
BUYER.   BUYER shall take reasonable steps to insure
confidentiality of the software by employees of BUYER using the
software.  BUYER shall not permit removal of any copyright notice
from the software.  BUYER shall not permit any modification to
equipment or software furnished by SELLER without the prior
written consent of SELLER.  BUYER permits SELLER access to the
system at BUYER's site and access via communications link.  Such
access will be granted during BUYER's business hours.  BUYER
agrees not to employ, in any capacity, either now or in the
future, any individual who has been employed by or is employed by
SELLER.

5. This Sales and Licensing Agreement may not be assigned or transferred without the express written consent of SELLER.

## ARTICLE II. SCHEDULE OF IMPLEMENTATION AND PAYMENT

1. BUYER shall take delivery of all software and equipment at such times as the parties may agree, but in no event later than one hundred, twenty (120) days after the date of order.

2. SELLER will order the equipment only after BUYER or its Financing Company has submitted a signed Purchase Order to SELLER and a Down Payment of $7,000.00 of the total Proposal has been paid.

3. Prior to delivery of software and equipment, BUYER will prepare the installation site in accordance to the following:

   (a) A dedicated electrical circuit of 110 Volts AC with a 20 AMP circuit breaker whose receptacle will be located within three (3) feet of the Central Processor Unit (CPU) location.

   (b) A dedicated telephone line, not operating through a switchboard or multi-line facility, will be required for the telecommunication Modem and shall not be more than six (6) feet away from the CPU.

   (c) All cables necessary for communications between terminals, printers and the CPU are strung in accordance with SELLER specifications. Cables (excluding teflon) for peripherals purchased from SELLER will be supplied by SELLER (maximum of 100ft. per peripheral).

   (d) Standard 110 Volt AC 3-Prong grounded outlets will be installed or available within six (6) feet of every computer printer and work station terminal (CRT).

4. Upon delivery of the software and the equipment, listed in the accompanying proposal, SELLER will uncrate, position, complete all cable connectors, for the equipment listed in the accompanying proposal, and bring the equipment and the software to an operational state (this process will be referred to hereinafter as "SETUP").

5. The remaining balance of $20,000.00 of the total accepted Proposal will be paid in four monthly installments of $5,000.00. The first of these monthly installments will commence upon completion of Setup and will be due each consecutive month from the date of Setup until the balance is paid in full.

6. BUYER will be responsible for all reasonable travel expenses incurred by SELLER in the course of installing the system and training BUYER's staff. Travel arrangements are made at SELLER's discretion.

### ARTICLE III. WARRANTIES, DEFECTS, AND MODIFICATIONS.

1. **SELLER** warrants that each item of equipment will perform without malfunction for a period of thirty (30) days from date of Setup at BUYER's site. SELLER reserves the right to replace any hardware specified in the accompanying proposal with either equal or better equipment when deemed necessary.

2. **DEFECTS** are any software functions which the SELLER supplied documentation describes, but the software will not perform. It is the sole warranty obligation of SELLER, to correct any such software Defects reported during the twelve month period following the date of Setup. The correction of Defects will be free of charge to BUYER.

3. **MODIFICATIONS** are any changes or additions to the software which are requested by the BUYER. All modifications will be contracted on an hourly rate.

4. This warranty obligation shall be conditioned upon BUYER's proper use, management and supervision of the equipment and software, including applications programs, audit control, operating methods, office procedures and environment, and establishing all proper checkpoints necessary for the use of the equipment and the software. The equipment and software will not be used outside of the environmental ranges predescribed by SELLER. In no event will any warranty or liability on SELLER survive alteration or modification by anyone other than SELLER, unless SELLER agrees in writing.

5. Help Desk support and additional training at either BUYER's or SELLER's site are optional and not included in this Agreement. All requests for additional training must be requested at least 30 days prior to scheduling. All support, training or warranty services not performed at the BUYER's site, and of a routine nature, shall be performed during the hours of 08:00 a.m. to 05:00 p.m. Pacific Standard Time, Monday through Friday, excluding Saturdays, Sundays and national legal holidays.

