## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TECH 7 SYSTEMS, INC.,** | ) | |
| 840 Courtland Avenue | ) | |
| Park Ridge, IL  60068 | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Case No. _____** |
| | ) | |
| **VACATION ACQUISITION,** | ) | |
| **LLC, d/b/a** | ) | |
| **VACATION EXPRESS** | ) | |
| 301 Perimeter Center North | ) | |
| Suite 500 | ) | |
| Atlanta, GA  30346 | ) | |
| **Resident Agent:** | ) | |
| Corporate Service Company | ) | |
| 2711 Centerville Road, Suite 400 | ) | |
| Wilmington, DE  19808 | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION FOR EMERGENCY INJUNCTIVE RELIEF
## – TEMPORARY RESTRAINING ORDER

COMES NOW Tech 7 Systems, Inc. ("Tech 7"), and respectfully moves this Court for an order granting Plaintiff access to its own software system in the possession of the Defendant, Vacation Acquisition, LLC.  In support thereof, Tech 7 states as follows:

1.    Plaintiff Tech 7 is an Illinois corporation licensing the Tech 7 software product to users throughout the United States and abroad.  Tech 7 Systems, Inc. purchased all rights to the software and is the licensor of the Tech 7 software.  Tech 7 depends upon its licensing rights to survive as a viable business.  Defendant Vacation Acquisitions, LLC., doing business as Vacation Express ("Vacation Express") is a Delaware limited liability corporation, using the Tech 7 software in its business as a tour company.

2.      On June 26, 1990 a predecessor of Vacation Acquisitions, LLC, using the name Vacation Express, Inc. signed a License Agreement with Tech 7 Systems, Inc. agreeing to purchase a license for the Tech 7 System software under terms which were revocable if the Vacation Express and its successor corporations failed to comply with the contract terms.

3.      The Tech 7 software was identified in the License Agreement as the "exclusive and confidential property of the SELLER or its licensor. BUYER [Vacation Express] shall have no ownership interest therein other than the aforesaid License to use the software on equipment furnished by the SELLER in the manner specified by SELLER." The Tech 7 Licensing Agreement also mandates that the BUYER [Vacation Express] shall not permit any modification to the equipment or software furnished by seller without the prior written consent of SELLER." On information and belief, Vacation Express has breached this contract term. The Tech 7 Licensing Agreement further requires that "BUYER permits SELLER access to the system at BUYER'S site and access via communications link." Despite demand by Tech 7's counsel, Vacation Express has refused to allow Tech 7 access to the Tech 7 system software to determine the scope of the breach of contract rights and the misappropriation of intellectual property rights.

4.      Vacation Express continues to use the software without providing any compensation to Tech 7, denying access to the software by Tech 7 employees, and modifying the software contrary to the terms of the License Agreement. Such actions threaten the viability of Tech 7 and cause substantial harm to Tech 7's financial interests and its intellectual property rights.

5.      On or about January 9, 2008, Tech 7 delivered notice of the breach to Vacation Express. Counsel for Vacation Express subsequently notified the representative of Tech 7, that

Vacation Express would not allow Tech 7 access to the software, despite the contractual requirements of the License Agreement.

6.    On February 24, 2008, Vacation Express, by its counsel, responded in writing and failed to allow Tech 7 to have access to the software that had been misappropriated by Vacation Express, even though it acknowledged that it was using the software.

7.    Tech 7 has no other remedy other than seeking the injunctive relief requested herein.

8.    The License Agreement provides that Tech 7 shall be entitled to collect reasonable attorney fees incurred to enjoin the breach of the agreement. Vacation Express has denied Tech 7 access to the system, in an effort to prevent Tech 7's discovery of substantial abuse of the software system and misappropriation of Tech 7's intellectual property. Tech 7 is entitled to an injunction granting access to the software system via communications link and/or at the Vacation Express business office during Vacation Express business hours.

Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright. The License Agreement mandates that Tech 7 be granted immediate access to its own software system. The grounds for this motion are stated in detail in the concurrently-filed Memorandum of Law in Support of the Motion.

WHEREFORE, Tech 7 respectfully requests that this Court award immediate injunctive relief allowing Tech 7 to have immediate access to the Vacation Express software and such other relief as this Court deems just, including attorney fees and costs.

March 13, 2008                                    Respectfully submitted,

                                                  SCHERTLER & ONORATO, LLP

                                                  David H. Dickieson
                                                  D.C. Bar #321778
                                                  601 Pennsylvania Avenue, NW
                                                  North Building, 9th Floor
                                                  Washington, DC 20004
                                                  Telephone: (202) 628-4199
                                                  Facsimile: (202) 628-4177

                                                  *Counsel for Tech 7 Systems, Inc.*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 65.1(a), the undersigned counsel hereby certifies that actual notice of the time of making this Application for Temporary Restraining Order and copies of all pleadings and papers filed in the action to date or to be presented to the court at the hearing have been furnished, on this 13th day of March, 2008, to the adverse party through the following methods of communication:

Via e-mail and telefax to:

Eric J. Stenshoel
Counsel for Vacation Acquisition, LLC.
Curtis, Mallet-Prevost, Colt & Mosle, LLP New York, NY 10178-0061
Tel: (212) 696-8878
Fax: (917) 368-8978
e-mail: estenshoel@curtis.com

Via e-mail to :

Rene Jongmans
President, Vacation Acquisition, LLC
'renej@vacationexpress.com'

