UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,**<br>840 Courtland Avenue<br>Park Ridge, IL 60068<br><br>                      Plaintiff,<br><br>vs.<br><br>**VACATION ACQUISITION, LLC, d/b/a**<br>**VACATION EXPRESS**<br>301 Perimeter Center North, Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>                      Defendant. | Civil Case No. 08-0436 |

**MEMORANDUM OF POINTS AND AUTHORITIES OF VACATION ACQUISITION, LLC, d/b/a VACATION EXPRESS IN OPPOSITION TO TECH 7 SYSTEMS, INC.'S MOTION FOR EMERGENCY INJUNCTION RELIEF – TEMPORARY RESTRAINING ORDER**

Without waiving its defense that this Court lacks personal jurisdiction over defendant Vacation Acquisition, LLC, d/b/a Vacation Express ("Vacation Express"), Vacation Express appears for the limited purpose of contesting Tech 7 Systems, Inc.'s Motion for Emergency Injunctive Relief – Temporary Restraining Order.

## I. FACTUAL STATEMENT

In 1990, Vacation Express entered into the Sales and Licensing Agreement ("SLA") with Tech 7 Systems, Inc. ("Tech 7"). At that time, for a price of $20,000, Vacation Express acquired a perpetual license to Tech 7's software, "SpeedRes." Declaration of Gantt Cookson, ¶ 3. Initially, Vacation Express used Tech 7 for support services including making custom modifications in the software for Vacation Express. Id., ¶ 4. Beginning in 1995, Tech 7

began to lose programmers. As a result, the performance of the software suffered. Modifications made by Tech 7 contained numerous bugs. Tech 7 would fix one thing and another thing would not work. There were many quality programming issues. For example, new products and custom modifications failed to operate in accordance with specifications. Id., ¶ 5.

Vacation Express attempted in 1995 and 1996 to get Tech 7 to improve its service and make workable modifications to the software. Id., ¶ 6. For example, Tech 7's products failed to interface with airline computer systems, which was critical for Vacation Express's booking processes. Id., ¶ 6.

Due to Tech 7's inability to properly modify the software, Vacation Express in early 1997 made arrangement with a company known as Data Plus to provide ongoing support.[1] Id., ¶ 8. Among other significant modifications made to the software is code allowing web portal access. Given Vacation Express's experience with Tech 7's efforts, Vacation Express had no confidence that Tech 7 could properly write such code, which was critical to the functioning of Vacation Express's business. Id., ¶ 8.

Tech 7 was aware in 1997 and for a period of years thereafter that Vacation Express was no longer using Tech 7 for maintenance or modifications. Because Vacation Express was no longer using Tech 7 for maintenance and modifications, in or around early 1997, Vacation Express stopped paying Tech 7's monthly support fee. Id., ¶ 8.

In or about 1998 or 1999, a Tech 7 representative, Rhoda Harwood, began calling Vacation Express to get Vacation Express to return to Tech 7 for maintenance and modification

---

[1] The SLA does not prohibit modifications by another vendor or service provider. It simply says that the licensee must get the consent of Tech 7 (which consent Tech 7 must presumably give if reasonably requested) and that outside modifications are not covered by the Tech 7 warranty. See fuller discussion under section II. B. below discussing Tech 7's Likelihood of Success On the Merits.

work. Id., ¶ 10. Ms. Harwood repeatedly called for about four years. Vacation Express refused to take up support service again from Tech 7. Id., ¶ 10.

At some point, Tech 7 was bought by Logibro of Montreal. In 1998, Vacation Express was bought by North American Leisure Group ("NALG"), which was using Logibro for other computer services. In 1999, NALG decided to investigate the possibility of returning to Tech 7 for maintenance and modification services. At that time, Tech 7 spent a week investigating the changes that Vacation Express had made to the software since the mid-1990s. Ultimately, North American Leisure Group decided not to use Tech 7 for maintenance and modification services. Id., ¶ 11.

Since 2003, Vacation Express has been performing all of the maintenance and modifications of the software with its own employees. Id., ¶ 13.

From the time that Vacation Express stopped using Tech 7 support and modification services in 1996-97 until the receipt of the demand letter from Tech 7 in January 2008, there was never any claim by Tech 7 that Vacation Express was in breach of its obligations under the 1990 license agreement. Id., ¶ 14.

