**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TECH 7 SYSTEMS, INC.,** | ) | **Civil Case No. 08-0436** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **In Support of Application for** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| **VACATION ACQUISITION, LLC** | ) | |
| **d/b/a Vacation Express** | ) | |
| | ) | |
| **Defendant.** | ) | |

**REPLY OF TECH 7 SYSTEMS, INC. IN SUPPORT OF THE
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to Court Order, the Plaintiff, Tech 7 Systems, Inc. (Tech 7) hereby replies to the

Opposition Brief submitted by Vacation Acquisition, LLC. (Vacation Express).  The Plaintiff's

request for a temporary restraining order (TRO) involves the very narrow request for relief – The

Court is asked to confirm the contractual right of immediate access to the Tech 7 software in the

hands of Vacation Express, rather than being forced to wait to gain access through discovery in

this case.

It is undisputed that Tech 7 has the *contractual right* of immediate access in the

governing License Agreement.  Vacation Express primarily maintains that Tech 7's contractual

right is somehow forfeited in litigation because the delayed and potentially more restrictive

discovery rules will ultimately provide Tech 7 with access.  Alternatively, Vacation Express

asserts that it is entitled to permanent free use of Tech 7's proprietary software because a

predecessor company unilaterally terminated the License Agreement and stopped making

payments. As discussed below, a comparison of harms analysis weighs heavily in favor of granting immediate access to Tech 7.

### I. VACATION EXPRESS' DEFENSES STATED ON MARCH 17.

During the March 17, 2008 telephone conference, counsel for Vacation Acquisition (Vacation Express) indicated that their first basis for opposing the Temporary Restraining Order was the lack of personal jurisdiction of the Court.  The Opposition Brief reserved the jurisdictional issue, but failed to contest it or provide any basis for questioning personal jurisdiction.  Consequently, for purposes of the issuance of a TRO, the allegations of jurisdiction in the Complaint should be deemed sufficient to support the issuance of a TRO by this Court.

The second basis for opposing the TRO advanced during the March 17 telephone conference was whether there was an "immediate need" for access to the Tech 7 software. (Transcript, p. 7).  Counsel for Vacation Express argued that Tech 7 can await the normal course of discovery to have such access.  In trying to articulate the "harm" to Vacation Express from a grant of access to Tech 7, Counsel for Vacation Express listed (i) a fear that Tech 7 would shut down the system, and (ii) the concerns about disclosing proprietary modifications to the Tech 7 system.  The Court indicated that both of those concerns can be negated with a properly drafted protective order.  As discussed during the telephone conference and herein, neither of those concerns are valid impediments to the grant of the TRO.

### II. VACATION EXPRESS' DEFENSES STATED IN THE OPPOSITION BRIEF DO NOT SUPPORT THE DENIAL OF ACCESS TO TECH 7'S SOFTWARE.

The Vacation Express Opposition Brief argues against the imposition of a TRO under the traditional four-part test for preliminary/temporary injunctive relief: (i) irreparable injury to the movant; (ii) likelihood of success on the merits; (iii) injury to the non-moving party; and (iv) the public interest.  As discussed below, the Vacation Express analysis of the relative injuries, the

likelihood of success and the public interest is internally inconsistent and misconstrues the undisputed facts.

Following the March 17 telephone conference and a review of the Opposition Brief, one may conclude that the salient facts and the contract terms underlying the motion for a temporary restraining order are uncontested:

- Defendant Vacation Acquisition, LLC admits that its use of the Tech 7 System software is premised on a 1990 contract between Tech 7 Systems, Inc. and Vacation Express, Inc. (Opposition Brief, paragraph 3).

- Vacation Express admits that it is continuing to use the Tech 7 software today even though it stopped paying for maintenance and support years ago. (Gantt Cookson Declaration, paragraphs 9, 12 and 13).

- Vacation Express admits that it has modified the Tech 7 software in without seeking the consent of Tech 7 as required by the contract. (Gantt Cookson Declaration, paragraphs 8 and 10).

- Vacation Express admits that it used the Data Plus contracting firm to modify the software – the use of such contractors, as former employees of Tech 7 expressly violates the 1990 contract. (Gantt Cookson Declaration, paragraph 8).

- Vacation Express admits that it received the Tech 7 system through transfers from Vacation Express, Inc. through North American Leisure Group, but such transfer was made without gaining permission from Tech 7 as required by the 1990 contract. (Gantt Cookson Declaration, paragraph 11).

