**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **TECH 7 SYSTEMS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No.:  1:08-cv-00436-JDB** |
| | ) | |
| **VACATION ACQUISITION, LLC,** | ) | |
| **d/b/a Vacation Express** | ) | |
| | ) | |
| **Defendant.** | ) | |

## PETITION FOR SHOW CAUSE HEARING FOR CIVIL CONTEMPT

The Plaintiff, Tech 7 Systems, Inc., by its undersigned counsel, hereby petitions for a show cause hearing to be set to require the Defendant, Vacation Acquisition, LLC d/b/a Vacation Express,  to come before this Court and explain why it should not be held in civil contempt for a deliberate violation of an Order of this Court.  Plaintiff requests sanctions against the Defendant as a result of Vacation Express's deliberate and calculated violation of the Court's Order, the representations of its counsel, and the sworn representation of its Vice President of Operations.

Specifically, counsel for Vacation Express represented to this Court in oral argument that **no** modifications would be made to the software system during the pendency of this litigation. Then under penalty of perjury, the Vice President of Operations swore that Vacation Express "will not make any modifications during the pendency of the litigation." Declaration of Gantt Cookson, paragraph 13 (attached hereto as **Exhibit 1**).  On March 21, 2008, this Court ordered that "defendant shall make no further modifications of the software system in dispute pending further order of the Court" (**Exhibit 2**).

This morning, May 16, 2008, this Court held a status conference to create a plan for discovery and pre-trial matters. During that status conference, counsel for Vacation Express continued to resist providing access to the software system. However, the court indicated that its prior ruling denying the Plaintiff's request for emergency access to the software system did not mean that the Court intended to block access to the system during discovery. The court indicated that the parties should seek to discuss the appropriate method for discovery and report back to the Court if any difficulties arose. The Court also asked if the parties had any other matters which they wished to bring before the Court. Defendant's counsel indicated that he had nothing more that required the Court's attention.

Within three hours of the status conference, the Plaintiff's counsel received the attached letter (**Exhibit 3**) from Defendant's counsel stating unambiguously that the Defendant had modified the software system and intended to make <u>further</u> modifications to the software system. This shocking admission of a violation of a Court Order and the statement of intent to continue to violate the Court Order necessitates immediate Court action.

A defendant may not violate the orders of this Court with impugnity. The objective of civil contempt sanctions is to serve either or both of two purposes: (1) to coerce the contemnor into future compliance with the court's order, or (2) to compensate the complainant for losses resulting from the contemnor's past non- compliance. *See United States of America v. United Mine Workers*, 330 U.S. 258, 303-04 (1947) where the Supreme Court held:

> We will not assume that the defendants were not instantly aware that a usual remedy in such a situation is to impose coercive sanctions until the act is performed. This is a function of civil contempt. *Lamb v. Cramer*, 1932, 285 U.S. 217, 221, 52 S.Ct. 315, 316, 76 L.Ed. 715; *Michaelson v. United States*, 1924, 266 U.S. 42, 66, 45 S.Ct. 18, 20, 69 L.Ed. 162, 35 A.L.R. 451; *Gompers v. Buck's Stove & Range Co.*, 1911, 221 U.S. 418, 449, 31 S.Ct. 492, 501, 55 L.Ed. 797, 34 L.R.A., N.S., 874.

A defendant may not simply announce to a plaintiff that it intends to continue to violate the order of this Court and not incur sanctions. Plaintiff requests immediate sanctions to protect its right to discoverable information that is subject to spoliation as well as sanctions to punish the Defendant for a deliberate violation of an Order of this Court.

Plaintiff's request for a Temporary Restraining Order was denied, in part, because the Defendant promised not to modify the software system. This Court may also conclude that the violation was deliberate, since the promise not to modify the system came directly from the sworn statement of the Defendant's Vice President of Operations who would have known about the modifications to the system before they took place. An appropriate sanction for this deliberate violation, therefore, is to allow the Plaintiff immediate access to the system before any further spoliation of evidence occurs.

The Defendant's promise to take a "snapshot" of the software system without disclosing that snapshot prior to modifications of the system is now also revealed to be an inadequate safeguard against deliberate spoliation of evidence. First, the Plaintiff was not given access to the snapshot at the time it was allegedly taken. Second, Plaintiff has no way of determining whether the snapshot was comprehensive enough to reach all of the evidence that will bear on this case, or if the snapshot is only of a few lines of computer code which will shed little light on the active use of the software by the Defendant. Third, there is no guaranty whether the snapshot was taken before or after modifications were made to the system.

Immediate action by this Court is requested to preserve evidence and preserve the authority of this Court and its Orders.

