UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| TECH 7 SYSTEMS, INC.,<br>840 Courtland Avenue<br>Park Ridge, IL 60068 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )   **Civil Case No.  08-0436-JDB**<br>) |
| VACATION ACQUISITION, LLC, d/b/a<br>VACATION EXPRESS<br>301 Perimeter Center North, Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

**REPLY OF VACATION ACQUISITION, LLC D/B/A VACATION EXPRESS ON
MOTION FOR MODIFICATION OF TEMPORARY RESTRAINING ORDER**

Defendant Vacation Acquisition, LLC, d/b/a Vacation Express ("Vacation

Express") replies to Tech 7's Opposition to Motion for Modification of TRO.  In its Motion,

Vacation Express moved the Court to allow Vacation Express to "make those repairs required to

maintain the full operation of the system."  Tech 7 agrees that repairs be allowed, but cavalierly

insists that the Court order that Tech 7 be the exclusive supplier of maintenance and support

services for those repairs.  Such a proposal is one of the ultimate questions in this litigation and

there is no basis for Tech 7's suggested relief.  It is clear from documents produced by Tech 7 in

its initial disclosures that historically Tech 7 never interpreted its own Sales and Licensing

Agreement with Vacation Express ("SLA") as giving it the right to be the exclusive vendor of

maintenance and support services.  Rather, Tech 7 allowed its customers access to the SpeedRes

source code so its customers could modify and maintain it.  Tech 7's position in this litigation is

of recent vintage and at odds with its prior position. It is difficult to see how Tech 7 retains any copyright interest in SpeedRes when it actively allowed customers to perform their own modifications and maintenance. In view of this liberal policy, historically Tech 7 did not seek to sue customers who chose to modify and maintain their own systems and the only repercussion of self-maintenance was that the user voided its product guarantee or warranty by Tech 7.

These documents also indicate that Tech 7 was aware in 1997 that Vacation Express had hired Data Plus to make modifications and perform maintenance and support on SpeedRes. Tech 7 approved that arrangement and sought only to woo Vacation Express back as a maintenance and support customer. Having failed to bring this lawsuit at anytime during the 11 years since Tech 7 was relieved of its maintenance and support role, Tech 7 is now barred by laches from bringing its claims. Tech 7 also has waived any right to be the exclusive purveyor of maintenance and support services to Vacation Express. Indeed the SLA does not prohibit Vacation Express from modifying the SpeedRes system. Rather, the SLA anticipates modifications will be made by Vacation Express and merely states that, in such instances, Tech 7's warranty will become invalid.

While this motion remains pending, Vacation Express is walking a tightrope with the possible failure of its software system occurring with each passing day. As a result, Vacation Express respectfully asks the Court to modify the Temporary Restraining Order to allow it to make those repairs required to maintain the full operation of its software system.

## I. FACTUAL STATEMENT

The parties entered into the SLA in 1990. With the SLA, Vacation Express acquired a perpetual license to SpeedRes. Certification of Gantt Cookson in Opposition to Tech 7 Systems, Inc.'s Motion for Emergency Injunctive Relief – Temporary Restraining Order, ("Cookson Certification"), ¶ 3. Due to an inability to obtain satisfactory performance from Tech

7's maintenance and support services, including necessary modifications to SpeedRes to adapt it to airline booking programs, Vacation Express engaged Data Plus to perform modifications, maintenance and support in 1997. Cookson Certification, ¶¶ 5-9. Vacation Express stopped paying Tech 7's monthly support fee in early 1997. Cookson Certification, ¶ 9. Tech 7 was aware of and tolerated this arrangement and over a four year period tried to sell Vacation Express a new plan for maintenance and support. Cookson Certification, ¶ 10. In 2000, Tech 7 spent a week investigating the changes Vacation Express had made to SpeedRes in an effort to sell Vacation Express a new maintenance and support services contract. Cookson Certification, ¶ 11. As a result, Tech 7 was fully aware of the modifications that Vacation Express had made to SpeedRes. This fact is confirmed by Tech 7's proposal to Vacation Express and time records of the Tech 7 employee who performed the review. These documents were recently produced in initial disclosures by Tech 7. See Exhibit 1 to this Reply Memorandum.

A review of some highly significant documents produced by Tech 7 as part of its initial disclosures, demonstrates that in 1995, five years after the SLA was signed, Tech 7 had a policy to allow its customers to modify and maintain SpeedRes source code. With this policy, Tech 7 clearly did not consider itself the exclusive vendor of maintenance and support services for its customers, including Vacation Express. These documents also show that in 1998 Tech 7 was aware that Vacation Express had engaged Data Plus for maintenance, support and modifications. The correspondence indicates Tech 7's acceptance of this situation as it tried to pitch Vacation Express for a new contract for support services. 1999 correspondence demonstrates that numerous Tech 7 customers were not using Tech 7's maintenance and support services with the only repercussion being a voided warranty.