## ARTICLE IV. MISCELLANEOUS

1. SELLER makes no express or implied warranties with respect to any equipment or software furnished to BUYER other than specified in the Proposal. BUYER agrees that SELLER's liability under this Agreement for damages shall in no event exceed the total amount paid by BUYER to SELLER for the defective equipment or software. Under no circumstances shall SELLER be liable to BUYER or any other firm or person for any indirect, special or consequential damages, loss of profits, or punitive damages of any character including, without limitation, damages for loss of good will, work stoppage, or any and all other damages or losses, even if SELLER has been advised of the possiblity of such damages or losses.

2. BUYER grants to SELLER a security interest in and to all equipment sold to BUYER to secure the obligations of BUYER to SELLER under this Agreement, SELLER shall have all the rights of a secured party under the Uniform Commercial Code with respect to such equipment. SELLER may file a copy of the Agreement as a financing statement under ORS 79.4020 (1) or its statutory counterpart in any other state. However, when payment is rendered in full, full title shall pass to the BUYER without SELLER having a security interest in the equipment.

3. In the event of any breach or threatened breach of this Agreement, each party must notify the other party by certified mail. Either party then has 30 days to remedy the situation. Further, in the event of any breach or threatened breach of this Agreement, SELLER shall have the right to terminate BUYER's license to use all or any portion of the software as designated by SELLER and, in the event of such termination, SELLER shall be entitled to immediate possession of the software.

4. SELLER shall have the right to specifically enforce any provision of the Agreement, or to enjoin its breach, and shall have the right to enter BUYER's premises without being deemed guilty of trespass and remove all software whenever SELLER deems it appropriate to protect its proprietary interest in the software when revoking BUYER's license to use the software.

5. SELLER shall be relieved of any performance obligation under this Agreement, when prevented by an act of God, civil disturbance, strike, work stoppage, transportation interruption, power failure, laws, regulations, ordinances, act or orders of any government agency and its officials or any other cause which is not under the control of SELLER.

6.   In the event of litigation to enforce any provision of this Agreement, or for damages, or to enjoin any breach hereof, the prevailing party shall be entitled to reasonable attorney's fees and expenses included in such proceedings, both at trial and on appeal.

7.   If any provision of this Agreement is held to be nonenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

8.   This Agreement is made under the provisions of the laws of the State of Oregon and shall be interpreted under the laws thereof.

9.   BUYER agrees to pay all local, state or excise taxes required by law, including any personal property tax assessed on the equipment and software after its delivery.  BUYER will bear all freight charges unless specified in the accompanying proposal.

10.   BUYER and SELLER agree that this Agreement integrates all the negotiations and agreements between parties; that neither party shall be bound by any representation or commitment unless in writing and signed by an authorized representative of both parties; neither party has authorized its agents or representatives to make any representations or commitments not contained herein or otherwise reduced to writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as to the day, month and year below written.

| SELLER | BUYER |
|---|---|
| TECH 7 SYSTEMS, INC. | VACATION EXPRESS, INC. |
| BY: | BY: Kevin Hernandez |
| PRINT NAME: Aaron Gibby | PRINT NAME: KEVIN HERNANDEZ |
| TITLE: PRESIDENT | TITLE: PRESIDENT |
| DATE: 01/20/80 | DATE: 10/26/90 |

# S|O  SCHERTLER & ONORATO, L.L.P.

| | | |
|---|---|---|
| **David Schertler** | **Vincent H. Cohen, Jr.** | **Claire Morris Clark** |
| *DC & IL Bars* | *DC, MD & NJ Bars* | *VA Bar* |
| **Danny C. Onorato** | **David H. Dickieson** | **Veronica Renzi Jennings** |
| *DC & CA Bars* | *DC, MD, VA & PA Bars* | *MD Bar* |
| | **Lisa Fishberg** | **Habib F. Ilahi** |
| | *DC, MD & NY Bars* | *DC & TX Bars* |
| | **Mark E. Schamel** | **Michael Starr** |
| | *DC, MD & NY Bars* | *DC Bar* |
| | **Robert J. Spagnoletti** | **Peter V. Taylor** |
| | *DC, NJ, NY & TX Bars* | *DC Bar* |

January 9, 2008

Rene Jongmans
President
Vacation Express
Suite 400
3495 Piedmont Rd, Building 11
Atlanta, GA 30305

     Re:    Demand for Compensation for Misappropriation of Tech 7 Software.
             <u>Amount demanded:  $1,376,012 payable immediately.</u>

Dear Mr. Jongmans:

     This law firm represents Tech 7 Systems, Inc., the owner of the tour operator software system known as SpeedRes or Tech 7. It has recently come to our attention that your company, Vacation Acquisition, LLC., a Delaware Corporation, incorporated January 11, 2005 is illegally using Tech 7 software.