David H. Dickieson

# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,** ) | |
| 840 Courtland Avenue ) | |
| Park Ridge, IL 60068 ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Civil Case No.** _____ |
| ) | |
| **VACATION ACQUISITION,** ) | |
| **LLC, d/b/a** ) | |
| **VACATION EXPRESS** ) | |
| 301 Perimeter Center North ) | |
| Suite 500 ) | |
| Atlanta, GA 30346 ) | |
| **Resident Agent:** ) | |
| Corporate Service Company ) | |
| 2711 Centerville Road, Suite 400 ) | |
| Wilmington, DE 19808 ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff, Tech 7 Systems, Inc. ("Tech 7") has petitioned for a temporary restraining order granting Tech 7 access to its own proprietary software in the hands of purported licensee, Vacation Express. The Licensing Agreement mandates that Vacation Express provide Tech 7 access to the software and it further provides that Tech 7 is entitled to injunctive relief specifically enforcing the right to access to the software. Such injunctive relief is the vital first step to allow Tech 7 to reclaim its proprietary interests in the software and determine the extent of the contract breach. Thus, the Petition for a temporary restraining order is narrowly drawn to allow just this first step which will not have any negative impact on the business of Vacation Express.

## LEGAL STANDARD FOR INJUNCTIVE RELIEF

A plaintiff may demonstrate its entitlement to preliminary injunctive relief by showing that (1) it has a substantial likelihood of success on the merits, (2) it would suffer irreparable injury if injunctive relief is denied; (3) injunctive relief would not substantially injure the opposing party or other third parties; and (4) injunctive relief would further the public interest. *Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060, at 1066 (D.C. Cir. 1998). "These factors interrelate on a sliding scale and must be balanced against each other." *Davenport v. AFL-CIO*, 166 F.3d 356, 360-61 (D.C. Cir. 1999). Thus, "[a]n injunction may be justified … where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995). Tech 7's injunctive request for access to its own software satisfies all four prongs of this standard.

## FACTS

The following summary of facts is supported by the concurrently-filed Declaration of Richard M. Dickieson, President of Tech 7 Systems, Inc.

1.      On June 26, 1990, a predecessor of Vacation Acquisition, LLC, using the name Vacation Express, Inc. signed a License Agreement with Tech 7 Systems, Inc., an Oregon company, agreeing to purchase a license for the Tech 7 System software under terms which were revocable if the Vacation Express and its successor corporations failed to comply with the contract terms. The License Agreement is attached to this Complaint as Exhibit 1.

2.      The Plaintiff, Tech 7 Systems, Inc., an Illinois corporation, has succeeded to all the rights of the Oregon company with regard to the Tech 7 software.

2

3.     The Tech 7 software was identified in the License Agreement as the "exclusive and confidential property of the SELLER or its licensor.  BUYER [Vacation Express] shall have no ownership interest therein other than the aforesaid License to use the software on equipment furnished by the SELLER in the manner specified by SELLER."

4.     The Tech 7 Licensing Agreement also mandates that the BUYER [Vacation Express] shall not permit any modification to the equipment or software furnished by seller without the prior written consent of SELLER."  On information and belief, Vacation Express has breached this contract term.

5.     The Tech 7 Licensing Agreement further requires that "BUYER permits SELLER access to the system at BUYER'S site and access via communications link."  Despite demand by Tech 7's counsel, Vacation Express has refused to allow Tech 7 access to the Tech 7 System software to determine the scope of the breach of contract rights and the misappropriation of intellectual property rights.

6.     The Tech 7 Licensing Agreement states: "BUYER [Vacation Express] agrees not to employ, in any capacity, either now or in the future, any individual who has been employed by or is employed by SELLER."  On information and belief, Vacation Express violated this clause of the License Agreement by retaining Data Plus, Inc. to service the Tech 7 System software, knowing that Data Plus, Inc. was staffed with former employees of Tech 7 who had proprietary knowledge of the Tech 7 System software.

7.     The License Agreement provides that "in the event of any breach or threatened breach of this Agreement, SELLER shall have the right to terminate BUYER'S license to use all or any portion of the software as designated by SELLER and, in the event of such termination, SELLER shall be entitled to immediate possession of the software."

3

8.    The License Agreement provides that "SELLER shall have the right to specifically enforce any provision of the Agreement, or to enjoin its breach, and shall have the right to enter BUYER'S premises without being deemed guilty of trespass and remove all software whenever SELLER deems it appropriate to protect its proprietary interest in the software when revoking BUYER's license to use the software." Rather than use this self-help remedy, Plaintiff invokes the power of this Court.

9.    Vacation Express was purchased by My Travel, PLC, a United Kingdom-based company, in 1998 and made a part of a MyTravel subsidiary, North American Leisure Group (NALG). Vacation Express continued to use the Tech 7 software.

10.    In 2001, NALG considered using Tech 7 for several of its travel companies in addition to Vacation Express. Tech 7 prepared a proposal and draft contract, but did not win the business and was advised – falsely - that NALG had selected another vendor and would be discontinuing its use of the Tech 7 system.

11.    The assets of Vacation Express were purchased by FlightServ, Inc. doing business as One Travel Holdings in 2003. To the public, the business continued to use the name Vacation Express. The license agreement for the Tech 7 software did not allow the license to be transferred without the "express written consent" of Tech 7. Neither NALG or FlightServe, Inc. asked Tech 7 to transfer the license. On information and belief, FlightServ, Inc. continued to use the Tech 7 system without authority from Tech 7.

12.    The assets of the Vacation Express business were later sold by FlightServ, Inc. to Vacation Acquisition, LLC in 2005. Once again, contrary to the terms of the Licensing Agreement, Vacation Acquisition failed to obtain the express written consent of Tech 7 when FlightServ, Inc. transferred the Tech 7 software to Vacation Acquisition, LLC. In December

4

2007, Tech 7 learned that Vacation Express was still using the Tech 7 software that supposedly had been discontinued in 2001. Vacation Acquisition, LLC continues to operate the business as "Vacation Express" and it continues to use the Tech 7 software, despite lacking any contractual agreement with Tech 7 and despite the clear violations of the License Agreement entered into between Tech 7 and Vacation Express, Inc.

13.     Vacation Express continues to use the software without providing any compensation to Tech 7, denying access to the software by Tech 7 employees, and modifying the software contrary to the terms of the License Agreement. Such actions threaten the viability of Tech 7 and cause substantial harm to Tech 7's financial interests and its intellectual property rights.

14.     On or about January 9, 2008, Tech 7 delivered notice of the breach to Vacation Express. The January 9, 2008 demand letter is attached hereto as Exhibit 2. On February 9, 2008, counsel for Vacation Express contacted the undersigned counsel indicating that notice had been received. Counsel for Vacation Express subsequently notified the representative of Tech 7 that Vacation Express would not allow Tech 7 access to the software, despite the contractual requirements of the License Agreement.

15.     Tech 7 has no other remedy other than filing suit and seeking the injunctive relief and damages that it is entitled to receive under the contract and at law.

16.     The License Agreement provides that Tech 7 shall be entitled to collect reasonable attorney fees incurred to enjoin the breach of the agreement.

17.     The Tech 7 software is registered with the United States Copyright Office of the Library of Congress.

## DISCUSSION

### I.    TECH 7 Is Likely to Prevail on the Merits

Tech 7 has three strong arguments on the merits in this litigation.  First, Tech 7 has a contractual right to unfettered access to its own software.  To the extent that Vacation Express is claiming a contractual right to use the Tech 7 System, that contract unambiguously grants Tech 7 the right to access to the system at any time during business hours.  Attached to this Memorandum as Exhibit 1 is the original contract between Tech 7 and Vacation Express.  The contract states:

> The software, its revisions, modifications, and/or additions, now or hereafter provided by SELLER is the exclusive and confidential property of SELLER or its licensor.  BUYER shall have no ownership interest therein other than the aforesaid License to use the software on equipment furnished by SELLER in the manner specified by SELLER.

The Contract also states:

> BUYER shall not permit any modification to equipment or software furnished by SELLER without the prior written consent of SELLER.  BUYER permits SELLER access to the system at BUYER's site and access via communications link.  Such access will be granted during BUYER's business hours.

These contractual terms absolutely undermine the Vacation Express defense that access cannot be granted to Tech 7 because Vacation Express has modified the Tech 7 software to create its own proprietary product.  Vacation Express is contractually obligated to allow Tech 7 unfettered access to the software during business hours.

Second, Tech 7 has alleged that the Defendant does not have *any* contractual rights to the Tech 7 System because no transfer of Tech 7 technology from the original Vacation Express to the ultimate user Vacation Acquisition was ever approved by Tech 7 Systems, Inc. The original contract states:

6

> BUYER shall not permit the software to be copied in whole or in part, nor be exhibited, donated, sold or loaned and shall not permit its accessibility to other than bona fide employees of BUYER.

.... and...

> This Sales and Licensing Agreement may not be assigned or transferred without the express written consent of SELLER.

Vacation Acquisition has no contractual right to use the Tech 7 software system, much less to preclude the owner of the system to access it.

Even assuming that the transfer is somehow valid (which is strongly disputed), the transferee – Vacation Acquisition does not gain any greater rights to the product than was held by the transferor. The transferor rights were limited by the clause that allowed Tech 7 to have access to the software system at any time during business hours.

Third, Tech 7 is the owner of the Copyright for the software product improperly used by Defendant. The Defendant can point to no agreement which grants it any right to use the copyrighted material. Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

In light of these strong arguments on the merits, Tech 7 is likely to succeed on the merits and this temporary injunctive relief is warranted.

## II.   The Equities Strongly Favor The Entry Of Temporary Relief

### A.   Tech 7 Will Be Irreparably Harmed In The Absence Of Temporary Injunctive Relief.

Tech 7's software system is the company's only significant asset. The Defendant has taken that asset and appropriated it for its own use without compensation to Tech 7. If the

Plaintiff is not allowed to control its own licensed software, its viability as a company will be destroyed.

Tech 7 must have access to its own software before it can evaluate the extent of misuse and misappropriation of the Tech 7 software in this case. In the absence of Temporary Injunctive relief, Tech 7's protection of its rights under the contract and under copyright law will be irreparably harmed. It will be unable to quantify the misuse of the software, nor will Tech 7 be able to calculate the damages that are owed to it by Vacation Express without access to the software system.

**B.    The Balance of Hardships Favors Tech 7 Systems, Inc.**

At present, Vacation Express has acknowledged that it is using the Tech 7 software platform and is refusing Tech 7 access to the system because such access would reveal Vacation Express's proprietary modifications to the system.

This basis for denying access does not constitute a valid hardship for Vacation Express. First, the original contract clearly spelled out that any modifications to the Tech 7 software must be approved by Tech 7 and the modification work was to be done by Tech 7's service personnel. The contract does not envision that Vacation Express would have exclusive proprietary rights to any modification of the software. Vacation Express cannot justify denying Tech 7 access to the system by claiming that it committed another contract violation that it wants to keep secret.

Second, even assuming that Vacation Express has some proprietary interest in its improper modifications to the Tech 7 system, Tech 7 is prepared to sign a protective order to protect the proprietary modifications from further disclosure or use. Vacation Express has refused to provide access to Tech 7 under any circumstances, including pursuant to a protective order.

In sum, Vacation Express will not suffer any valid hardship from the grant of access to the software by the owner of the software. To the extent that Vacation Express suffers any hardship at all, it will be the hardship of recognizing that its misappropriation could lead to legal and equitable remedies against it.

### C.    The Public Interest Favors Tech 7.

The Public has a vested interest in protecting contractual and intellectual property rights. The public does not have a vested interest in protecting software users who misappropriate software systems without compensating the owner of the system. Our system of commerce depends upon the protection of intellectual property rights. Vacation Express has acknowledged that it is using the Tech 7 system without abiding by the requirements of the Tech 7 licensing agreement. The licensing agreement sought to protect copyrights and contractual rights for the benefit of the licensor, Tech 7 Systems, Inc. The public has a vital interest in protecting those persons who create intellectual property from pirating by companies who purport to contract with the licensor, but then fail to abide by those contracts.

## **CONCLUSION**

For the foregoing reasons, this Court should compel Vacation Express to grant immediate access to Tech 7 Systems to the software.

March 13, 2008

Respectfully submitted,

SCHERTLER & ONORATO, LLP

_____
David H. Dickieson
D.C. Bar #321778
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177

*Counsel for Tech 7 Systems, Inc.*

10

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 65.1(a), the undersigned counsel hereby certifies that actual notice of the time of making this Application for Temporary Restraining Order and copies of all pleadings and papers filed in the action to date or to be presented to the court at the hearing have been furnished, on this 13th day of March, 2008, to the adverse party through the following methods of communication:

Via e-mail and telefax to:

Eric J. Stenshoel
Counsel for Vacation Acquisition, LLC.
Curtis, Mallet-Prevost, Colt & Mosle, LLP New York, NY 10178-0061
Tel: (212) 696-8878
Fax: (917) 368-8978
e-mail: estenshoel@curtis.com

Via e-mail to :

Rene Jongmans
President, Vacation Acquisition, LLC
'renej@vacationexpress.com'

David H. Dickieson

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TECH 7 SYSTEMS, INC.,** | ) | **No.** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **In Support of Application for** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| **VACATION ACQUISITION, LLC** | ) | |
| **d/b/a Vacation Express** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF RICHARD M. DICKIESON, PRESIDENT
## TECH 7 SYSTEMS, INC.

Pursuant to 28 U.S.C. Section 1746, I, Richard M. Dickieson, declare under

penalty of perjury under the laws of the United States as follows:

1.     I am the President and owner of Tech 7 Systems, Inc., and I am an adult

over the age of 18, residing in Park Ridge, Illinois.

2.     I have reviewed the facts underlying this request for a Temporary

Restraining Order and can verify that the Exhibit 1 attached to the Complaint and to the

Application for a Temporary Restraining Order is a true copy of the License Agreement

between Tech 7 Systems, Inc. and Vacation Express, Inc. – the two entities who are

predecessor entities of the Plaintiff and Defendant in this suit – held in the files of Tech 7

Systems, Inc..

3.     To the extent that I lack personal knowledge of any facts asserted herein,

my statements are based on my knowledge of business records of Tech 7 and a review of

publicly available documents relating to Vacation Acquisition, LLC.

4.      On June 26, 1990, a predecessor of Vacation Acquisition, LLC, using the name Vacation Express, Inc. signed a License Agreement with Tech 7 Systems, Inc. agreeing to purchase a license for the Tech 7 System software under terms which were revocable if Vacation Express and its successor corporations failed to comply with the contract terms. The License Agreement is attached to this Complaint as Exhibit 1.

5.      The Tech 7 software was identified in the License Agreement as the "exclusive and confidential property of the SELLER or its licensor. BUYER [Vacation Express] shall have no ownership interest therein other than the aforesaid License to use the software on equipment furnished by the SELLER in the manner specified by SELLER."

6.      The Tech 7 Licensing Agreement also mandates that the BUYER [Vacation Express] shall not permit any modification to the equipment or software furnished by seller without the prior written consent of SELLER." On information and belief, Vacation Express has breached this contract term.

7.      The Tech 7 Licensing Agreement further requires that "BUYER permits SELLER access to the system at BUYER'S site and access via communications link." Despite demand by Tech 7's counsel, Vacation Express has refused to allow Tech 7 access to the Tech 7 System software to determine the scope of the breach of contract rights and the misappropriation of intellectual property rights.

8.      The Tech 7 Licensing Agreement states: "BUYER [Vacation Express] agrees not to employ, in any capacity, either now or in the future, any individual who has been employed by or is employed by SELLER." On information and belief, Vacation Express violated this clause of the License Agreement by retaining Data Plus, Inc. to

service the Tech 7 System software, knowing that Data Plus, Inc. was staffed with former employees of Tech 7 who had proprietary knowledge of the Tech 7 System software.

9.      The License Agreement provides that "in the event of any breach or threatened breach of this Agreement, SELLER shall have the right to terminate BUYER'S license to use all or any portion of the software as designated by SELLER and, in the event of such termination, SELLER shall be entitled to immediate possession of the software."

10.     The License Agreement provides that "SELLER shall have the right to specifically enforce any provision of the Agreement, or to enjoin its breach, and shall have the right to enter BUYER'S premises without being deemed guilty of trespass and remove all software whenever SELLER deems it appropriate to protect its proprietary interest in the software when revoking BUYER's license to use the software."

11.     Vacation Express was purchased by My Travel, PLC, a United Kingdom-based company, in 1998 and made part of MyTravel subsidiary, North American Leisure Group (NALG). Vacation Express continued to use the Tech 7 software.

12.     In 2001, NALG considered using Tech 7 for several of its travel companies in addition to Vacation Express. Tech 7 prepared a proposal and draft contract, but did not win the business and was advised that NALG had selected another vendor and would be discontinuing its use of the Tech 7 system.

13.     The assets of Vacation Express were purchased by FlightServ, Inc. doing business as One Travel Holdings in 2003. To the public, the business continued to use the name Vacation Express. The license agreement for the Tech 7 software did not allow

the license to be transferred without the "express written consent" of Tech 7. Neither NALG or FlightServe, Inc. asked Tech 7 to transfer the license.

14.     The assets of the Vacation Express business were sold by FlightServ, Inc. to Vacation Acquisition, LLC in 2005. Once again, contrary to the terms of the Licensing Agreement, Vacation Acquisition failed to obtain the express written consent of Tech 7 when FlightServ, Inc. transferred the Tech 7 software to Vacation Acquisition, LLC. In December 2007, Tech 7 learned that Vacation Express was still using the Tech 7 software that supposedly had been discontinued in 2001. Vacation Acquisition, LLC continues to operate the business as "Vacation Express" and it continues to use the Tech 7 software, despite lacking any contractual agreement with Tech 7 and despite the clear violations of the License Agreement entered into between Tech 7 and Vacation Express, Inc.

15.     Vacation Express continues to use the software without providing any compensation to Tech 7, denying access to the software by Tech 7 employees, and modifying the software contrary to the terms of the License Agreement. Such actions threaten the viability of Tech 7 and cause substantial harm to Tech 7's financial interests and its intellectual property rights.

16.     On or about January 9, 2008, Tech 7 delivered notice of the breach to Vacation Express. On February 9, 2008, counsel for Vacation Express contacted the undersigned counsel indicating that notice had been received. Counsel for Vacation Express subsequently notified the representative of Tech 7 that Vacation Express would not allow Tech 7 access to the software, despite the contractual requirements of the License Agreement.

17.    Tech 7 has no other remedy other than filing suit and seeking the injunctive relief and damages that it is entitled to receive under the contract and at law.

18.    The License Agreement provides that Tech 7 shall be entitled to collect reasonable attorney fees incurred to enjoin the breach of the agreement.


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Executed on March _10_, 2008
Park Ridge, Illinois

Richard M. Dickieson
President
Tech 7 Systems, Inc.

CERTIFICATE OF SERVICE

Pursuant to Local Rule 65.1(a), the undersigned counsel hereby certifies that actual notice of the time of making this Application for Temporary Restraining Order and copies of all pleadings and papers filed in the action to date or to be presented to the court at the hearing have been furnished, on this 13th day of March, 2008, to the adverse party through the following methods of communication:

Via e-mail and telefax to:

Eric J. Stenshoel
Counsel for Vacation Acquisition, LLC.
Curtis, Mallet-Prevost, Colt & Mosle, LLP New York, NY 10178-0061
Tel: (212) 696-8878
Fax: (917) 368-8978
e-mail: estenshoel@curtis.com

Via e-mail to :

Rene Jongmans
President, Vacation Acquisition, LLC
'renej@vacationexpress.com'


David H. Dickieson

# TECH 7 SYSTEMS INC

8950 S.W. HAMPTON – SUITE 200
PORTLAND, OREGON 97223
PHONE: (503) 684-1772
FAX: (503) 684-8989

### SALES AND LICENSING AGREEMENT

### BETWEEN

VACATION EXPRESS, INC.

### AND

### TECH 7 SYSTEMS, INC.

---

✳   *TRAVEL AUTOMATION SPECIALISTS*   ✳



### SALES AND LICENSING AGREEMENT BETWEEN

VACATION  EXPRESS, INC.

### AND

### TECH 7 SYSTEMS, INC.

This Sales and Licensing Agreement effective this ___26___ day of
___Dec.___ 19 _9o_, is made between TECH 7 SYSTEMS, INC.
(hereinafter SELLER), and _VACATION EXPRESS, INC_ (hereinafter
BUYER), who agree as follows:

### ARTICLE I.  GRANT AND SCOPE OF THE AGREEMENT

1. SELLER will provide BUYER with the equipment and software as
described in the proposal sheet attached to the Agreement and
signed by the BUYER.

2. BUYER shall obtain the following rights in the equipment and
the software:

    (a) Title and complete ownership of the equipment described
    in the proposal sheet attached to the Agreement and
    signed by the BUYER.

    (b) A perpetual, single system License, revocable on the
    terms herein stated, to use the software provided by
    SELLER in the manner described in paragraphs 3 and 4 of
    this Article.

3. The software, its revisions, modifications, and/or additions,
now or hereafter provided by SELLER is the exclusive and
confidential property of SELLER or its licensor. BUYER shall
have no ownership interest therein other than the aforesaid
License to use the software on equipment furnished by SELLER in
the manner specified by SELLER. The exclusivity and
confidentiality of SELLER's proprietary interest in the software
must be protected to retain the special and intrinsic value of
the software to SELLER.

4. BUYER shall not permit the software to be copied in whole or
in part, nor be exhibited, donated, sold or loaned and shall not
permit its accessibility to other than bona fide employees of
BUYER. BUYER shall take reasonable steps to insure
confidentiality of the software by employees of BUYER using the
software. BUYER shall not permit removal of any copyright notice
from the software. BUYER shall not permit any modification to
equipment or software furnished by SELLER without the prior
written consent of SELLER. BUYER permits SELLER access to the
system at BUYER's site and access via communications link. Such
access will be granted during BUYER's business hours. BUYER
agrees not to employ, in any capacity, either now or in the
future, any individual who has been employed by or is employed by
SELLER.

5. **This Sales and Licensing Agreement may** not be assigned or transferred without the express written consent of SELLER.

## ARTICLE II.  SCHEDULE OF IMPLEMENTATION AND PAYMENT

1. BUYER shall take delivery of all software and equipment at such times as the parties may agree, but in no event later than one hundred, twenty (120) days after the date of order.

2. SELLER will order the equipment only after BUYER or its Financing Company has submitted a signed Purchase Order to SELLER and a Down Payment of $7,000.00 of the total Proposal has been paid.

3. Prior to delivery of software and equipment, BUYER will prepare the installation site in accordance to the following:

   (a) A dedicated electrical circuit of 110 Volts AC with a 20 AMP circuit breaker whose receptacle will be located within three (3) feet of the Central Processor Unit (CPU) location.

   (b) A dedicated telephone line, not operating through a switchboard or multi-line facility, will be required for the telecommunication Modem and shall not be more than six (6) feet away from the CPU.

   (c) All cables necessary for communications between terminals, printers and the CPU are strung in accordance with SELLER specifications. Cables (excluding teflon) for peripherals purchased from SELLER will be supplied by SELLER (maximum of 100ft. per peripheral).

   (d) Standard 110 Volt AC 3-Prong grounded outlets will be installed or available within six (6) feet of every computer printer and work station terminal (CRT).

4. Upon delivery of the software and the equipment, listed in the accompanying proposal, SELLER will uncrate, position, complete all cable connectors, for the equipment listed in the accompanying proposal, and bring the equipment and the software to an operational state (this process will be referred to hereinafter as "SETUP").

5. The remaining balance of $20,000.00 of the total accepted Proposal will be paid in four monthly installments of $5,000.00. The first of these monthly installments will commence upon completion of Setup and will be due each consecutive month from the date of Setup until the balance is paid in full.

6. BUYER will be responsible for all reasonable travel expenses incurred by SELLER in the course of installing the system and training BUYER's staff. Travel arrangements are made at SELLER's discretion.

## ARTICLE III.  WARRANTIES, DEFECTS, AND MODIFICATIONS.

1.  SELLER warrants that each item of equipment will perform without malfunction for a period of thirty (30) days from date of Setup at BUYER's site.  SELLER reserves the right to replace any hardware specified in the accompanying proposal with either equal or better equipment when deemed necessary.

2.  DEFECTS are any software functions which the SELLER supplied documentation describes, but the software will not perform.  It is the sole warranty obligation of SELLER, to correct any such software Defects reported during the twelve month period following the date of Setup.  The correction of Defects will be free of charge to BUYER.

3.  MODIFICATIONS are any changes or additions to the software which are requested by the BUYER.  All modifications will be contracted on an hourly rate.

4.  This warranty obligation shall be conditioned upon BUYER's proper use, management and supervision of the equipment and software, including applications programs, audit control, operating methods, office procedures and environment, and establishing all proper checkpoints necessary for the use of the equipment and the software.  The equipment and software will not be used outside of the environmental ranges predescribed by SELLER.  In no event will any warranty or liability on SELLER survive alteration or modification by anyone other than SELLER, unless SELLER agrees in writing.

5.  Help Desk support and additional training at either BUYER's or SELLER's site are optional and not included in this Agreement.  All requests for additional training must be requested at least 30 days prior to scheduling.  All support, training or warranty services not performed at the BUYER's site, and of a routine nature, shall be performed during the hours of 08:00 a.m.  to 05:00 p.m. Pacific Standard Time, Monday through Friday, excluding Saturdays, Sundays and national legal holidays.

## ARTICLE IV.  MISCELLANEOUS

1.  SELLER makes no express or implied warranties with respect to any equipment or software furnished to BUYER other than specified in the Proposal.  BUYER agrees that SELLER's liability under this Agreement for damages shall in no event exceed the total amount paid by BUYER to SELLER for the defective equipment or software. Under no circumstances shall SELLER be liable to BUYER or any other firm or person for any indirect, special or consequential damages, loss of profits, or punitive damages of any character including, without limitation, damages for loss of good will, work stoppage, or any and all other damages or losses, even if SELLER has been advised of the possiblity of such damages or losses.

2.  BUYER grants to SELLER a security interest in and to all equipment sold to BUYER to secure the obligations of BUYER to SELLER under this Agreement, SELLER shall have all the rights of a secured party under the Uniform Commercial Code with respect to such equipment.  SELLER may file a copy of the Agreement as a financing statement under ORS 79.4020 (1) or its statutory counterpart in any other state.  However, when payment is rendered in full, full title shall pass to the BUYER without SELLER having a security interest in the equipment.

3.  In the event of any breach or threatened breach of this Agreement, each party must notify the other party by certified mail.  Either party then has 30 days to remedy the situation. Further, in the event of any breach or threatened breach of this Agreement, SELLER shall have the right to terminate BUYER's license to use all or any portion of the software as designated by SELLER and, in the event of such termination, SELLER shall be entitled to immediate possession of the software.

4.  SELLER shall have the right to specifically enforce any provision of the Agreement, or to enjoin its breach, and shall have the right to enter BUYER's premises without being deemed guilty of trespass and remove all software whenever SELLER deems it appropriate to protect its proprietary interest in the software when revoking BUYER's license to use the software.

5.  SELLER shall be relieved of any performance obligation under this Agreement, when prevented by an act of God, civil disturbance, strike, work stoppage, transportation interruption, power failure, laws, regulations, ordinances, act or orders of any government agency and its officials or any other cause which is not under the control of SELLER.

6. In the event of litigation to enforce any provision of this Agreement, or for damages, or to enjoin any breach hereof, the prevailing party shall be entitled to reasonable attorney's fees and expenses included in such proceedings, both at trial and on appeal.

7. If any provision of this Agreement is held to be nonenforceable, the remaining provisions of this Agreement shall remain in full force and effect.

8. This Agreement is made under the provisions of the laws of the State of Oregon and shall be interpreted under the laws thereof.

9. BUYER agrees to pay all local, state or excise taxes required by law, including any personal property tax assessed on the equipment and software after its delivery. BUYER will bear all freight charges unless specified in the accompanying proposal.

10. BUYER and SELLER agree that this Agreement integrates all the negotiations and agreements between parties; that neither party shall be bound by any representation or commitment unless in writing and signed by an authorized representative of both parties; neither party has authorized its agents or representatives to make any representations or commitments not contained herein or otherwise reduced to writing and signed by both parties.

IN WITNESS WHEREOF, the parties hereto have executed this agreement as to the day, month and year below written.

SELLER

TECH 7 SYSTEMS, INC.

BY:

PRINT NAME: _Aaron Giday_

TITLE: _PRESIDENT_

DATE: _05/20/80_

BUYER

_VACATION EXPRESS, INC._

BY: _Kevin Hernandez_
KEVIN HERNANDEZ

PRINT NAME:

TITLE: _PRESIDENT_

DATE: _10/26/90_

# SCHERTLER & ONORATO, L.L.P.

| David Schertler | Vincent H. Cohen, Jr. | Claire Morris Clark |
| DC & IL Bars | DC, MD & NJ Bars | VA Bar |
| | | |
| Danny C. Onorato | David H. Dickieson | Veronica Renzi Jennings |
| DC & CA Bars | DC, MD, VA & PA Bars | MD Bar |
| | | |
| | Lisa Fishberg | Habib F. Ilahi |
| | DC, MD & NY Bars | DC & TX Bars |
| | | |
| | Mark E. Schamel | Michael Starr |
| | DC, MD & NY Bars | DC Bar |
| | | |
| | Robert J. Spagnoletti | Peter V. Taylor |
| | DC, NJ, NY & TX Bars | DC Bar |

January 9, 2008

Rene Jongmans
President
Vacation Express
Suite 400
3495 Piedmont Rd, Building 11
Atlanta, GA 30305

Re:    Demand for Compensation for Misappropriation of Tech 7 Software.
       <u>Amount demanded: $1,376,012 payable immediately.</u>

Dear Mr. Jongmans:

This law firm represents Tech 7 Systems, Inc., the owner of the tour operator software system known as SpeedRes or Tech 7. It has recently come to our attention that your company, Vacation Acquisition, LLC., a Delaware Corporation, incorporated January 11, 2005 is illegally using Tech 7 software.

Our client has searched all of the relevant records and has found no contract authorizing your company to use the software, nor has it found any record that any firm with authorization to use the software requested that it transfer the right to use the software to your company, or that it agreed to such a license transfer. It appears that your misappropriation of the Tech 7 software was intentional and secretive, and designed to avoid compensating the owner of the Tech 7 software.

We therefore demand that you:

1. Immediately cease using the software until a licensing agreement can be completed.

2. Contact me at 202-824-1222 to make arrangements for us to access your system electronically in order to ascertain the extent of the illegal use of my client's software.

3. Pay damages in the amount of $1,376,012 to compensate us for your use of the Tech 7 software to date. We have used certain assumptions in calculating the $1,376,012 claim. The damages were calculated according to the following formula and assumptions:

   a.    75 licenses at $1,000 per license plus $5,000 (standard Tech 7 pricing): $80,000.

ATTORNEYS AT LAW | 601 Pennsylvania Avenue, N.W. | 202.628.4199
North Building, 9th Floor | 202.628.4177 fax
Washington, D.C. 20004-2601 | www.schertlerlaw.com



PLAINTIFF'S
EXHIBIT
2

b.    Loss of income from Vacation Express using their own web booking engine which required them to modify Tech 7 source code. 65% of 62,500 bookings per year = 40,625 X $4.00 per booking times 3 years = $487,500.

c.    Loss of custom software income caused by Vacation Express illegally modifying software with their own employees. Estimated at 2 employees working full time for 3 years = 12,480 hours X profit of 62.50 per hour = $780,000.

d.    Loss of support fee income of 18% of $80,000 = $14,400 X 3 years = $43,200 X 66% (33% cost of providing support) $28,512.

e.    Reduction in intellectual property rights in the SpeedRes/Tech 7 system caused by the misappropriation of those rights by Vacation Acquisition LLC in the design and development of their own system. Unknown.

f.    Punitive damages for deliberately misappropriating the software. Unknown.

If you have information that indicates that our assumptions are incorrect, please provide us with that information. Of necessity we have had to make certain assumptions, based upon publicly available information to calculate the estimated damage from your company's misappropriation of the software. If you fail to comply with this demand letter, we reserve the right to adjust the amount of damages claimed in any subsequent litigation to suit the facts which are discovered about your misuse of my client's technology.

If you continue to misappropriate the Tech 7 technology or ignore this demand letter, we will take all necessary legal action to enforce our client's rights, including seeking a temporary restraining order, an injunction, compensatory and punitive damages and attorney fees resulting from the need to protect our client's interest in the Tech 7 software.

Very truly yours,

David H. Dickieson
*Attorney for Tech 7 Systems, Inc.*

```
TRANSMISSION VERIFICATION REPORT
```

```
                                    TIME  : 01/09/2008 17:20
                                    NAME  : SCHERTLERANDONORATO
                                    FAX   : 2026288770
                                    TEL   : 2026288770
                                    SER.# : BROB6J440065
```

```
DATE,TIME           01/09  17:19
FAX NO./NAME        914042481237
DURATION            00:00:55
PAGE(S)             03
RESULT              OK
MODE                STANDARD
                    ECM
```

# S|O  SCHERTLER & ONORATO, L.L.P.

## FACSIMILE TRANSMITTAL SHEET

| TO: Rene Jongmans | FROM: David H. Dickieson |
|---|---|
| COMPANY: Vacation Acquisition | DATE: JANUARY 9, 2008 |
| FAX NUMBER: 404-248-1237 | TOTAL NO. OF PAGES INCLUDING COVER: 3 |
| PHONE NUMBER: 404-636-8362 | REFERENCE NUMBER: |
| RE: DICKIESON, R. | SENDER'S PHONE NUMBER: 202-824-1222 |

☐ URGENT    ☐ FOR REVIEW    ☐ PLEASE COMMENT    ☐ PLEASE REPLY    ☐ PLEASE RECYCLE

NOTES/COMMENTS:

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **TECH 7 SYSTEMS, INC.,** | ) | **No.** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER TO SHOW CAUSE AND** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| **VACATION ACQUISITION, LLC,** | ) | |
| **d/b/a Vacation Express** | ) | |
| | ) | |
| **Defendant.** | ) | **Hearing: __[date; time]__** |

After considering the moving papers filed in this action, the Court finds (1) that this is a proper case for issuance of an order to show cause, and (2) that, unless the Court issues a temporary restraining order, plaintiff, Tech 7 Systems, Inc. will suffer irreparable injury before the matter can be heard on formal notice.

**IT IS ORDERED** that:

1. Defendant, Vacation Express, appear before this Court at the above date and time to show cause why a preliminary injunction should not be issued enjoining it from continued use of Tech 7 System software contrary to the terms of the license agreement and without knowledge or approval of the owner of the software.

2. Pending the hearing on the order to show cause, defendant, Vacation Express, its agents, officers, employees, and representatives, and all persons acting in concert or participating with them, be enjoined from preventing Tech 7 Systems, Inc. access to the software system in use by Vacation Express, such access to be allowed by remote electronic access, and by physical inspection of the Vacation Express offices, with the assistance of Vacation Express, if necessary.

3. A copy of the complaint, declaration, and memorandum of points and authorities, together with a copy of this order to show cause and temporary restraining order, be served on defendant no later than _____ [at least two days before hearing].

4. No Bond shall be required to be posted by Tech 7 Systems, Inc., as mandating access to Tech 7's software is not likely to create any irreparable harm to the Defendant Vacation Express.

Date: _____          _____
                                        Judge, United States District Court

Copies to:

David H. Dickieson
Schertler & Onorato, LLP
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC 20004
*Counsel for Plaintiff*

Eric J. Stenshoel
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
New York, NY 10178-0061
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

TECH 7 SYSTEMS, INC,

     PLAINTIFF,

    VS.

VACATION ACQUISITION
     LLC

   D/B/A
VACATION EXPRESS

                        08 0436

PURSUANT TO LOCAL RULE 65.1(a) THE UNDERSIGNED COUNSEL CERTIFIES THAT ACTUAL NOTICE OF THE TIME OF MAKING THIS APPLICATION FOR TEMPORARY RESTRAINING ORDER AND COPIES OF ALL PLEADINGS AND PAPERS FILED IN THE ACTION TO DATE OR TO BE PRESENTED TO THE COURT AT THE HEARING HAVE BEEN FURNISHED ON THIS 13TH DAY OF MARCH 2008 TO THE ADVERSE PARTY VIA E-MAIL TO ERIC J. STENSHOEL, COUNSEL FOR VACATION ACQUISITION LLC ESTENSHOEL@CURTIS.COM

AND TO RENE JONGMANS PRESIDENT VACATION ACQUISITION RENEJ@VACATIONEXPRESS.COM

COUNSEL FOR PLAINTIFF Daniel H. Dodd