## II. **LEGAL ARGUMENT**

There is no basis for Tech 7's motion for the extraordinary relief of a temporary restraining order. It is the movant's obligation to justify by a clear showing the court's use of injunctive relief. Cornish v. Dudas, 2008 WL 577068 at * 2 (Feb. 25, 2008 D.D.C.). In deciding whether to grant a motion for a temporary restraining order, the movant must demonstrate 1) a substantial likelihood of success on the merits, 2) that the movant would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction. Cornish,

2008 WL 577068 at * 2; see National Football League Players' Ass'n v. Pro-Football, Inc., 849 F.Supp. 1, 1-2 (D.D.C. 1993).

### A. Tech 7 Is Not Facing Irreparable Injury

Ordinarily, a movant must demonstrate some injury to secure an injunction. Cornish, 2008 WL 577068 at * 2. Where a party has made no showing of irreparable injury, injunctive relief may be unavailable regardless of the showing on the other factors. Cornish, 2008 WL 577068 at * 2 (citing City Fed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995). In Cornish, the movant failed to show that he would suffer any irreparable harm and his motion was denied. Generally, the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim. Cornish, 2008 WL 577068 at * 2 (citing Wis. Gas Co. v. Fed. Energy Regulatory Comm'n, 758 F.2d 669, 674 (D.D.Cir. 1985). Furthermore, there is no irreparable harm, where movant has an adequate remedy at law. Cornish, 2008 WL 577068 at * 3.

"If a movant has failed to prosecute its claim for injunctive relief promptly, and it has no reasonable explanation for its delay, [a] district court should be reluctant to award relief." National Propane Gas Ass'n v. U.S. Dept. of Homeland Security, 2008 WL 274890, *2 (Jan. 20, 2008, D.D.C)(citing Natural Resources Defense Counsel v. Pena, 147 F.3d 1012, 1026 (D.C. Cir. 1998).

Tech 7 argues that the irreparable injury that it faces is "its inability to quantify the misuse of its software" and inability "to calculate damages." Tech 7's Memorandum of Law in Support of Motion for Temporary Restraining Order ("Tech 7 Mem."), p. 8. This, of course, is not an argument that it will suffer immediate irreparable harm, but rather, an argument that plaintiff should be allowed to take early discovery on these issues. Tech 7 suffers no irreparable harm by waiting for access to the evidence in accordance with the Federal Rules because Tech 7

has an adequate remedy at law, namely, the entry of a discovery order in the due course of the litigation.

During the telephonic hearing with the Court held on March 17, 2008, Tech 7's counsel also argued that it would be irreparably harmed if its other clients learned Tech 7 does not have instant access to one of its licensee's software. This harm is speculative on Tech 7's part and should be discounted. It is also a curious form of irreparable harm, as it is caused by the alleged failure of legal procedure in this case as opposed to some activity that Vacation Express is undertaking to harm Tech 7. Even so, the SLA does not provide Tech 7 with the contractual right to a temporary restraining order, and Tech 7 is reduced to arguing that other clients may discover that Tech 7 cannot enforce a right it does not have.

Additionally, while Tech 7 may not have "instant" access, it has not demonstrated why it needs such immediate access. Vacation Express has offered – both on the record at the telephonic hearing with the Court and in subsequent discussions among counsel -- to take a snapshot of the software as it exists so that the evidence Tech 7 says it needs access to now is preserved for the pendency of the case. In addition, Vacation Express has promised not to make further modifications to the software during the pendency of this litigation. Declaration of Gantt Cookson, ¶ 13. Accordingly, the status quo is maintained, Tech 7 is not prejudiced, and plaintiff preserves its legal remedy in standard discovery procedures.

Other than these two meager efforts to muster a shade of irreparable harm, Tech 7 clearly has not succeeded at demonstrating any irreparable injury.

Nor has Tech 7 demonstrated why it has not brought this motion for a temporary restraining order sooner. Tech 7 was aware from 1997 forward that Vacation Express was not using Tech 7 to maintain and modify the software. Its failure to enforce its rights at that time,

when the alleged breach occurred, demonstrates its lack of entitlement to injunctive relief today. While Tech 7 claims it understood from NALG that it would not be using the software, this assertion does not rise to the level of compelling evidence without further discovery. Additionally, Tech 7 sent its demand letter to Vacation Express on January 9, 2008. See Complaint, Exhibit 2. It waited over two months to bring this motion indicating there is no irreparable harm that would result from its failure to obtain immediate access.

Because Tech 7 has failed to demonstrate irreparable harm – whatever the merits of any other prong of the test for injunction relief – Tech 7's motion for a temporary restraining order must be denied. See Cornish, 2008 WL 577068 at * 2 (citing City Fed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738, 747 (D.C. Cir. 1995).

### B. Tech 7 Does Not Have a Likelihood of Success on the Merits

Tech 7 does not have a likelihood of success on the merits, a second factor it must establish for injunctive relief. Vacation Express has a number of meritorious defenses to the claims brought in the Complaint.

As a first defense, the SLA does not provide that modifications to the software result in a breach of the SLA. Rather, the only effect of unauthorized modifications is the lapse of the warranty under the agreement. SLA Article 1, ¶ 4 states that "BUYER shall not permit any modification to equipment or software furnished by SELLER without the prior written consent of SELLER." See Complaint, Exhibit 1. However, this paragraph does not articulate a remedy for the seller. Article III, entitled "Warranties, Defects, and Modifications," does prescribe a remedy for unauthorized modifications to the software. There it is stated, "[i]n no event will any warranty or liability on SELLER survive alteration or modification by anyone other than SELLER, unless SELLER agrees in writing." SLA Article III, ¶ 4. This provision anticipates that there will be modifications by other vendors and allows a sign-off procedure by

Tech 7 for Vacation Express to preserve its warranty. The result of Vacation Express's failure to obtain Tech 7's approval for a modification is not breach, but rather, the lapse of the warranty. Under the duty of good faith and fair dealing implied in contracts, Tech 7 could not unreasonably withhold its consent to a modification to the software. As a result, there is no merit to Tech 7's claims for breach or misappropriation.

Tech 7 also does not have a likelihood of success on the merits for the simple reason that Vacation Express has terminated the SLA. Tech 7 failed to perform it obligations under the SLA and accordingly the SLA was properly terminated. Article III, ¶ 2 of the SLA provides that Tech 7 will correct any software defects. See Complaint, Exhibit 1. Because Tech 7 continually failed to correct the defects in its software and was unable to modify the software to accommodate functions critical to Vacation Express's business, such as access to the airline reservation system, Amadeus, the SLA was terminated. Vacation Express stopped paying Tech 7's monthly support fee in or about 1997. Additionally, in numerous telephone calls with Tech 7's representative beginning in 1998 and continuing thereafter, Vacation Express made it clear that it would not again use Tech 7's support services.

Because the contract was terminated in 1997, Tech 7 has no basis to seek enforcement of the SLA. To the extent that the transfer of ownership of Vacation Express may be deemed to have violated the SLA, and we disagree that such transfers violated the agreement, these changes in ownership occurred after the SLA was terminated. Accordingly, the likelihood is that Vacation Express will succeed on the merits of this litigation.

Even if Vacation Express's discontinuation of Tech 7's services and use of Data Plus to make modifications is viewed as a breach of the SLA, those breaches arose in 1997. Tech 7 failed to sue on those breaches and is barred by the applicable statutes of limitations from

bringing such a suit as the one it has brought. The SLA is governed by the laws of Oregon. See SLA Article IV, ¶ 8. In Oregon, actions for breach of contract are governed by a six year statute of limitations. ORS 12.080(1); Neff v. Jackson County, 67 P.3d 977, 981 (Or.App. 2003). As a result, the statute of limitations expired on Tech 7's claims for breach of contract and misappropriation of intellectual property in 2003.

Additionally, given that Vacation Express has made significant changes to the software, without protest from Tech 7 at the time, Tech 7 is now estopped from bringing this lawsuit. Vacation Express has made numerous changes to an 18 year old software platform to meet changing times (including, for example, providing for web portal access to the internet). Vacation Express has a proprietary interest in these changes. Accordingly, Tech 7 cannot now argue, many years after the fact, that it is entitled to millions of dollars in past damages and a licensing fee for software that belongs to Vacation Express.

As a result of all of the above, Tech 7 has no likelihood of success on the merits.

### C. A Temporary Restraining Order Would Substantially Injure Vacation Express

The third factor that Tech 7 must demonstrate to obtain a temporary restraining order is that such an order would not substantially injure another party. In this case, a temporary restraining order allowing Tech 7 access to Vacation Express's currently operating software would have a number of substantial injurious impacts to Vacation Express.

The software has numerous code additions that belong to Vacation Express. Among these are two very significant changes: 1) code that allows the software to access the airline reservation computer system, Amadeus, and 2) code that allows the software to access the internet.

Provision of access to Tech 7 will allow Tech 7 to obtain Vacation Express's proprietary information. While such an injury might be curable through an attorneys-eyes-only protective order, such an order is unworkable in this situation. In discussions among counsel, Tech 7's counsel proposed that it would be Tech 7's technical personnel who would access the software. Certainly, Tech 7's counsel does not have the technical expertise to perform such an operation.

A second harm that would befall Vacation Express is the possibility of damage to its software while being accessed by Tech 7. Vacation Express relies upon the software to fulfill critical aspects of its business and damage to the software would deleteriously affect significant areas of its on-going business. Vacation Express cannot afford to have Tech 7 damage the software through its negligence. The remedy for this is the one proposed by Vacation Express during the telephonic hearing with the Court, namely, that Vacation Express provide Tech 7 with a snapshot of the software as it exists today.

For all of these reasons, Tech 7's motion should be denied on the basis that provision of instant access will substantially harm Vacation Express.

### D.     The Public Interest Would Not Be Furthered By the Temporary Restraining Order

It is difficult to conceive how the public interest is furthered by the relief of providing Tech 7 instant access to Vacation Express's software. As noted above, Tech 7 will suffer no irreparable injury by pursuing the normal discovery methods under the Federal Rules. If anything, the public interest in orderly discovery would be vindicated by a denial of this motion for a temporary restraining order. Additionally, for all of the reasons articulated above, Tech 7 no longer has a right to access the software. There has been no breach. The SLA has been properly terminated. Tech 7 is estopped from bringing this lawsuit. As a result, Tech 7

cannot claim, as it does, that the public has a vital interest in protecting the contractual and intellectual property rights of this contract, which is no longer effective.

### CONCLUSION

For all of the reasons stated above, Vacation Express respectfully requests that the Court deny the motion of Tech 7 for a temporary restraining order allowing it instant access to the software. A copy of a proposed order is attached.

Dated: March 19, 2008                           Respectfully submitted,

**CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**


_____/s/_____
Samuel Rosenthal
D.C. Bar # 329516
1200 New Hampshire Avenue, N.W.
Suite 430
Washington, D.C. 20036
Tel: (202) 452-7373
Fax: (202) 452-7333

Turner P. Smith
Gary L. Cutler
101 Park Avenue
New York, NY 10178
Tel: (212) 696-6000
Fax: (212) 697-1559
Email: tsmith@curtis.com
          gcutler@curtis.com

cc:

David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C. 20004
Tel.: (202) 628-4199
Fax: (202) 628-4177
Email: ddickieson@schertlerlaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Memorandum of Points and Authorities of Vacation Acquisition, LLC, d/b/a Vacation Express in Opposition to Tech 7 Systems, Inc.'s Motion for Emergency Injunctive Relief – Temporary Restraining Order; Declaration of Gantt Cookson in Opposition to Tech 7 Systems, Inc.'s Motion for Emergency Injunctive Relief – Temporary Restraining Order and proposed Order has been provided by email and the CM/ECF system to David H. Dickieson, Esq., ddickieson@schertlerlaw.com on March 19, 2008.

March 19, 2008  
New York, NY

                          /s/  
Gary L. Cutler  
Curtis, Mallet-Prevost, Colt  
 & Mosle LLP  
101 Park Avenue  
New York, NY  10178  
Tel:  (212) 696-6000  
Fax:  (212) 697-1559  
Email:  gcutler@curtis.com

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| TECH 7 SYSTEMS, INC.,<br>840 Courtland Avenue<br>Park Ridge, IL 60068<br><br>        Plaintiff,<br><br>   vs.<br><br>VACATION ACQUISITION, LLC, d/b/a<br>**VACATION EXPRESS**<br>301 Perimeter Center North, Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  **Civil Case No.  08-0436**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DECLARATION OF GANTT COOKSON IN OPPOSITION
TO TECH 7 SYSTEMS, INC.'S MOTION FOR
<u>EMERGENCY INJUNCTIVE RELIEF – TEMPORARY RESTRAINING ORDER</u>**

  Pursuant to 28 U.S.C. § 1746, I, Gantt Cookson, declare under the penalty of perjury:

  1. I am Vice President Operations of defendant Vacation Express.

  2. I make this Declaration in Opposition to Tech 7 Systems, Inc.'s Motion for Emergency Injunctive Relief – Temporary Restraining Order and am fully familiar with the facts contained herein.

  3. In 1990, Vacation Express entered into the Sales and Licensing Agreement with Tech 7 Systems, Inc. ("Tech 7").  At that time, Vacation Express acquired a perpetual license to Tech 7's software known as "SpeedRes."  Vacation Express paid $20,000 for this perpetual license.

4. Initially, Vacation Express used Tech 7 for support services. The support included maintenance and making custom modifications for Vacation Express in the software. Because of ongoing customized modifications, each user of Tech 7 software gradually developed its own version of the software.

5. Beginning in or about 1995, Tech 7 began to lose programmers and the performance of the software suffered. Modifications made by Tech 7 contained numerous bugs. Tech 7 would fix one thing and another thing would not work. There were many quality programming issues. For example, new products and custom modifications failed to operate in accordance with specifications.

6. In or about 1995 and 1996, I met with Tech 7 to resolve problems they had with software that would run off of the SpeedRes platform and were designed to interface with Worldspan and Amadeus, the airline computer systems. This access was necessary to allow travel agents to book Vacation Express products.

7. Despite repeated efforts, I was unable to get Tech 7 to improve its service or to provide workable modifications to the software.

8. As a result, in or about early 1997, I began to make arrangements with a company known as Data Plus to provide ongoing support instead of Tech 7. Data Plus developed code to allow Vacation Express access to Amadeus. Among other significant modifications made to the software is code allowing web portal access. Given Vacation Express's experience with Tech 7's efforts, we had no confidence that Tech 7 could properly write such code, which was critical to the functioning of Vacation Express's business.

9. Because Vacation Express was no longer using Tech 7 for maintenance and modifications, in or around early 1997, Vacation Express stopped paying Tech 7's monthly support fee.

10. A year or two later, in or about 1998 or 1999, Rhoda Harwood, a representative of Tech 7, began calling to persuade Vacation Express to return to Tech 7 for maintenance and modification work. Ms. Harwood called me repeatedly over a four year period for this purpose. On behalf of Vacation Express, I repeatedly declined to take up again this service from Tech 7.

11. At some point, Tech 7 was bought by Logibro of Montreal. In 1998, Vacation Express was bought by North American Leisure Group, which was using Logibro for other computer services. In 1999, North American Leisure Group decided to investigate the possibility of returning to Tech 7 for maintenance and modification services. At that time, Tech 7 spent a week investigating the changes that Vacation Express had made to the software since the mid-1990s. Ultimately, North American Leisure Group decided not to use Tech 7 for maintenance and modification services.

12. Since 2003, Vacation Express has been doing all maintenance and modifications of the software with its own employees.

13. Currently, and for the purposes of this litigation, Vacation Express has offered to take a snapshot of the code as it exists today. It also will not make any modifications during the pendency of the litigation.

14. From the time that Vacation Express stopped using Tech 7 support and modification services in 1996-97 until the receipt of the demand letter from Tech 7 in January 2008, there was never any claim by Tech 7 that Vacation Express was in breach of its obligations

under the 1990 Sale and License Agreement.

    I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 19, 2008.
Atlanta, Georgia

_____
Gantt Cookson
Vacation Express

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,**<br>840 Courtland Avenue<br>Park Ridge, IL 60068<br><br>                    Plaintiff,<br><br>        vs.<br><br>**VACATION ACQUISITION, LLC, d/b/a**<br>**VACATION EXPRESS**<br>301 Perimeter Center North, Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Case No.  08-0436 |

## ORDER

The parties having been heard by telephonic conference call on March 17, 2008 and after a review of all papers submitted both for and against Plaintiff Tech 7 Systems, Inc's Motion For Emergency Injunctive Relief – Temporary Restraining Order,

**IT IS HERBY ORDERED** that:

Plaintiff's motion for a temporary restraining order is denied.

Date: _____                    _____
                                                              Judge, United States District Court

-2-

Copies to:

David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C. 20004
Tel.: (202) 628-4199
Fax: (202) 628-4177
Email: ddickieson@schertlerlaw.com

Turner P. Smith
Gary L. Cutler
Curtis, Mallet, Prevost, Colt
 & Mosle LLP
101 Park Avenue
New York, NY 10178
Tel: (212) 696-6000
Fax: (212) 697-1559
Email: tsmith@curtis.com
       gcutler@curtis.com