- Vacation Acquisition acknowledges that Tech 7 will have the ability to gain access to the Tech 7 software system during discovery of this dispute. (Opposition Brief, page 5).

These facts lead to a substantially different analysis of the four preliminary injunction factors. The list of license breaches includes providing the software to other affiliated and unaffiliated companies, hiring former Tech 7 employees contrary to the license agreement, operating the system on hardware not purchased from Tech 7, modifying the software without permission, and adding additional users without paying for additional license rights.  In fact, Vacation Express has breached virtually every single prohibition listed in the license agreement. And yet Vacation Express asks the Court to believe it will now keep its word and not tamper with the system between now and the time access is allowed during discovery.

## A.  <u>Tech 7 is Facing Irreparable Injury</u>.

Vacation Express has volunteered to take a "snapshot" of the software as it now exists, as well as to promise not to make any further modifications to the software during the pendency of this litigation. (Opposition Brief, p.5).  These actions, argues Vacation Express, preserve the status quo and eliminate any prejudice that Tech 7 might have suffered.  This "remedy" however, might fool lawyers who have no technical software training, but the snapshot is so laden with ambiguity that it presents an unworkable solution.  What is the "software" that will be the subject of the snapshot?  Tech 7 sold an entire software *system* to Vacation Express, Inc.  Taking a snapshot of a system which Vacation Express acknowledges is like the "central nervous system of Vacation Express business" (Transcript p. 12) is not the "simple matter" (Transcript p. 7) asserted by Defendant's counsel.  This is akin to taking an x-ray of the brain – which would be a simple matter to take -- but such an x-ray snapshot does not really provide much useful

information about the brain.  Tech 7's contractual right of access is not limited by Defendant's simplistic notion of what should be included in the snapshot.

Letting the Defendant who is alleged to have misappropriated proprietary information and copyrighted material make a determination as to what should be frozen in a snapshot is not a satisfactory solution, particularly when Defendant is merely seeking additional time until forced to provide access later in discovery.[1]  Why does the Defendant need extra time before access is given?  What kind of obstacles will the Defendant construct to frustrate and delay discovery?  These kinds of questions need not be asked and suspicions need not be raised if the contract right of immediate access is enforced.

To provide a concrete example for the Court, we have information that Vacation Express is using the Tech 7 software in conjunction with at least two other affiliated businesses, Exotic Escapes and Concierge Collection.  If Vacation Express is allowed to determine how wide a snapshot it will take, we expect it to limit its snapshot solely to the source code, and nothing else, used by Vacation Express. Tech 7 would be left without the preservation of any information concerning the implementation of the full software system throughout the offices of Vacation Express and reaching into affiliated businesses, such as Exotic Escapes and Concierge Collection, which may be using a modified version of the Tech 7 software.  Granting Tech 7 its contractual right of access as an administrator of the software system now would better ensure that all information relating to the use and misuse of the Tech 7 software is preserved.

---

[1]     Defendant argues that Tech 7 should give up its contract right to immediate access because it has gained the additional right to access during discovery of this case.  This argument is wrong-headed.  Plaintiffs do not give up contract rights upon filing suit.  There is nothing in the discovery rules that indicate that such rules were intended to supplant any rights and remedies contractually agreed to between the parties.

Another concrete example of harm is illustrated by Exhibit 1 - from the website of an unaffiliated tour company, Travel Authority - attached hereto. Navigating the website, one can see that Vacation Express has allowed Travel Authority to have access to its rogue Tech 7 system. The Travel Authority site allows an outside agent to click through to a screen page where it can then log into the Vacation Express "T7" system. (Exhibit 1, p. 3). Every day that Vacation Express allows such unauthorized piggyback use of the rogue Tech 7 system, is another day that Tech 7 cannot make a sale of its own product to such unauthorized user. More importantly, Tech 7 cannot protect the integrity of its own system in the hands of outsiders and the reputation of Tech 7 may be irreparably harmed should the outside user have a negative experience with a product which it believes is a Tech 7 product. Tech 7 has an immediate need to identify all such external users of the system to allow Tech 7 to take immediate steps to protect its product and its reputation.

As stated under oath in the concurrently-filed Dickieson Declaration, the contract right of access is vital to preserve Tech 7's business interests. Any ruling by a Federal Judge that Tech 7's contract right of access to its own software system during business hours was not immediately enforceable against a company which is misusing the Tech 7 system would have dire and irreparable consequences flowing from the other 30+ companies who are currently abiding by the Tech 7 license requirements. If Tech 7 cannot monitor the use of its software system through remote access, Tech 7 will be unable to enforce the provisions of its license agreement, as it will be unable to determine when, whether, and how a breach has occurred. It will likely have its technicians hired away to perform repairs and modifications under the radar by Tech 7's other customers. Such customers will have no further need to pay monthly service fees to Tech 7. Tech 7 would then fail.

Even if one assumes that Tech 7 must await discovery in this case to gain access, there is no reason to suspend discovery until a scheduling order is issued.  In fact, there are sound legal reasons for allowing discovery at this stage of the litigation.  Vacation Acquisition has asserted that this Court lacks personal jurisdiction due to insufficient contact between Vacation Acquisition and the District of Columbia.  Jurisdictional disputes provide a sound basis for limited discovery.  The most effective way to determine the number and significance of Vacation Acquisition's contacts with the District of Columbia is through access to the Tech 7 software system.  The Tech 7 system will show the tickets issued to District of Columbia residents.  It should also show the vendors in the District of Columbia who are being paid by Vacation Acquisition, including advertisers like the Washington Post and the Washington Times as well as commissions paid to travel agents in the District of Columbia.

Denying Tech 7 access to its own software now will severely complicate Tech 7's ability to defend a jurisdictional argument; increase attorney fees required to brief the issue and gather facts from other sources; and unfairly tilt the playing field by allowing only Vacation Express access to the facts which relate to Vacation Express's contacts in the District of Columbia.

**B.  Tech 7 is Likely To Succeed On The Merits.**

Vacation Express sets forth a tortured reading of the License Agreement in arguing that Tech 7 does not have a likelihood of success on the merits.  Vacation Express contends that the only contract remedy for modifying the software without authorization is the loss of warranty.  Vacation Express ignores the provision allowing Tech 7 to specifically enforce any provision of the agreement (Article IV.4) and to even enter the Vacation Express premises and remove the software to protect Tech 7's proprietary interest.  Vacation Express fails to address the numerous contract violations as well as the fact that the software was transferred several times such that

Vacation Acquisition, LLC, which is the entity now using the contract, has no right to use the software at all under any contract.[2]  Likewise, the estoppel argument is unsubstantiated and such an equitable defense is unavailable to a party with such unclean hands – dirtied by years of unauthorized use of a proprietary system.

Even before Vacation Express has filed a responsive pleading to the Complaint, counsel for Vacation Express has already admitted to numerous breaches of the License Agreement. Such breaches can be summarized by the simple admitted fact that Vacation Express is using the Tech 7 copyrighted proprietary software product without authorization and contrary to the terms of the acknowledged License Agreement.  Can Vacation Express seriously think that it can continue such unauthorized use indefinitely?  Fortunately, as discussed below, this limited request for TRO allowing only "access," does not require the court to engage in a detailed discussion of the merits of the entire case.

We submit that the proper area of inquiry for this second factor – likelihood of success – is not the standard question of whether Tech 7 will eventually prevail in this law suit, but a more limited inquiry to match the limited request for relief - whether Tech 7 will eventually have the right to access the software system in discovery.  If Tech 7 is going to have access to the software system in discovery (as is argued by Vacation Express counsel), then the ultimate success on the merits of the entire litigation is not a relevant consideration in determining whether the right of contract access should be granted immediately.  The Court is only choosing between access now and access later.  "Success" on the issue of access is assured by the stated consent of opposing counsel to access during discovery.

---

[2]      The statute of limitation for contract breach argument shoe-horned into the Opposition Brief offers little protection to Vacation Acquisition, LLC, which has no contract at all with Tech 7, and gained use of the software system though a series of unauthorized transfers.

C.  **Granting Access to Tech 7 Will Not Injure Vacation Express**.

Vacation Express cites two possible harms it may suffer if access is granted: (i) disclosure of alleged proprietary modifications which allow the software to connect to the airline reservation system and the internet; and (ii) the system may be damaged by negligent use during access.  These arguments are frivolous and internally inconsistent with the Vacation Express' counsel's position that access will be granted during discovery.  First, Tech 7's system already has the software which allows interface with the airline reservation system and the internet, and has had such capability for years.  The fear of misappropriation of proprietary software cannot be taken seriously from the Defendant which has operated for years on software for which it had no right to use.  Second, the fear of damage to the system is negligible insofar as Tech 7's access will be only used to observe, not modify the system.  Tech 7 acts as software administrator for many customers and there is no credible reason advanced as to why a passive review of the Vacation Express system is likely to cause any damage.  Moreover, if counsel for Vacation Express is willing to grant access during discovery, there is no evidence that access now would be more likely to cause damage.[3]  The inconsistency of Defendant's articulated arguments should alert the Court to other unarticulated reasons why the Defendant is trying to put off immediate access.

D.  **The Public Interest Favors Protection of Tech 7's Ownership Rights**.

Several public interest factors favor the grant of immediate access to the software system.  First, there is the policy favoring the enforcement of contracts.  Second, the legitimacy of the legal process will be reinforced by allowing the owner of the software system to access the

---

[3]    Exhibit 1 also provides evidence that Vacation Express allows access to the system by other external parties.  The claim that Tech 7's expert technicians will damage the system any more than these external parties is frivolous.

system rather than allowing an unauthorized user to delay access and potentially alter the software system. Third, the right of a copyright owner to control the use of copyright material is an important public interest. Fourth, the public interest is best served by confirming that filing a law suit does not deprive a party of its contract rights.

Vacation Express has pointed to no public interest that would be served by delaying access until discovery. In fact, such delay undermines the faith in the discovery process. In arguing this final factor of public interest, Vacation Express contradicts its previous stated assertion, that Tech 7 will have access in discovery, by claiming that Tech 7 has no right to access at all and the License Agreement has been properly terminated (without providing any documentary evidence of such termination). This only leads to the final public interest consideration – no party should be allowed unilaterally to terminate a license agreement without giving up the continued use of the licensed property.

## **CONCLUSION**

For the reasons stated herein and in the prior motion papers, Tech 7 Systems, Inc. respectfully submits that all four of the relevant factors for injunctive relief weigh in favor of a grant of immediate access to the Tech 7 system in the possession of Vacation Acquisition, LLC.

March 20, 2008                                           Respectfully submitted,

SCHERTLER & ONORATO, LLP


_____/S/_____
David H. Dickieson
D.C. Bar #321778
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC 20004
Telephone: (202) 628-4199
Facsimile: (202) 628-4177
*Counsel for Tech 7 Systems, Inc.*

CERTIFICATE OF SERVICE

The foregoing Reply of Tech 7 Systems, Inc. in Support of the Motion for a Temporary Restraining Order was, this 20th day of March, 2008, was provided to counsel listed below via EM-ECF filing system:

Eric J. Stenshoel
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
New York, NY  10178-0061
*Counsel for Defendant*

　　　　　　　　s/David H. Dickieson



PLAINTIFF'S
EXHIBIT



Vacation Express
VACATION EXPRESS
1-800-309-4717

Home Page

# Call Center Agents

## Login

User ID

Password

Login

## Registration

T7 Agent Number

User ID

Password

Confirm Password

Register

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| TECH 7 SYSTEMS, INC., | ) | No. |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **In Support of Application for** |
| | ) | **TEMPORARY RESTRAINING ORDER** |
| VACATION ACQUISITION, LLC | ) | |
| d/b/a Vacation Express | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF RICHARD M. DICKIESON, PRESIDENT
## TECH 7 SYSTEMS, INC.

Pursuant to 28 U.S.C. Section 1746, I, Richard M. Dickieson, declare under penalty of perjury under the laws of the United States as follows:

1.    I am the President and owner of Tech 7 Systems, Inc., and I am an adult over the age of 18, residing in Park Ridge, Illinois.

2.    I am familiar with the Tech 7 software system and the functions that it performs as a software system for tour companies like Vacation Express.

3.    I am unable to understand or attribute any fixed definition for the term "snapshot of the software" used by Vacation Express' counsel, and believe that such term is hopelessly vague and unworkable.

4.    More than 30 tour companies currently operate their accounting systems and ticket reservation systems from the Tech 7 software platform.

5.    That means that any reservation made through a tour company using the Tech 7 software platform is input, processed and a reservation generated through the use of the Tech 7 software system.

6.    Contrary to the sworn statement of Mr. Gantt Cookson, the original purchase of Tech 7 was for $27,000 for a small six user system, plus additional per hour built-in costs for installation and training.

7.    From 1990 through 1996, Vacation Express purchased a number of enhancements to the system.

8.    In August 1994 Vacation Express purchased an upgrade for $79,107 that brought the system up to 32 users.

9.    Although Mr. Gantt Cookson states that the Tech 7 system was not good enough for Vacation Express, it has been purchased by 187 customers around the world, 14 of which bought the Tech 7 system after Vacation Express stopped paying for service. Over 30 companies continue to use Tech 7, including some of the largest travel companies in the United States (including Costco Travel).

10.    The contract right of access is vital to preserve Tech 7's business interests. Any ruling by a Federal Judge that Tech 7's contract right of access to its own software system during business hours was not immediately enforceable against a company which is misusing the Tech 7 system would have dire and irreparable consequences flowing from the other 30+ companies who are currently abiding by the Tech 7 license requirements. If Tech 7 cannot monitor the use of its software system through remote access, Tech 7 will be unable to enforce the provisions of its license agreement, as it will be unable to determine when, whether, and how a breach has occurred. It will likely have

its technicians hired away to perform repairs and modifications under the radar by Tech 7's remaining customers. Such customers will then have no further need to pay monthly service fees to Tech 7. Tech 7 would then fail.

11.     On October 23, 1996 Meg Deeb of Vacation Express asked about purchasing the source code which would allow Vacation Express to make its own modifications. On October 24, Pamela Zaehler of Tech 7 advised Vacation Express that Tech 7 doesn't sell the source code to the system.

12.     I have located only one record of a reported problem with Vacation Express' use of the Tech 7 software -- a fax from Mr. Gantt Cookson dated July 10, 1996 seeking for a refund on the Interface between Tech 7 and Toursource (an ancillary software component that connects Tech 7 to Worldspan's tour booking system). I have located no record of any complaints with the core Tech 7 system. From my experience, interface problems were common with many competing tour operator systems which is why the service portion of the contracts were so important and probably why Vacation Express chose not to switch to another software platform competing with Tech 7.

13.     I have also searched, but not found any record of Vacation Express asking for or receiving permission to modify the Tech 7 software. There is no record of Vacation Express receiving consent to allow access to the software system by affiliated businesses such as Exotic Escapes and Concierge Collection.

14.     In light of all of the now admitted breaches of the License Agreement by Vacation Express, I cannot trust Vacation Express and its agents and employees to make a fair assessment of what should be covered by a "snapshot" of the software system, nor can I believe that Vacation Express is prepared to accept an arrangement which would

prevent its technical staff from making any modifications to the software system for the duration of this litigation. Such a promise could only be made by someone who was planning on applying the most limited possible definition of what is covered by the snapshot and freeze. Such limited definition does not adequately protect the Tech 7 interest in preserving evidence of Vacation Express breaches of the contract.

15.    Since Vacation Express continues to reserve its arguments on personal jurisdiction of this Court, the best method of identifying the "contacts" that Vacation Express has in the District of Columbia is through access to the Tech 7 system.

16.    Such access will reveal the names and addresses of the customers of Vacation Express located in the District of Columbia.

17.    Access to the Tech 7 software system will also reveal the names of vendors in the District of Columbia, such as the Washington Post, who are paid for providing services, such as advertising, to Vacation Express.

18.    If a tour company is selling a tour to a resident of the District of Columbia, the information is gathered within the Tech 7 reservation system and the financing of the ticket is processed through the Tech 7 accounting functions built into the Tech 7 system.

19.    Any tour company using the Tech 7 system and marketing into the District of Columbia must necessarily be using the Tech 7 system in conjunction with any sales into the District of Columbia.

20.    Any tour company using the Tech 7 system and advertising with agencies and publications in the District of Columbia must necessarily use the Tech 7 accounting system to track and pay the account payable resulting from such advertising effort.

21.    Vacation Express is contractually obligated to provide access within the Tech 7 system to Tech 7 technicians.  Currently, as illustrated in Exhibit 1 attached to the concurrently-filed Reply Brief, Vacation Express is allowing third parties to access the Tech 7 system.  Such access poses a threat to the protection of the proprietary Tech 7 software, as parties having no connection with Tech 7 are using the software instead of purchasing it through Tech 7, and such third party access cannot be controlled to ensure a quality experience sufficient to protect the reputation of the Tech 7 software product.

22.    Tech 7 is prejudiced in this litigation by the denial of access to its own software system that would remove any doubt about the scope of business in the District of Columbia.  To protect its choice of forum, Tech 7 must demonstrate contacts with the District of Columbia through other publicly available sources which are not as definitive as the records of Vacation Express accessible through the Tech 7 software system.

23. To the extent that I lack personal knowledge of any facts asserted herein, my statements are based on my knowledge of business records of Tech 7 and a review of publicly available documents relating to Vacation Acquisition, LLC and/or Vacation Express.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on March 20, 2008
Park Ridge, Illinois

Richard M. Dickieson
President
Tech 7 Systems, Inc.