WHEREFORE, the Plaintiff respectfully requests a sanction providing immediate access to the Defendant's software system, a denial of any limitations on such access that the Defendant

3

was seeking to impose at the status conference today, as well as an appropriate monetary penalty

for the deliberate violation of an Order of this Court.

May 16, 2008                                      Respectfully submitted,

                                                  SCHERTLER & ONORATO, LLP


                                                  _____/s/_____
                                                  David H. Dickieson
                                                  D.C. Bar #321778
                                                  601 Pennsylvania Avenue, NW
                                                  North Building, 9th Floor
                                                  Washington, DC 20004
                                                  Telephone: (202) 628-4199
                                                  Facsimile: (202) 628-4177
                                                  ddickieson@schertlerlaw.com

                                                  *Counsel for Tech 7 Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Sanctions was, this 16th day of May, 2008, served via ECF upon the following counsel:

Gary L. Cutler
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
Telephone:  (212) 696-6069
Facsimile:  (212) 697-1559
gcutler@curtis.com

Priya Swaminathan, Esq.
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
Telephone:  (212) 696-8873
Facsimile:  (917) 368-8873
pswaminathan@curtis.com

/s/
David H. Dickieson

# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | ATTORNEYS AND COUNSELLORS AT LAW | |
|---|---|---|---|
| FRANKFURT | MILAN | 101 PARK AVENUE | |
| HOUSTON | MUSCAT | NEW YORK, NEW YORK 10178-0061 | TELEPHONE 212-696-6000 |
| ISTANBUL | PARIS | | FACSIMILE 212-697-1559 |
| LONDON | STAMFORD | | E-MAIL INFO@CURTIS.COM |
| MEXICO CITY | WASHINGTON, D.C. | | INTERNET WWW.CURTIS.COM |

WRITERS DIRECT:
TEL: (212) 696-6069
E-MAIL: GCUTLER@CURTIS.COM

May 16, 2008

**Via E-Mail to ddickieson@schertlerlaw.com**

David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C.  20004

Re:    **Tech 7 Systems, Inc. v. Vacation Acquisition,**
       **LLC, d/b/a Vacation Express, Civil No.  08-0436**

Dear David:

I write to let you know that compelling circumstances have led Vacation Express to make minor changes to the SpeedRes code since the Court issued its temporary restraining order.

In order to maintain the system, Vacation Express has had to fix minor "bugs" in the software.  Additionally, the credit card industry has required all vendors who use credit cards to institute security-related changes by June 30, 2008.  We are in the process of working on compliance with these required changes.  To do so, Vacation Express has made and must make further modifications throughout its systems.  These changes have involved and may involve SpeedRes code.

Sincerely,

Gary L. Cutler

PLAINTIFF'S
EXHIBIT
1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TECH 7 SYSTEMS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>VACATION ACQUISITION, LLC, d/b/a<br>VACATION EXPRESS,<br><br>Defendant. | Civil Action No.  08-0436 (JDB) |

## ORDER

In this action, filed on March 13, 2008, plaintiff Tech 7 Systems, Inc. ("Tech 7") has sued

defendant Vacation Acquisition, LLC, d/b/a Vacation Express ("Vacation Express") alleging

breach of contract and misappropriation of intellectual property.  Simultaneous with the filing of

the complaint, Tech 7 also filed a motion for a temporary restraining order, seeking to enjoin

Vacation Express from preventing remote electronic access to and physical inspection of its

software system, which allegedly violates Tech 7's contractual rights derived from a contract

dating back to 1990.  Having considered the parties' representations during the teleconference

held with the Court on March 17, 2008, and the parties' memoranda and supporting affidavits, the

Court concludes that the motion should be denied.

The standard for issuance of the "extraordinary and drastic remedy" of a temporary

restraining order or a preliminary injunction is very high, see Mazurek v. Armstrong, 520 U.S.

968, 972 (1997), and by now well established.  The movant must demonstrate: (1) a substantial

likelihood of success on the merits of its claims; (2) that it will suffer irreparable harm if an


PLAINTIFF'S
EXHIBIT
2

injunction is not granted; (3) that the issuance of an injunction will not unduly or substantially

harm other parties; and (4) that the public interest favors issuance of an injunction. See, e.g.,

Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 360 (D.C. Cir. 1999); CityFed Fin. Corp. v.

Office of Thrift Supervision, 58 F.3d 738, 746 (D.C. Cir. 1995). These factors interrelate on a

sliding scale and should be balanced against each other, but a showing of irreparable harm is

especially important. See Davenport, 166 F.3d at 361; Taylor v. Resolution Trust Corp., 56 F.3d

1497, 1506 (D.C. Cir. 1995); Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc., 559

F.2d 841, 842-43 (D.C. Cir. 1977). "Where a party has made no showing of irreparable injury,

injunctive relief may be unavailable regardless of the showings on the other factors." Cornish v.

Dudas, 2008 WL 577068, at *2 (D.D.C. Feb. 25, 2008) (citing CityFed Fin. Corp, 58 F.3d at

747).

Tech 7 has not met its very high burden here. Under the clear law in this circuit, the

injury in support of a temporary restraining order "'must be both certain and great; it must be

actual and not theoretical,'" and "'of such imminence that there is a clear and present need for

equitable relief to prevent irreparable harm.'" Chaplaincy of Full Gospel Churches v. England,

454 F.3d 290, 297 (D.C. Cir. 2006) (quoting Wisc. Gas Co. v. FERC, 758 F.2d 669, 674 (D.C.

Cir. 1985) (per curiam)). Here, Tech 7 argues that its irreparable injury is its inability to

"quantify the misuse of the software," its inability to calculate damages, its inability to protect its

reputation "should an outside user have a negative experience with a product which it believes is

a Tech 7 product," and the "irreparable consequences" that could follow if "the other 30+

companies who are currently abiding by the Tech 7 license requirements" believe Tech 7 lacks

the ability to enforce the provisions of its license agreement. Pl.'s Mot. at 8; Pl.'s Reply at 6.

2

Case 1:08-cv-00436-JDB   Document 7   Filed 03/21/2008   Page 3 of 4

Plainly, Tech 7's alleged injuries remain at this time largely speculative, and far short of the certainty and imminence that is required. Moreover, they will largely be redressed through discovery in this action and, if Tech 7 ultimately wins the case, damages or other relief.

Vacation Express has repeatedly offered "to take a snapshot of the software as it exists so that the evidence Tech 7 says it needs access to now is preserved for the pendency of the case" and to make no "further modifications of the software during the pendency of this litigation." Def.'s Opp. at 5. Although Tech 7 argues that a current "snapshot" would be insufficient because it may not encompass the entire software system if left to the discretion of Vacation Express, the Court will address this concern by ordering defendant to take a "snapshot" of the entire software system that Tech 7 originally provided along with any modifications that have been made, including the software used by affiliated entities if it originated through the Tech 7-Vacation Express contract. Additionally, the Court will order defendant to make no further modifications of the software, which provides further protection for Tech 7 should the "snapshot" not answer all of its questions.

It is noteworthy that Tech 7 waited almost a decade to bring this action. Tech 7's explanation for the delay is basically that it only recently learned of activities by Vacation Express that are allegedly in violation of the licensing agreement. But it appears that at least some elements of Tech 7's alleged cause of action and injury may have been known for years. For example, in 1997 Vacation Express stopped paying Tech 7 the monthly support fee under the contract and stopped using Tech 7 for maintenance or modifications. Def.'s Opp. at 2. And Vacation Express argues that, in 1999, "Tech 7 spent a week investigating the changes that Vacation Express had made to the software since the mid-1990s." Id. at 3. This history

contributes to the Court's conclusion that on the current record Tech 7 has not made the clear

showing that is required to support the extraordinary injunctive relief it seeks.

Accordingly, and for these reasons, it is hereby

**ORDERED** that [3] Tech 7's motion for a temporary restraining order is **DENIED**; it is

further

**ORDERED** that defendant Vacation Acquisition, LLC, d/b/a Vacation Express shall take

a "snapshot" of the entire software system in dispute as it currently exists along with any

modifications that have been made, including the software used by affiliated entities if it

originated through the Tech 7-Vacation Express contract, so that the evidence is preserved for the

pendency of this case; and it is further

**ORDERED** that defendant shall make no further modifications of the software system in

dispute pending further order of the Court.

**SO ORDERED**.

/s/ John D. Bates
JOHN D. BATES
United States District Judge

Dated: <u>March 21, 2008</u>

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

TECH 7 SYSTEMS, INC.,                              )
  840 Courtland Avenue                           )
  Park Ridge, IL 60068                           )
                                             )
                          Plaintiff,                      )
                                             )
                vs.                              )    **Civil Case No.  08-0436**
                                             )
VACATION ACQUISITION, LLC, d/b/a                   )
VACATION EXPRESS                                   )
  301 Perimeter Center North, Suite 500          )
  Atlanta, GA 30346                              )
**Resident Agent:**                                )
  Corporate Service Company                      )
  2711 Centerville Road, Suite 400               )
  Wilmington, DE 19808                           )
                                           )
                     Defendant.             )

## DECLARATION OF GANTT COOKSON IN OPPOSITION
## TO TECH 7 SYSTEMS, INC.'S MOTION FOR
## <u>EMERGENCY INJUNCTIVE RELIEF – TEMPORARY RESTRAINING ORDER</u>

Pursuant to 28 U.S.C. § 1746, I, Gantt Cookson, declare under the penalty of

perjury:

1.  I am Vice President Operations of defendant Vacation Express.

2.  I make this Declaration in Opposition to Tech 7 Systems, Inc.'s Motion for

Emergency Injunctive Relief – Temporary Restraining Order and am fully familiar with the facts

contained herein.

3.  In 1990, Vacation Express entered into the Sales and Licensing Agreement

with Tech 7 Systems, Inc. ("Tech 7").  At that time, Vacation Express acquired a perpetual

license to Tech 7's software known as "SpeedRes."  Vacation Express paid $20,000 for this

perpetual license.



PLAINTIFF'S EXHIBIT
3

4. Initially, Vacation Express used Tech 7 for support services. The support included maintenance and making custom modifications for Vacation Express in the software. Because of ongoing customized modifications, each user of Tech 7 software gradually developed its own version of the software.

5. Beginning in or about 1995, Tech 7 began to lose programmers and the performance of the software suffered. Modifications made by Tech 7 contained numerous bugs. Tech 7 would fix one thing and another thing would not work. There were many quality programming issues. For example, new products and custom modifications failed to operate in accordance with specifications.

6. In or about 1995 and 1996, I met with Tech 7 to resolve problems they had with software that would run off of the SpeedRes platform and were designed to interface with Worldspan and Amadeus, the airline computer systems. This access was necessary to allow travel agents to book Vacation Express products.

7. Despite repeated efforts, I was unable to get Tech 7 to improve its service or to provide workable modifications to the software.

8. As a result, in or about early 1997, I began to make arrangements with a company known as Data Plus to provide ongoing support instead of Tech 7. Data Plus developed code to allow Vacation Express access to Amadeus. Among other significant modifications made to the software is code allowing web portal access. Given Vacation Express's experience with Tech 7's efforts, we had no confidence that Tech 7 could properly write such code, which was critical to the functioning of Vacation Express's business.

9. Because Vacation Express was no longer using Tech 7 for maintenance and modifications, in or around early 1997, Vacation Express stopped paying Tech 7's monthly support fee.

10. A year or two later, in or about 1998 or 1999, Rhoda Harwood, a representative of Tech 7, began calling to persuade Vacation Express to return to Tech 7 for maintenance and modification work. Ms. Harwood called me repeatedly over a four year period for this purpose. On behalf of Vacation Express, I repeatedly declined to take up again this service from Tech 7.

11. At some point, Tech 7 was bought by Logibro of Montreal. In 1998, Vacation Express was bought by North American Leisure Group, which was using Logibro for other computer services. In 1999, North American Leisure Group decided to investigate the possibility of returning to Tech 7 for maintenance and modification services. At that time, Tech 7 spent a week investigating the changes that Vacation Express had made to the software since the mid-1990s. Ultimately, North American Leisure Group decided not to use Tech 7 for maintenance and modification services.

12. Since 2003, Vacation Express has been doing all maintenance and modifications of the software with its own employees.

13. Currently, and for the purposes of this litigation, Vacation Express has offered to take a snapshot of the code as it exists today. It also will not make any modifications during the pendency of the litigation.

14. From the time that Vacation Express stopped using Tech 7 support and modification services in 1996-97 until the receipt of the demand letter from Tech 7 in January 2008, there was never any claim by Tech 7 that Vacation Express was in breach of its obligations

under the 1990 Sale and License Agreement.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 19, 2008.
Atlanta, Georgia

Gantt Cookson
Vacation Express

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA**

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )     **Case No.:  1:08-cv-00436-JDB** |
| | ) |
| **VACATION ACQUISITION, LLC,** | ) |
| **d/b/a Vacation Express** | ) |
| | ) |
| **Defendant.** | ) |

**[Proposed] ORDER FOR SHOW CAUSE HEARING**

UPON CONSIDERATION of Plaintiff's Petition and finding good reason to grant such

Petition, it is hereby

ORDERED that a Show Cause Hearing for Civil Contempt is scheduled for

_____, 2008;

ORDERED that Plaintiff's request for immediate access to the Defendant's software

system is GRANTED;

ORDERED that Defendant's request for any limitation on such access is DENIED; and

FURTHER ORDERED that any monetary penalty, if appropriate, for the deliberate

violation of an Order of this Court shall be determined at the Show Cause Hearing.

_____, 2008                    _____

                                                              Judge John D. Bates

Copies to:

David H. Dickieson
Schertler & Onorato, LLP
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC 20004
  *Counsel for Tech 7 Systems, Inc.*

Gary L. Cutler
Priya Swaminathan
CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY 10178
  *Counsel for Vacation Acquisition, LLC*