1) The most significant document of the group is a fax dated October 23, 1995 from Meg Deeb of Vacation Express to Pamela Zaehler of Tech 7. This document, while a bit blurry on the edges in the original production, indicates that Tech 7 had a policy of allowing its customers access to SpeedRes source code in order to program changes to the software. See Exhibit 2. A handwritten note on the fax describes the only consequence of changing the source code as "all warranties/guarantees are void." The fax states in relevant part:

> Good Day! I have been assigned the task of
> gathering information regarding the source code.
> What would be the charge for the source code
> access?
>
> Once we take over the sourcecode -- What are our
> limitations? Yours?

A handwritten note by a Tech 7 employee on the fax states in

relevant part:

> Will train them how programs are structured &
> show them how to extract the source code from the
> binary program.
>
> Must be scheduled thru Vicki.
>
> Sign non-disclosure/non-compete for each pgmmer
> All warranties/guarantees are void
> Support is still available (but will cost)

The implications of this fax are stunning.[1] After the SLA was signed, Tech 7 allowed its customers, including Vacation Express, to access and change the SpeedRes source code. With this policy, Tech 7 obviously had no intention nor did it act to preserve any copyright protection for SpeedRes. Tech 7's claims of copyright protection for SpeedRes were

---

[1] No doubt additional evidence demonstrating the absence of any merit to Tech 7's case will be forthcoming when Tech 7 produces documents responsive to Vacation Express's document request. Without explanation, Tech 7 has failed to produce any such documents by the deadline.

-4-

dissipated, as are the underlying claims Tech 7 has brought in its complaint.

       2) In a June 15, 1998 letter from Deanna Bernett, Marketing Executive at Tech 7 to Gantt Cookson of Vacation Express, Ms. Bernett confirms Tech 7's knowledge that Vacation Express was receiving support services from Data Plus. Ms. Bernett then suggested to Mr. Cookson that Vacation Express may want to again consider using Tech 7. Ms. Bernett stated, "you are still receiving system support services from Data Plus, but . . . you might want to take a look again at our support contract. I have enclosed a Support Services contract for your consideration." The remainder of the letter constitutes an effort to sell Vacation Express Tech 7's support services. See Exhibit 3. The document demonstrates Tech 7's awareness and ratification of Vacation Express's arrangement with Data Plus.

       3) In a June 9, 1998 email from Jeff Kruse of Tech 7 to others at Tech 7, Mr. Kruse stated, "[j]ust some notes from visit to Vacation Express - Rhoda and I visited this account last Thursday and met with Gantt Cookson, Exec. Dir.. They are using Dataplus for service and customization. They originally switched to Dataplus because Toursource had been installed for two years and was not working. Dataplus has had it for another two years and they are just switching to Beta this month. Gantt said that Dataplus service was good at first but now he is no better off. I suggest we send him a current proposal." See Exhibit 4. Again, Tech 7 was aware of and accepted the arrangement with Data Plus.

       4) In an April 9, 1999 letter from Jeff Kruse of Tech 7 to Kevin Hernandez of Vacation Express, Tech 7 advertised its fix for Year 2000 Readiness. Kruse stated: "TECH 7 hereby wishes to remind all its customers, including customers who did not enter into a Support and Maintenance Agreement with TECH 7, about some of our previous communications on the subject." See Exhibit 5, p. 1. "Please remember that any modifications, for Year 2000 purposes or otherwise, to the original licensed SPEEDRES software and system, made by anyone other

than TECH 7 effectively terminates any warranty remaining on your system." <u>See</u> Exhibit 5, p.

2. This document demonstrates that entering into a Support and Maintenance Agreement with

Tech 7, was optional, not mandatory, and the consequences of going it alone were merely,

"terminat[ion] of any warranty remaining on your system."

This point is driven home by the SLA, itself, which indicates that the only remedy

Tech 7 reserved in the event of customer modification to the source code was the termination of

the warranty. Article III, paragraph 4 of the SLA states in relevant part: "In no event will any

warranty or liability on SELLER survive alteration or modification by anyone other than

SELLER, unless SELLER agrees in writing."

Additionally, the SLA states that Help Desk support services and training are

optional and not included in the agreement. Article II, paragraph 5 states in relevant part: "Help

Desk support and additional training at either BUYER'S or SELLER's site are optional and not

included in this Agreement."

## II. ARGUMENT

### A.    Tech 7 Never Considered The SLA To Provide It <u>Exclusive Rights to Modify and Repair SpeedRes</u>

From the foregoing, it is clear that Tech 7 long ago interpreted its own SLA with

Vacation Express as allowing Vacation Express or Vacation Express's chosen vendor to make

modifications and perform maintenance and repairs to the SpeedRes software. There is no basis,

then, to continuing that aspect of the Temporary Restraining Order that prohibits Vacation

Express from making those repairs required to maintain the full operation of its system. <u>A</u>

<u>fortiori</u>, there is no basis to Tech 7's request for an Order allowing <u>it</u> to be the exclusive vendor

of maintenance and support services to Vacation Express.

**B.**    **Tech 7 Is Barred From Bringing These Claims By Laches**

Alternatively, it is clear that the equitable doctrine of laches prohibits Tech 7 from prevailing on its breach of contract and copyright infringement claims. "Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." Danjac, LLC v. SONY Corp., 263 F.3d 942, 950 (9th Cir. 2001). "To demonstrate laches, the defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself." Danjac, 263 F.3d at 951. A defendant's innocence and justifiable reliance on a plaintiff's failure to prevent previous copyright infringement can lead to laches, barring the assertion of copyright claims. Capitol Records, Inc. v. Naxos of America, Inc., 262 F.Supp. 2d 204, 212 (S.D.N.Y. 2003), citing Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037, 1041-1042 (2d Cir. 1980)(seven year failure to contest competitor's trade mark).

Tech 7's 11 year delay in bringing the current lawsuit is unreasonable. See Era Publ'ns Int'v v. Henry Holt & Co., 873 F.2d 576, 585 (2d Cir. 1989)(holding that two year delay, combined with "severe prejudice" supports laches). In the face of Tech 7's acknowledgement and ratification, in 1998 and 1999, of Vacation Express's use of Data Plus to provide maintenance and support, Vacation Express innocently and justifiably relied upon Tech 7's failure to enforce alleged copyright infringements.

Vacation Express suffered two forms of prejudice due to Tech 7's unreasonable delay in bringing suit: 1) evidentiary and 2) expectations-based prejudice. See Danjac, 263 F.3d at 955. As to the first, the passage of time has put many witnesses and numerous relevant documents out of reach of the defendant. The second form of prejudice concerns the actions and consequences undertaken by Vacation Express when Tech 7 failed to bring suit. Vacation Express has spent hundreds of thousands of dollars to make repairs and modifications to SpeedRes. Vacation Express had no inkling those modifications would someday be challenged.

As a result of the modifications, the SpeedRes system is customized to fit Vacation Express's needs. Now, 11 years later, Tech 7 demands that all of that work and expense be destroyed.[2]

**C.    Tech 7 Has Waived Its Claims**

Tech 7's claims are also barred by the equitable doctrine of waiver. A claim of waiver requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it. Capitol Records, Inc., 262 F.Supp.2d at 211. To establish abandonment, a defendant must show an intent by the copyright holder to surrender rights in the work and an overt act evidencing that intent. Id. at 211-212.

The 1995 fax and the 1998 emails and 1999 letter demonstrate that Tech 7's policy was to allow its customers access to SpeedRes source code to perform modifications, maintenance and support. Once having abandoned any right it could claim to be the exclusive vendor of maintenance and support services, Tech 7 has waived not only that alleged right, but all of the associated rights it claims in this litigation.

**D.    Tech 7 Is Estopped From Making Its Claims**

Tech 7 is also estopped from making the claims it asserts in this action. Equitable estoppel requires a showing of (1) an act constituting a concealment of facts or a false misrepresentation; (2) and intention or expectation that such acts will be relied upon; (3) actual or constructive knowledge of the true facts by the wrongdoers; (4) reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment. General Electric Capital Corp. v. Eva Armadora, S.A., 37 F.3d 4145 (2d Cir. 1994).

---

[2] Plaintiff alleges that in 2001, "NALG considered using Tech 7 for several of its travel companies in addition to Vacation Express. Tech 7 prepared a proposal and draft contract, but did not win the business and was advised that NALG had selected another vendor and would be discontinuing its use of the Tech 7 system." See Complaint, ¶ 17. Even if this were true, which it is not, it does not excuse Tech 7's failure to sue Vacation Express between 1997 and 2001.

Tech 7 is estopped from its claims because it concealed its true intention to sue Vacation Express with the motive that Vacation Express be lulled back into a maintenance contract with Tech 7. Vacation Express relied upon this misrepresentation to its detriment by expending hundreds of thousands of dollars on modifications to its SpeedRes system that Tech 7 would now have nullified.

As a result of the foregoing, it is clear that Tech 7's position that it has the right to be the exclusive vendor of maintenance and support services is without merit.

## E.    Immediate Relief Is Needed

Without any basis, Tech 7 argues that emergency relief is not needed. Tech 7 offers nothing to counter the sworn declaration of Robert Meeks that Stop Statements can have devastating results on Vacation Express's business depending upon which program stops working. Declaration of Robert Meeks in Support of the Motion of Vacation Acquisition, LLC d/b/a Vacation Express to Modify the Temporary Restraining Order ("Meeks Decl."), ¶ 4. Meeks cites various examples of devastating program shut downs. These include: programs to sell a particular airline's tickets, programs that allow the printing of online manifests or the cutting of checks, and malfunctions that corrupt data files. Meeks Decl., ¶ 4.

Plaintiff's claim that no emergency occurred in the 35 days since the motion to modify was filed does not mean that an important repair may not be needed tomorrow or the next day. As Meeks states, "the error in a particular program occurs unexpectedly. As a result, it is not possible to predict which programs will malfunction and when that will occur." Meeks Decl., ¶ 5. Plaintiff offers nothing to counter this sworn statement and to do so would be baseless.

**F.     Tech 7's Other Points Are Meritless**

        Tech 7 asserts that the SLA mandates that any modifications must be done by Tech 7 and that Tech 7 has not authorized Vacation Express to use other personnel for these modifications. The very documents Tech 7 has produced indicate otherwise.

        Tech 7 also accuses Defendant's Vice President's Declaration in Opposition to the Motion for a Temporary Restraining Order of being false on one point: "since 2003, Vacation Express has been doing all maintenance and modifications of the software with its own employees." Given Tech 7's practice of allowing customers to modify their own systems, this assertion is beside the point. It is clear from the documents produced by Tech 7 that Tech 7 authorized Data Plus, any third party or any Vacation Express employee to modify Vacation Express's SpeedRes system. Mr. Cookson's statement intended only to acknowledge that a change occurred in 2003 when Data Plus was no longer engaged to perform maintenance and modifications.

        Tech 7 cites payments to two individuals as rendering the certification false. The two individuals in question have telephone extensions and email addresses at Vacation Express, receive a consistent monthly payment from Vacation Express and are allowed time off from their duties for vacation. Given these facts, it is a fair statement to refer to them as "employees." Still, as noted, their status as "employees" is not relevant, and there was no intent to mislead the Court on this point.[3]

---

[3] Tech 7 accuses Vacation Express's counsel of failing to comply with this Court's local rule LCvR 7(m) by filing this motion without conferring with counsel or seeking to narrow the requested relief. This allegation is without merit. The motion to modify the TRO came after Tech 7 filed a contempt motion against Vacation Express for making modest repairs to SpeedRes and after an order was entered allowing Tech 7 immediate access to SpeedRes. That motion was fully briefed with Tech 7's position against repairs clearly stated. There would have been no point then in meeting and conferring over an issue that had just been joined, fully briefed and

In fact, if any party has been misleading, it is Tech 7, which continues to make claims that its copyright has been violated. See Opposition , p. 3. Tech 7's current position is inconsistent with its traditional practice of allowing its customers and their vendors to modify and maintain SpeedRes.

### III. CONCLUSION

Tech 7 claims that it is not against repairs to Vacation Express's software system. There is, however, absolutely no merit to Tech 7's proposal that it be appointed by the Court to make the changes to the SpeedRes software. Tech 7 does not have the right to be the exclusive vendor of those services.

Because errors in the software system can and will shut down Vacation Express's operations, Vacation Express respectfully asks the Court to modify the Temporary Restraining Order to allow Vacation Express to make those repairs required to maintain the full operation of the system.

---

where the parties had made their respective positions known to each other.

Additionally, the Court specifically invited Vacation Express's motion when it stated in the Order, "[t]he Court reaffirms that the March 21, 2008 order is still in effect and requires Vacation Express to make no further modifications to the software system without prior leave of Court." Vacation Express sought that leave of Court with this Motion to Modify the TRO.

Finally, after the motion was filed, counsel sought Tech 7's leave to make a specific modification. Tech 7's counsel refused the request and advised Vacation Express's counsel to file a motion to seek a modification of the TRO. Mr. Dickieson stated: "If your client wishes to continue to violate the terms of the License and use outsides consultants, you will need to seek permission from the Court . . I am available today to discuss this if you wish to make a conference call to the Court after filing your request for a modification." See Exhibit 6, (emphasis supplied), Ultimately, Vacation Express was able to find a solution to this particular problem without modifying SpeedRes. In the face of this email, it is difficult to see why counsel has raised the meet and confer issue in his subsequent reply papers.

Dated:  July 11, 2008

Respectfully submitted,

**CURTIS, MALLET-PREVOST, COLT
& MOSLE LLP**

_____/s/_____
Jeffrey I. Zuckerman
D.C. Bar #369120
1200 New Hampshire Avenue, N.W.
Suite 430
Washington, D.C. 20036
Tel:  (202) 452-7373
Fax:  (202) 452-7333

Admitted pro hac vice:
Gary L. Cutler
Priya Swaminathan
Curtis, Mallet-Prevost, Colt
 & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  gcutler@curtis.com
         pswaminathan@curtis.com

Of Counsel:
Turner Smith
Curtis, Mallet-Prevost, Colt
 & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  tsmith@curtis.com

cc:
David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C.  20004
Tel.:  (202) 628-4199
Fax:  (202) 628-4177
Email:  ddickieson@schertlerlaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing Reply of Vacation Acquisition, LLC d/b/a Vacation

Express on Motion for Modification of Temporary Restraining Order has been provided by email

and by the CM/ECF system to David H. Dickieson, Esq., ddickieson@schertlerlaw.com on July

11, 2008.

July 11, 2008
New York, NY

                /s/
Priya Swaminathan
Curtis, Mallet-Prevost, Colt
 & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  pswaminathan@curtis.com

**Exhibits to Reply of Vacation Acquisition, LLC d/b/a Vacation Express on Motion for
Modification of Temporary Restraining Order**

# EXHIBIT 1



**LOGIBRO**

Solutions that *travel*

## ANALYSIS/CONSULTATION PROPOSAL
### Prepared for
### VACATION EXPRESS

### OCTOBER 6, 2000

### ANALYSIS:

Three Days on-site Analysis @ $1,000.00 per day with Masood
Saidi-Nejat . The purpose of this analysis is to determine what
customizations need to be moved over from VACATION EXPRESS's                    $ 3,000.00
current SpeedRes version to the new version 10.0.

VACATION EXPRESS will be responsible for all travel expenses, to
include air fare, 3 nights hotel accommodation, ground transportation and
$35.00 per day meal allowance.

### NOTE:

In the event VACATION EXPRESS goes ahead with the software
upgrade (to SpeedRes version 10.0), a full credit of $3,000.00 will
be allowed towards the total price of that upgrade.

---

*This proposal when accepted by an authorized agent of VACATION EXPRESS and returned to
Logibro/Tech 7 Systems, will become an addendum to the Sales and Licensing Agreement between
VACATION EXPRESS and Tech 7 Systems, Inc. Full payment is due in advance. The prices quoted in
this proposal are valid for a period of thirty (30) days from the date of this proposal. All prices quoted are
in $US.*

**VACATION EXPRESS:**                          **Logibro/Tech 7 Systems, Inc.**
Accepted by: _Grant Cookson_                   **Approved by:**

Signature: _G. Coba_                           Signature: _____
Title: _V.P. ops_                              Title: _____
Date: _10/13/00_                               Date: _____

## RAPPORT DE DÉPENSES
### EXPENSE REPORT

**LOGIBRO INC.**

Nom / *Name* : **Masood Saidi-Nejat**          Département / *Department*: **LOG- eComm**

| RAISON DE LA DÉPENSE |
|---|
| *EXPENSE JUSTIFICATION* |

Réservé à la comptabilité / *Reserved to Accounting* :
Client: _____ facture #
Client: _____ facture #
Client: _____ facture #

| | | Spécifier / *Specify* : |
|---|---|---|
| Administration générale / *General Administration* | ☐ | _____ |
| Formation / *Training* | ☐ | Titre du cours / *Course Title* : _____ |
| Conférence & Congrès / *Conference & Symposium* | ☐ | Spécifier / *Specify* : _____ |
| Exposition / *Show* | ☐ | Spécifier / *Specify* : _____ |
| Voyage chez client / *Travel at / for a Client* | ☒ | Spécifier / *Specify* : **VEX- 3 Days on site analysis(10/24-26/2000)** |
| Voyage chez fournisseur / *Travel at / for a Supplier* | ☐ | Spécifier / *Specify* : _____ |
| Voyage inter-division / *Inter-Branch Trip* | ☐ | Spécifier / *Specify* : _____ |
| Dépense de représentation / *Entertainment Expense* | ☐ | Spécifier / *Specify* : _____ |

Lieu du voyage / *Trip Itinerary*     **PDX-ATL-PDX**          Du / *From*: **10/24/2000**     Au / *To*: **10/26/2000**

Devises / *Currency* :  ☐ $CAN   ☒ $US   ☐ Autre / *Other*: _____

FACTURABLE (Oui/Non)/ *BILLABLE (Yes/No)* ?: **YES**

NO. DE LOG / *LOG No* : _____

| A. TRANSPORT. | MONTANT *AMOUNT* | |
|---|---|---|
| (1) Avion / *Flight* | $ | - |
| (2) Location auto / *Car Rental* | $ | 340.61 |
| (3) Taxi / *Cab* | $ | - |
| (4) Utilisation auto / *Car Usage* | $ | 9.60 |
| (5) Stationnement / *Parking* | $ | 24.00 |
| Total (a) | $ | 374.21 |

| B. DIVERS / *MISC.* | MONTANT *AMOUNT* | |
|---|---|---|
| (6) Diverses dépenses / *Misc.* | $ | - |
| Total (b) | $ | - |

| C. REPAS / *MEALS* | MONTANT *AMOUNT* | |
|---|---|---|
| (7) Conférence cie. / *Co Conference* | $ | - |
| (8) Repas voyage / *Travelling Meal* | $ | 105.00 |
| (9) Repas client-tourn. / *Client-supp. Meal* | $ | - |
| Total (c) | $ | 105.00 |

| D. HOTEL | MONTANT *AMOUNT* | |
|---|---|---|
| (10) Chambre / *Room* | $ | 492.73 |
| (11) Autre / *Others* | $ | - |
| Total (d) | $ | 492.73 |

| TOTAL DES DÉPENSES | | |
|---|---|---|
| *TOTAL ENPENSES*  (a+b+c+d) | $ | 971.94 |

### SOMMAIRE

TOTAL DES DÉPENSES / *TOTAL EXPENSES*  $    971.94
MOINS / *MINUS* :
  PAYÉ PAR LA COMPAGNIE / *PAID BY Co* : _____
  AVANCE DE VOYAGE / *TRAVEL ADVANCE* _____

TOTAL :    **$971.94**

☒ Dû à l'employé / *Due to the Employee*

☐ Remboursement cie / *Company Refund*

Signature de l'employé / *Employee's signature* : *Saidi Nejat,*

Date: (aa/mm/yy)    **27-Oct-00**

Signature du supérieur immédiat / *Manager's signature* : _____

Date: (aa/mm/yy)

Nom/Name: **Masood Saidi-Nejat**

**LOGIBRO INC.**

Note: une dépense par ligne / one expense per line

## A. TRANSPORT / TRANSPORTATION

| DATE Du/From Au/To | LIEU / LOCATION De/From | LIEU / LOCATION À/To | AVION / FLIGHT Montant Amount | AVION / FLIGHT PAYÉ CO | LOCATION AUTO / CAR RENTAL | TAXI CAB | UTILISATION AUTO / CAR USAGE Mile | UTILISATION AUTO / CAR USAGE $ | STATIONNE-MENT PARKING | DIVERS MISC. |
|---|---|---|---|---|---|---|---|---|---|---|
| 24-Oct-00 | PDX | ATL | Pre-Paid | | $   340.61 | | | | | |
| 25-Oct-00 | | | | | | | | | $8.00 | |
| 26-Oct-00 | | | | | | | 30 | 9.60 | $8.00 | |
| | | | | | | | | | $8.00 | |
| TOTAL: | | | $   - | | $   340.61 | $   - | | $   9.60 | $   24.00 | $   - |
| | | | (1) | | (2) | (3) | | (4) | (5) | (6) |

## C. REPAS / MEALS

| DATE | D | L | S | CONFERENCE CIE / Co CONFERENCE | REPAS VOYAGE / TRAVEL MEAL | REPAS CLIENT-FOURNISSEUR / CLIENT-SUPPLIER MEAL | NOM DES PERSONNES / INDIVIDUAL NAMES |
|---|---|---|---|---|---|---|---|
| 24-Oct-00 | 7.5 | 7.5 | 20 | | $   35.00 | | |
| 25-Oct-00 | 7.5 | 7.5 | 20 | | $   35.00 | | |
| 26-Oct-00 | 7.5 | 7.5 | 20 | | $   35.00 | | |
| TOTAL: | | | | $   - | $   105.00 | $   - | |
| | | | | (7) | (8) | (9) | |

## D. HOTEL

| CHAMBRE ROOM | AUTRE MISC. | SPECIFIER SPECIFY |
|---|---|---|
| $164.25 | | |
| $164.25 | | |
| $164.23 | | |
| $   492.73 | $   - | |
| (10) | (11) | |

# EXHIBIT 2

## Deanna Bernett

From: Rhoda Harwood <rhoda@tech7.com>
To: deanna@tech7.com
Subject: Fw: Vacation Express
Date: Tuesday, June 09, 1998 9:28 AM

Deanna - I notice that JK didn't copy you in. He probably thought this was
my account. You need to know what went on, so this is for your file. I
personally think his going on T7 service is a long shot. Since he has DP's
version of DAT, he'd still need them to support it, unless we can??? I
wonder if this is another VisiFax type service problem where we offer
support for a non Tech 7 product.
Rhoda

_____
> From: Kruseing@aol.com
> To: christophe@tech7.com; rhoda@tech7.com; mpoirier@logibro.com;
kacie@tech7.com; masood@tech7.com; yinkar@tech7.com
> Subject: Vacation Express
> Date: Monday, June 08, 1998 11:34 AM
>
> Just some notes from visit to Vacation Express -
>
> Rhoda & I visited this account last Thursday and met with Gantt Cookson,
Exec.
> Dir.. They are using Dataplus for service and customization. They
originally
> switched to Dataplus because Toursource had been installed for two years
and
> was not working. Dataplus has had it for another two years and they are
just
> switching to Beta this month. Gantt said that Dataplus service was good
at
> first but now he is no better off. I suggest that we send him a current
> proposal.
>
> Their understanding of the system is a bit weak. I suggested to Gantt
that we
> send in a trainer for a day or two just to update them as part of the
service.
> Masood should keep Atlanta in mind.
>
> They want the Tournet connection soon and I will keep them posted.
>
> They have IQ, but find it far too dificult to use. Want the option of
easy
> report writer.
>
> Jeff K.

# EXHIBIT 3

# TECH 7 SYSTEMS INC

A SUBSIDIARY OF LOGIBRO, INC

June 15, 1998

*- mailed*

Gantt Cookson
Vacation Express
2957 Clairmont Road
Suite 120
Atlanta, GA  30329

Dear Gantt:

Thank you for taking the time to meet with Rhoda Harwood and Jeff Kruse earlier this month. This was a good opportunity for us to keep in touch with what is happening at Vacation Express.

They confirmed that you are still receiving system support services from Data Plus, but suggested that you might want to take a look again at our support contract. I have enclosed a Support Services contract for your consideration. The last page of this document, page 10, outlines the fees for service.

Note that there are several areas in which fees are "To Be Announced (TBA)". This is because you have third party products tied into your SpeedRes system that need to be considered for Tech 7 support. In addition, I am not certain if you are still using the Tech 7 fax subsystem. Because of the third party products and the work done by a third party support company, we would need to do a thorough analysis of your system to determine what would be involved in supporting those items. Please let me know if you would like a proposal for such an analysis.

Note that we are also including two days of training free of charge with this contract, except for possibly travel expenses, unless we are in your area.

I hope we have the opportunity to work with you again on an ongoing basis. Until then, keep in mind that we are available to you if you do need any assistance with your system and we will continue to update you on new features that become available.

Best regards,

Deanna Bernett
Marketing Executive

# EXHIBIT 4

# TECH 7 SYSTEMS INC

Z 435 484 437

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to
Vacation Express
2957 Clairmont Road, Suite 120
Atlanta, GA 30329

| | |
|---|---|
| Postage | $.99 |
| Certified Fee | 1.40 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |

UNITED STATES POST

## _"YEAR 2000 READINESS DISCLOSURE"_

April 9, 1999

Kevin Hernandez
Vacation Express
2957 Clairmont Road, Suite 120
Atlanta, GA 30329

Subject: _SPEEDRES_ Software – Year 2000 Readine

Dear Kevin:

TECH 7 SYSTEMS INC. has received requests for information from its customers regarding its _SPEEDRES_ software Year 2000 readiness and regarding TECH 7's own plan to ensure internal Year 2000 readiness.

TECH 7 hereby wishes to remind all its customers, including customers who did not enter into a Support and Maintenance Agreement with TECH 7, about some of our previous communications on the subject. We also present to you a review and an update.

For almost two years now, TECH 7 has been providing you and all its customers with a number of communications regarding the Year 2000 readiness of its SPEEDRES product, including the following:

- Letters of March 24, 1997 and April 10, 1997: request for beta customers for Year 2000 conversion;
- Letter of May 14, 1997: status regarding beta testing;
- Letter of September 3, 1997: announcement of final testing and availability of automated update solution;
- Announcement of Year 2000 upgrade release;
- Letter of March 16, 1998: status on Year 2000 upgrade installation.

As a reminder, we enclose a copy of these communications (see attachment A). In order to take full advantage of the recently enacted _Year 2000 Information and Readiness Disclosure Act_ (Public Law 105-271, 112 Stat. 2386), we must designate certain statements and communications we made or will make as "Year 2000 Readiness Disclosures". Please note that we are designating the enclosed communications and this letter as Year 2000 Readiness Disclosures and they should be treated as such.

1.

*No insurance Coverage Provided........*

## *"YEAR 2000 READINESS DISCLOSURE"*

April 9, 1999
Vacation Express

## SPEEDRES System Year 2000 Readiness

Your customized SPEEDRES system was not specifically designed to address Year 2000 issues. We remind you that in order to do so, your SPEEDRES product requires an upgrade identified as: "SPEEDRES Year 2000 Enhancement".

In September 1997, TECH 7 informed all its customers of the availability of the SPEEDRES Year 2000 Enhancement. At about the same time, TECH 7 made available an upgrade to SPEEDRES version 8.S and certain other versions, that addresses the Year 2000 compliance. Later, in November 1998, TECH 7 released SPEEDRES version 9.0, which contained the SPEEDRES Year 2000 Enhancement. All of our customers have their own customised version of our SPEEDRES product. As such it is the customers responsibility to contact us, if they have not already done so, in order to obtain a proposed contract describing the SPEEDRES Year 2000 Enhancement for customer agreement and signature. This proposal may be obtained by contacting the TECH 7 Sales and Marketing manager or your TECH 7 account manager in our Portland, Oregon offices.

As some of you may already know if you purchase the SPEEDRES Year 2000 Enhancement separately instead of upgrading to version 9.0 or higher, the enhancement is conducted in two phases. The first phase is a diagnostic phase, consisting of an automated process and some manual testing of the Year 2000 compliance of your SPEEDRES software. This first phase allows TECH 7 to evaluate the scope of the modifications required for the SPEEDRES Year 2000 Enhancement. The second phase involves the completion of the SPEEDRES Year 2000 Enhancement, testing, and the live implementation. Testing performed by TECH 7 is limited to the tests outlined in the document entitled "SPEEDRES Year 2000 Upgrade Testing" and are limited to only the tests listed under TECH 7 responsibilities.

Please remember that any modifications, for Year 2000 purposes or otherwise, to the original licensed SPEEDRES software and system, made by anyone other than TECH 7 effectively terminates any warranty remaining on your system.

Please note that changes might be required to your existing data. The new requirements for data (in particular for the date format) are provided to each of our customers as part of the SPEEDRES Year 2000 Enhancement system testing information.

The SPEEDRES Year 2000 Enhancement is conditional upon you being equipped with the adequate version of third-party software and equipment. We attach a summary of third-party software and equipment Year 2000 readiness for certain products that may have been sold and supported by TECH 7. The compatibility and Year 2000 readiness of this software and equipment is solely based on the statements from third-party vendors ("third party" or "vendor" statements). Any testing done by

2

*"YEAR 2000 READINESS DISCLOSURE"*

April 9, 1999
Vacation Express

TECH 7 was performed on in-house equipment and in a configuration that may not be similar to the customers' installation.   TECH 7 can offer no assurances that its products are or will remain compatible with third-party products.   TECH 7 takes no responsibility regarding such third-party products as listed in the summary, with respect to their Year 2000 readiness or otherwise, or to the Year 2000 readiness or otherwise of any other third party product or vendors that you may have used. (See attachment B).

It is your responsibility to obtain the Year 2000 compliant version, release or patches for the third-party products before starting the upgrade system testing in your environment with the SPEEDRES Year 2000 Enhancement.

Another important aspect of *SPEEDRES* Year 2000 Enhancement readiness and compliance is the interface with your own clients and suppliers systems. Once again, it is your responsibility to ensure that the external software is able to handle the data formats of the SPEEDRES Year 2000 Enhancement.

We confirm the general availability of the SPEEDRES Year 2000 Enhancement and urge you to take steps to obtain a proposed contract for your review and signature from our Sales and Marketing Manager or TECH 7 account manager.   We encourage you to schedule the installation of your SPEEDRES Year 2000 Enhancement before the end of June 1999.

We remind you that nothing in this communication or in other communications regarding SPEEDRES' and TECH 7's Year 2000 readiness constitutes an addition or modification to existing warranties nor modifies any warranty limitations or waivers.

We refer you to the Limitations of Liability clauses found in your original written sales and licensing agreement(s), and any amendment made thereto, entered into between you and TECH 7 and remind you of such limitations.

TECH 7 cannot guarantee that difficulties will not arise with respect to its software with the arrival of the Year 2000.  TECH 7 further states that it shall not be held liable for any Year 2000 difficulties or damages that may arise in spite of the efforts exerted by TECH 7 and the tests made by it in order to ensure that its SPEEDRES Year 2000 Enhancement, (version 8.s upgrade, also available for certain other versions), or its new SPEEDRES version 9.0, which contains the SPEEDRES Year 2000 Enhancement, is Year 2000 compliant.  In no event shall TECH 7 be responsible or liable for any loss or damages caused by the arrival of the Year 2000 including direct, indirect, special, incidental, or consequential damages with respect to the use or performance of its software.

3.

## *"YEAR 2000 READINESS DISCLOSURE"*

April 9, 1999
Vacation Express

TECH 7 will use reasonable efforts to address any Year 2000 issue arising in connection with the use of its products, provided that the SPEEDRES Year 2000 Enhancement, or version 9.0 or higher which includes the SPEEDRES Year 2000 Enhancement, has been purchased and installed, that you are currently under service contract with TECH 7 and that no third-party modifications have been made to the TECH 7 SPEEDRES software or your system.  TECH 7 will make reasonable efforts to assist clients that have not complied with the above on an "as available" basis.

## TECH 7 SYSTEMS INC. YEAR 2000 READINESS

TECH 7 has taken steps to ensure its own internal Year 2000 readiness.  We have adopted an action plan, which is in progress.  We have taken steps to assess our third-party suppliers' software and equipment readiness and we are making required modifications when they become available.

We expect to complete our action and testing plan in the second half of 1999.

We will be pleased to answer further requests on this matter.

Sincerely,

*Jeff Kruse*
*General Manager*
*Tech 7 Systems Division, Logibro Inc.*

Attachments

4.

(800) 249-2112 • FAX (503) 245-1664

# EXHIBIT 5



OCT. 23. 1995 15:

TO:
FROM:

The
indi
tran
at (404) 321-7742 or fax (404) 248-1237.

GOOD DAY!

I HAVE BEEN ASSIGNED THE TASK OF GATHERING INFORMATION REGARDING THE
SOURCE CODE.  WHAT WOULD BE THE CHARGE FOR THE SOURCE CODE ACCESS?

ONCE WE TAKE OVER THE SOURCECODE – WHAT ARE OUR LIMITATIONS?  YOURS?

PLEASE CONTACT ME AT 404 321-7742 EXT 3009,  OR I WILL CALL YOU
TUESDAY.  IF YOU ARE NOT THE PERSON THAT I NEED TO BE SPEAKING TO
THIS ABOUT - PLEASE DIRECT ME TO THE CORRECT PARTY!

THANK YOU!
*** END OF FAX ***

*pgmmer 1 week*

*1 week*
*10n1*

~~1500/day)~~

*unibasic*
*files, etc*

*will train them how programs are structured: show them how to extract the source code from the binary program.*

*Must be scheduled thru Vicki*

*1 sign non-disclosure/non-compete for each pgmmer*

*all warranties/guarantees are void*

*ee life support is still available (, but will cost)*

*- dont sell source code*
*- all warranties*
*- wouldn't be*

# **EXHIBIT 6**

# Cutler, Gary L.

**From:** David H. Dickieson [ddickieson@schertlerlaw.com]
**Sent:** Friday, June 13, 2008 8:17 AM
**To:** Cutler, Gary L.
**Subject:** Vacation Express Modification Request

Gary –

I received your voice mail after being in Court all day yesterday. The License Agreement requires that any modification be completed by Tech 7, so I cannot consent to a modification outside of the terms of the License. Tech 7 remains ready, willing and able to address this technical issue. If your client wishes to continue to violate the terms of the License and use outside consultants, you will need to seek permission from the Court. However, you may indicate to the Court that if the Court authorizes the limited use of non-Tech 7 personnel to make this specific modification, then we would consent to the following procedure:

Vacation Express should backup the program before fixing it and then allow Tech 7 to review the difference in the programs after completion of the modification.

The specific procedure to be used should be:
1) Back up the program using the command (without quotes (")): "!cp -p <filename> <filename>.YYMMDD" where YYMMDD is the two digit year, month and date and <filename> is the name of the file being modified.
2) Give Tech 7 Systems the two file names so we can review the change(s) made.

I am in trial this week and extending into next week, but the Judge has given us Fridays off, so I am available today to discuss this if you wish to make a conference call to the Court after filing your request for a modification.

David H. Dickieson
**Schertler & Onorato, L.L.P.**
601 Pennsylvania Avenue, NW
North Building, 9th Floor
Washington, DC  20004
(202) 824-1222
Fax:  (202) 628-4177
ddickieson@schertlerlaw.com

07/07/2008