     Our client has searched all of the relevant records and has found no contract authorizing your company to use the software, nor has it found any record that any firm with authorization to use the software requested that it transfer the right to use the software to your company, or that it agreed to such a license transfer.  It appears that your misappropriation of the Tech 7 software was intentional and secretive, and designed to avoid compensating the owner of the Tech 7 software.

     We therefore demand that you:

1.   Immediately cease using the software until a licensing agreement can be completed.

2.   Contact me at 202-824-1222 to make arrangements for us to access your system electronically in order to ascertain the extent of the illegal use of my client's software.

3.   Pay damages in the amount of $1,376,012 to compensate us for your use of the Tech 7 software to date. We have used certain assumptions in calculating the $1,376,012 claim.  The damages were calculated according to the following formula and assumptions:

     a.   75 licenses at $1,000 per license plus $5,000 (standard Tech 7 pricing): $80,000.

ATTORNEYS AT LAW   |   601 Pennsylvania Avenue, N.W.   |   202.628.4199
                                North Building, 9th Floor           202.628.4177 *fax*
                                  Washington, D.C. 20004-2601    www.schertlerlaw.com



PLAINTIFF'S EXHIBIT

2

b.  Loss of income from Vacation Express using their own web booking engine which required them to modify Tech 7 source code. 65% of 62,500 bookings per year = 40,625 X $4.00 per booking times 3 years = $487,500.

c.  Loss of custom software income caused by Vacation Express illegally modifying software with their own employees. Estimated at 2 employees working full time for 3 years = 12,480 hours X profit of 62.50 per hour = $780,000.

d.  Loss of support fee income of 18% of $80,000 = $14,400 X 3 years = $43,200 X 66% (33% cost of providing support) $28,512.

e.  Reduction in intellectual property rights in the SpeedRes/Tech 7 system caused by the misappropriation of those rights by Vacation Acquisition LLC in the design and development of their own system. Unknown.

f.  Punitive damages for deliberately misappropriating the software. Unknown.

If you have information that indicates that our assumptions are incorrect, please provide us with that information. Of necessity we have had to make certain assumptions, based upon publicly available information to calculate the estimated damage from your company's misappropriation of the software. If you fail to comply with this demand letter, we reserve the right to adjust the amount of damages claimed in any subsequent litigation to suit the facts which are discovered about your misuse of my client's technology.

If you continue to misappropriate the Tech 7 technology or ignore this demand letter, we will take all necessary legal action to enforce our client's rights, including seeking a temporary restraining order, an injunction, compensatory and punitive damages and attorney fees resulting from the need to protect our client's interest in the Tech 7 software.

Very truly yours,

David H. Dickieson
*Attorney for Tech 7 Systems, Inc.*

2

TRANSMISSION VERIFICATION REPORT

```
TIME : 01/09/2008 17:20
NAME : SCHERTLERANDONORATO
FAX  : 2026288770
TEL  : 2026288770
SER.# : BROB6J440065
```

```
DATE,TIME          01/09  17:19
FAX NO./NAME       914042481237
DURATION           00:00:55
PAGE(S)            03
RESULT             OK
MODE               STANDARD
                   ECM
```

# SCHERTLER & ONORATO, L.L.P.

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO: Rene Jongmans | FROM: David H. Dickieson |
| COMPANY: Vacation Acquisition | DATE: JANUARY 9, 2008 |
| FAX NUMBER: 404-248-1237 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 404-636-8362 | REFERENCE NUMBER: |
| RE: DICKIESON, R. | SENDER'S PHONE NUMBER: 202-824-1222 |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS: