## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,**<br>840 Courtland Avenue<br>Park Ridge, IL 60068<br><br>      Plaintiff,<br><br>    vs.<br><br>**VACATION ACQUISITION, LLC, d/b/a**<br>**VACATION EXPRESS**<br>301 Perimeter Center North, Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) **Civil Case No. 08-0436-JDB**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### MOTION BY DEFENDANT VACATION
### ACQUISITION, LLC, d/b/a VACATION EXPRESS FOR SUMMARY JUDGMENT

Defendant Vacation Acquisition, LLC d/b/a Vacation Express respectfully moves

this Court, pursuant to Fed. R. Civ. P. 56(c) for summary judgment against plaintiff Tech 7

Systems, Inc. on all claims and to grant such other or further relief as the Court deems just and

proper. In support of this motion, the Court is respectfully referred to the accompanying

Certification of Gantt Cookson In Support of the Motion of Vacation Acquisition, LLC d/b/a

Vacation Express for Summary Judgment; Certification of Gary L. Cutler In Support of the

Motion of Vacation Acquisition, LLC d/b/a Vacation Express for Summary Judgment; Statement

of Points and Authorities in Support of the Motion of Vacation Acquisition, LLC d/b/a Vacation

Express for Summary Judgment; and Statement of Material Facts As to Which There Is No

Genuine Issue of Defendant Vacation Acquisition, LLC d/b/a Vacation Express.

Dated:  July 28, 2008

Respectfully submitted,

**CURTIS, MALLET-PREVOST, COLT**
**& MOSLE LLP**


_____/s/_____
Jeffrey I. Zuckerman
D.C. Bar #369120
1200 New Hampshire Avenue, N.W.
Suite 430
Washington, D.C. 20036
Tel:  (202) 452-7373
Fax:  (202) 452-7333

Admitted pro hac vice:
Gary L. Cutler
Priya Swaminathan
Curtis, Mallet-Prevost, Colt
  & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  gcutler@curtis.com
          pswaminathan@curtis.com

Of Counsel:
Turner Smith
Curtis, Mallet-Prevost, Colt
  & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  tsmith@curtis.com

cc:
David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C.  20004
Tel.:  (202) 628-4199
Fax:  (202) 628-4177
Email:  ddickieson@schertlerlaw.com
Attorneys for Plaintiff Tech 7 Systems, Inc.

## CERTIFICATE OF SERVICE

A copy of the foregoing Motion of Defendant Vacation Acquisition, LLC, d/b/a

Vacation Express for Summary Judgment and the accompanying Declaration of Gantt Cookson

In Support of the Motion of Vacation Acquisition, LLC d/b/a Vacation Express for Summary

Judgment; Declaration of Gary L. Cutler In Support of the Motion of Vacation Acquisition, LLC

d/b/a Vacation Express for Summary Judgment; Statement of Material Facts As to Which There

is No Genuine Issue of Defendant Vacation Acquisition, LLC, d/b/a Vacation Express;

Statement of Points and Authorities in Support of the Motion of Vacation Acquisition, LLC d/b/a

Vacation Express for Summary Judgment; and two proposed Orders were served by email and

by the CM/ECF system to David H. Dickieson, Esq., ddickieson@schertlerlaw.com on July 28,

2008.

July 28, 2008                              _____/s/_____
New York, NY                               Priya Swaminathan
                                           Curtis, Mallet-Prevost, Colt
                                            & Mosle LLP
                                           101 Park Avenue
                                           New York, NY  10178
                                           Tel:  (212) 696-6000
                                           Fax:  (212) 697-1559
                                           Email:  pswaminathan@curtis.com

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

TECH 7 SYSTEMS, INC.,            )
  840 Courtland Avenue         )
  Park Ridge, IL 60068          )
                            )
                 Plaintiff,   )
                            )
            vs.           )   **Civil Case No. 08-0436**
                            )
**VACATION ACQUISITION, LLC, d/b/a** )
**VACATION EXPRESS**          )
  301 Perimeter Center North, Suite 500 )
  Atlanta, GA 30346        )
**Resident Agent:**            )
  Corporate Service Company    )
  2711 Centerville Road, Suite 400   )
  Wilmington, DE 19808       )
                            )
               Defendant.  )

**DECLARATION OF GANTT COOKSON IN SUPPORT
OF THE MOTION OF VACATION ACQUISITION, LLC
D/B/A/ VACATION EXPRESS FOR SUMMARY JUDGMENT**

Pursuant to 28 U.S.C. § 1746, I, Gantt Cookson, declare under the penalty of perjury:

    1. I am Vice President Operations of defendant Vacation Express.

    2. I make this Declaration in Opposition to Tech 7 Systems, Inc.'s Motion for Emergency Injunctive Relief – Temporary Restraining Order and am fully familiar with the facts contained herein.

    3. In 1990, Vacation Express entered into the Sales and Licensing Agreement with Tech 7 Systems, Inc. ("Tech 7"). At that time, Vacation Express acquired a perpetual license to Tech 7's software known as "SpeedRes."

    4. Initially, Vacation Express used Tech 7 for support services. The support included maintenance and making custom modifications for Vacation Express in the software.

Because of ongoing customized modifications, each user of Tech 7 software gradually developed its own version of the software.

5. Beginning in or about 1995, Tech 7 began to lose programmers and the performance of the software suffered. Modifications made by Tech 7 contained numerous bugs. Tech 7 would fix one thing and another thing would not work. There were many quality programming issues. For example, new products and custom modifications failed to operate in accordance with specifications.

6. In or about 1995 and 1996, I met with Tech 7 to resolve problems they had with software that would run off of the SpeedRes platform and were designed to interface with Worldspan and Amadeus, the airline computer systems. This access was necessary to allow travel agents to book Vacation Express products.

7. Despite repeated efforts, I was unable to get Tech 7 to improve its service or to provide workable modifications to the software.

8. As a result, in or about early 1997, I began to make arrangements with a company known as Data Plus to provide ongoing support instead of Tech 7. Data Plus developed code to allow Vacation Express access to Amadeus. Among other significant modifications made to the software is code allowing web portal access. Given Vacation Express's experience with Tech 7's efforts, we had no confidence that Tech 7 could properly write such code, which was critical to the functioning of Vacation Express's business.

9. Because Vacation Express was no longer using Tech 7 for maintenance and modifications, in or around early 1997, Vacation Express stopped paying Tech 7's monthly support fee.

10. A year or two later, in or about 1998 or 1999, Rhoda Harwood, a representative of Tech 7, began calling to persuade Vacation Express to return to Tech 7 for

maintenance and modification work. Ms. Harwood called me repeatedly over a four year period for this purpose. On behalf of Vacation Express, I repeatedly declined to take up again this service from Tech 7.

11. At some point, Tech 7 was bought by Logibro of Montreal. In 1998, Vacation Express was bought by North American Leisure Group, which was using Logibro for other computer services. In 1999, North American Leisure Group decided to investigate the possibility of returning to Tech 7 for maintenance and modification services. In 2000, Tech 7 spent a week investigating the changes that Vacation Express had made to the software since the mid-1990s. Ultimately, North American Leisure Group decided not to use Tech 7 for maintenance and modification services.

12. Since 2003, Vacation Express has made its own arrangements for the maintenance and modification of the software.

13. From the time that Vacation Express stopped using Tech 7 support and modification services in 1996-97 until the receipt of the demand letter from Tech 7 in January 2008, there was never any claim by Tech 7 that Vacation Express was in breach of its obligations under the 1990 Sale and License Agreement.

14. Vacation Express suffers prejudice from the long delay by Tech 7 in bringing suit. Vacation Express is in possession of few of the documents that existed before Vacation Acquisitions acquired Vacation Express in December 2004. It has virtually none of the correspondence with Tech 7 and other related documents concerning: 1) the negotiation and initiation of the SLA in 1990; 2) complaints Vacation Express made about Tech 7 software in 1995 and 1996; 3) stopping of the monthly maintenance and support payment to Tech 7 by Vacation Express in 1997; 4) Tech 7's awareness that Vacation Express had hired Data Plus to modify and maintain the SpeedRes source code; 5) Tech 7's review in 2000 of Vacation

Express's modifications to SpeedRes; and 6) the sale of Vacation Express to NALG or to FlightServe, Inc.

15.  Witnesses who would support Vacation Express's defenses have also died during the long period in which Tech 7 delayed its lawsuit.  Bob Martin, who negotiated and interfaced with Tech 7 from 1990 to 1995, is now deceased.

16.  Another form of prejudice suffered by Vacation Express due to Tech 7's delay in bringing its lawsuit concerns Vacation Express's changed circumstances and expenditure of money to devise new applications and maintain and repair SpeedRes.  Vacation Express has spent hundreds of thousands of dollars since it stopped using Tech 7 to perform these functions. Major applications that Vacation Express had created for its business include the internet booking engine and the Airport Operations Menu.  The internet booking engine was created in the mid-1990s.  The internet booking engine allows travel agents and consumers to shop and book vacation packages on-line.  The Airport Operations Menu performs a number of important functions.  Among them is the printing of passenger manifests and boarding passes.  As a result of years of modifications to the system, SpeedRes is customized to fit Vacation Express's needs.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008
Atlanta, Georgia

_____
Gantt Cookson
Vacation Express

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

**TECH 7 SYSTEMS, INC.,**                        )
  840 Courtland Avenue                        )
  Park Ridge, IL 60068                           )
                                 )
                    Plaintiff,         )
                                 )
           vs.                         )     **Civil Case No.  08-0436**
                                 )
**VACATION ACQUISITION, LLC, d/b/a**        )
**VACATION EXPRESS**                              )
  301 Perimeter Center North, Suite 500      )
  Atlanta, GA 30346                              )
**Resident Agent:**                                  )
  Corporate Service Company                   )
  2711 Centerville Road, Suite 400            )
  Wilmington, DE 19808                          )
                                 )
                   Defendant.         )

### DECLARATION OF GARY L. CUTLER IN SUPPORT OF
### THE MOTION OF VACATION ACQUISITION, LLC
### d/b/a VACATION EXPRESS FOR SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, Gary L. Cutler, declare under the penalty of

perjury:

      1.     As part of initial disclosures pursuant to Fed.R.Civ. P. 26(a)(1), Plaintiff

Tech 7 Systems, Inc. provided the attached exhibits 1 through 10, which are true and correct

copies of these documents as produced by Tech 7 Systems, Inc.

      I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008
New York, New York

                                      Gary L. Cutler
                                      Curtis, Mallet-Prevost, Colt
                                        & Mosle LLP
                                      101 Park Avenue
                                      New York, NY  10178

# Exhibit 1



**TO:**    Amnon Gibly
TECH 7

**FROM:**    Gantt Cookson
VACATION EXPRESS

**DATE:**    24 April 95

**RE:**    Toursource

Dear Amnon:

Unfortunately, I am sending you this letter to express my unhappiness with the progress that I have made with the Worldspan Toursource programs. I will be the first to admit that some of the delay is my fault. I thought that the program would be more of a "turn key" operation and I have not had sufficient time to devote to the connectivity problems that we initially had back in February.

Since Kevin left Tech 7, Rick has worked very well with me on the program, but has been pulled for 2, 10 day stretches for upgrades on other operator's systems. I know he is also very busy with other projects. Meanwhile, I am pushed to the back burner once again. Also, Kevin made many modifications to our system as we sell our charter flights in a very unusual way. When he left, I think he left Rick in the dark on what he had done.

My frustration level is very high. I feel that if you are going to market a product, you should have support personnel for the program.

Please feel free to contact me if you have any questions or comments.

Thanks for listening.

*Gantt Cookson.*

Atlanta Telephone:
404.321.7742
Atlanta Facsimile:
404.248.1237

Vacation Express, Inc.
Suite 120
2957 Clairmont Road
Atlanta, Georgia
30329
USA

Nationwide
Reservations:
404.636.8362
800.486.9777

# Exhibit 2



TO:        Pamela Luan-Zaehler
           TECH 7

FROM:      Gantt Cookson
           VACATION EXPRESS

DATE:      15 November 95

RE:        Charter Load

---

Dear Pamela:

It's me again! Enjoyed meeting you while in PDX. Thanks for all the hospitality.

Now it's time to bitch.......
We upgraded our system last fall. With the upgrade, we purchased "Charter Load".
During the installation, we did not have time to train on this program. Bob has since tried
to play with the program from instructions in the manual, but kept getting stop statements.
These were reported a couple of times, but nothing was ever resolved. While in PDX,
Allan gave us a lesson on the program. We loved it, came home and tried it, but it did not
work the way we were taught. Now we find that we have an older version that does not
work the same way as the "current" version........I want the current version, and no, I don't
want to pay for it!

Please waive you magic wand......

Let me know.

Thanks and regards,

Atlanta Telephone:
404.321.7742
Atlanta Facsimile:
404.248.1237

Vacation Express, Inc.
Suite 120
2957 Clairmont Road
Atlanta, Georgia
30329
USA

Nationwide
Reservations:
404.636.8362
800.486.9777

# Exhibit 3



copy
John
Annie.

TO:      Lyle Hobbs
         TECH 7 SYSTEMS

FROM:    Gantt Cookson
         VACATION EXPRESS

DATE:    10 July 96

RE:      TOURSOURCE

Dear Lyle:

I would like to take this opportunity to request a refund on the $18,500 payment that we made 2 years ago for the Toursource product. I do have the "black box" here in our office that I will forward back to you. In addition to the $18,500 that we paid you, we have incurred over $10,000 in communication expenses with Worldspan for our equipment and data lines over the past 2 years. I feel that it is not prudent to continue these expenses with no hope on the horizon for a viable product.

Thank you for your cooperation.

Best regards,

*Gantt Cookson*

Atlanta Telephone:
404.321.7742
Atlanta Facsimile:
404.248.1237

Vacation Express, Inc.
Suite 120
2957 Clairmont Road
Atlanta, Georgia
30329
USA

Nationwide
Reservations:
404.636.8362
800.486.9777

# Exhibit 4



A SUBSIDIARY OF LOGIBRO, INC

April 10, 1997

*Sample*

Dear

In our last letter we promised a few announcements regarding some of the changes that we are currently making at Tech 7. One of these announcements was to cover the reorganization of our Customer Service department and the fact that we would be adding a new group of account coordinators. The primary objective of this group is to increase Tech 7 customer satisfaction. We are pleased to announce that the account coordinators have been assigned. They are Kacie Christie, Melinda Gallagher, and Masood Saidi-Nejat.

This change in structure became official as of April 1st. So, you will start hearing from your account coordinator on a regular basis soon. It is important to note that this group does not replace the telephone help desk. They will be involved in the management of your projects, programming needs, training and service management. Your day-to-day calls will still be handled by our telephone help desk. However, if you have a service issue that is not handled in a reasonable manner, please feel free to contact your account coordinator or sales account manager.

While we are discussing service, it is important to note that additional resources were invested during the first quarter of 1997. This extra effort eliminated the back log in the service center and brought the status of all normal help desk programming and training questions to current. Tech 7 has also completed a document titled Summary of Service Standards. This document is being mailed under separate cover to customers that have signed for service. If you are covered by a service contract, you should now be receiving current service on any calls or faxes you have sent in to the help desk.

We also announced in our last letter that we would shortly be ready to schedule a few customers for the year 2000 upgrade project. We are now ready to begin that project. Several of you may already be working on bookings for the year 2000. If you are one of these operators, please let us know as soon as possible to receive your proposal.

Please contact me if you have any questions or if you will be attending Travel Weekly's June 1997 Conference in San Diego. I would enjoy meeting with you there. Thanks again for your continued business and support of Tech 7 Systems.

Sincerely,

Jeffrey R. Kruse
Executive Vice President

# Exhibit 5

**Deanna Bernett**

From: Masood Saidi-Nejat <masood@tech7.com>
To: T7--Deanna Bernett <deanna@tech7.com>
Cc: T7--Jeff Kruse <jeffk@tech7.com>; T7--Rhoda Harwood <rhoda@tech7.com>
Subject: VAE-- Information for you to know....
Date: Thursday, May 14, 1998 5:17 PM

Interesting information :

Vacation Express          GA      Atlanta [1] 404-636-8362
Mr. Gantt Cookson
Mr. Kevin Hernandez
Purchased in 1988
Total Pax/y:      100,000
Totla Bkgs/y:     45000/y
CRS:              Amaduse/System one
SR rev.           8.s
Hardware:         Motorola Risc
Destination       Cancun, Aruba, Jamaica
Total Res #:      60
Bus. income       Charter 90%  / FIT 10%
Enhancements      FAX, CC,   Fast Air(Data Plus)   Tkt Captr (Data Plus)
Season:           H=jan-July   L=Agst-Dec
Y2K               Data Plus told them that it will get done sometimes soon.
E-mail            Janttc@vacationexpress.com
Report writer     DATA PLUS
Web access        WEB ALIVE
Service DATA PLUS support

*Contract felt doesn't show that they ever purchased*
*Contract doesn't show that they ever purchased*
*version 8.5. tie originally sold that bot*

# Exhibit 6

## Deanna Bernett

From: Rhoda Harwood <rhoda@tech7.com>
To: deanna@tech7.com
Subject: Fw: Vacation Express
Date: Tuesday, June 09, 1998 9:28 AM

Deanna - I notice that JK didn't copy you in.  He probably thought this was
my account.  You need to know what went on, so this is for your file.  I
personally think his going on T7 service is a long shot.  Since he has DP's
version of DAT, he'd still need them to support it, unless we can???  I
wonder if this is another VisiFax type service problem where we offer
support for a non Tech 7 product.
Rhoda

----------
> From: Kruseing@aol.com
> To: christophe@tech7.com; rhoda@tech7.com; mpoirier@logibro.com;
kacie@tech7.com; masood@tech7.com; yinkar@tech7.com
> Subject: Vacation Express
> Date: Monday, June 08, 1998 11:34 AM
>
> Just some notes from visit to Vacation Express -
>
> Rhoda & I visited this account last Thursday and met with Gantt Cookson,
Exec.
> Dir..  They are using Dataplus for service and customization.  They
originally
> switched to Dataplus because Toursource had been installed for two years
and
> was not working.  Dataplus has had it for another two years and they are
just
> switching to Beta this month.  Gantt said that  Dataplus service was good
at
> first but now he is no better off.  I suggest that we send him a current
> proposal.
>
> Their understanding of the system is a bit weak.  I suggested to Gantt
that we
> send in a trainer for a day or two just to update them as part of the
service.
> Masood should keep Atlanta in mind.
>
> They want the Tournet connection soon and I will keep them posted.
>
> They have IQ, but find it far too dificult to use.  Want the option of
easy
> report writer.
>
> Jeff K.

# Exhibit 7

# TECH 7 SYSTEMS INC

A SUBSIDIARY OF LOGIBRO, INC

*—Mailed*

June 15, 1998

Gantt Cookson
Vacation Express
2957 Clairmont Road
Suite 120
Atlanta, GA  30329

Dear Gantt:

Thank you for taking the time to meet with Rhoda Harwood and Jeff Kruse earlier this month. This was a good opportunity for us to keep in touch with what is happening at Vacation Express.

They confirmed that you are still receiving system support services from Data Plus, but suggested that you might want to take a look again at our support contract. I have enclosed a Support Services contract for your consideration. The last page of this document, page 10, outlines the fees for service.

Note that there are several areas in which fees are "To Be Announced (TBA)". This is because you have third party products tied into your SpeedRes system that need to be considered for Tech 7 support. In addition, I am not certain if you are still using the Tech 7 fax subsystem. Because of the third party products and the work done by a third party support company, we would need to do a thorough analysis of your system to determine what would be involved in supporting those items. Please let me know if you would like a proposal for such an analysis.

Note that we are also including two days of training free of charge with this contract, except for possibly travel expenses, unless we are in your area.

I hope we have the opportunity to work with you again on an ongoing basis. Until then, keep in mind that we are available to you if you do need any assistance with your system and we will continue to update you on new features that become available.

Best regards,

Deanna Bernett
Marketing Executive

# Exhibit 8



**LOGIBRO**

Solutions that *travel*

## ANALYSIS/CONSULTATION PROPOSAL
Prepared for
### VACATION EXPRESS

### OCTOBER 6, 2000

### ANALYSIS:

Three Days on-site Analysis @ $1,000.00 per day with Masood
Saidi-Nejat . The purpose of this analysis is to determine what
customizations need to be moved over from VACATION EXPRESS's
current SpeedRes version to the new version 10.0.                    $ 3,000.00

VACATION EXPRESS will be responsible for all travel expenses, to
include air fare, 3 nights hotel accommodation, ground transportation and
$35.00 per day meal allowance.

### NOTE:

In the event VACATION EXPRESS goes ahead with the software
upgrade (to SpeedRes version 10.0), a full credit of $3,000.00 will
be allowed towards the total price of that upgrade.

---

*This proposal when accepted by an authorized agent of VACATION EXPRESS and returned to*
*Logibro/Tech 7 Systems, will become an addendum to the Sales and Licensing Agreement between*
*VACATION EXPRESS and Tech 7 Systems, Inc. Full payment is due in advance. The prices quoted in*
*this proposal are valid for a period of thirty (30) days from the date of this proposal. All prices quoted are*
*in $US.*

---

**VACATION EXPRESS:**                     **Logibro/Tech 7 Systems, Inc.**
Accepted by: _Grant Cookson_              **Approved by:** _____

Signature: _G. Coon_                      Signature: _____
Title: _V. P. ops_                        Title: _____
Date: _10/13/00_                          Date: _____

## RAPPORT DE DÉPENSES
### *EXPENSE REPORT*

**LOGIBRO INC.**

Nom / *Name* : **Masood Saidi-Nejat**          Département / *Department*: **LOG- eComm**

### RAISON DE LA DÉPENSE
### *EXPENSE JUSTIFICATION*

Réservé à la comptabilité / *Reserved to Accounting* :
Client: _____ facture # ____
Client: _____ facture # ____
Client: _____ facture # ____

| | | |
|---|---|---|
| Administration générale *General Administration* | ☐ | Spécifier / *Specify* : _____ |
| Formation *Training* | ☐ | Titre du cours *Course Title* : _____ |
| Conférence & Congrès *Conference & Symposium* | ☐ | Spécifier / *Specify* : _____ |
| Exposition *Show* | ☐ | Spécifier / *Specify* : _____ |
| Voyage chez client *Travel at / for a Client* | ☒ | Spécifier / *Specify* : <u>VEX- 3 Days on site analysis(10/24-26/2000)</u> |
| Voyage chez fournisseur *Travel at / for a Supplier* | ☐ | Spécifier / *Specify* : _____ |
| Voyage inter-division *Inter-Branch Trip* | ☐ | Spécifier / *Specify* : _____ |
| Dépense de représentation *Entertainment Expense* | ☐ | Spécifier / *Specify* : _____ |

Lieu du voyage / Trip Itinerary     PDX-ATL-PDX          Du / From: **10/24/2000**     Au / To: **10/26/2000**

Devises / *Currency* :  ☐ $CAN   ☒ $US   ☐ Autre / *Other*: _____

FACTURABLE (Oui/Non)/ *BILLABLE (Yes/No)* ?: **YES**

NO. DE LOG / *LOG No* : _____

| A. TRANSPORT. | MONTANT *AMOUNT* |
|---|---|
| (1) Avion / *Flight* | $ - |
| (2) Location auto / *Car Rental* | $ 340.61 |
| (3) Taxi / *Cab* | $ |
| (4) Utilisation auto / *Car Usage* | $ 9.60 |
| (5) Stationnement / *Parking* | $ 24.00 |
| **Total (a)** | **$ 374.21** |

| B. DIVERS / *MISC.* | MONTANT *AMOUNT* |
|---|---|
| (6) Diverses dépenses / *Misc.* | $ - |
| **Total (b)** | **$** |

| C. REPAS / *MEALS* | MONTANT *AMOUNT* |
|---|---|
| (7) Conférence cie. / *Co Conference* | $ - |
| (8) Repas voyage / *Travelling Meal* | $ 105.00 |
| (9) Repas client-fourn. / *Client-supp. Meal* | $ - |
| **Total (c)** | **$ 105.00** |

| D. HOTEL | MONTANT *AMOUNT* |
|---|---|
| (10) Chambre / *Room* | $ 492.73 |
| (11) Autre / *Others* | $ - |
| **Total (d)** | **$ 492.73** |

| TOTAL DES DÉPENSES *TOTAL ENPENSES* (a+b+c+d) | $ 971.94 |
|---|---|

### SOMMAIRE

| | |
|---|---|
| TOTAL DES DÉPENSES / *TOTAL EXPENSES* | $ 971.94 |
| MOINS / *MINUS* : | |
| PAYÉ PAR LA COMPAGNIE / *PAID BY Co* : | |
| AVANCE DE VOYAGE / *TRAVEL ADVANCE* | |
| TOTAL : | $971.94 |

☒ Dû à l'employé / *Due to the Employee*

☐ Remboursement cie / *Company Refund*

Signature de l'employé / *Employee's signature* :   *Saidi Nejat,* [signature]

Date: (aa/mm/yy)   **27-Oct-00**

Signature du supérieur immédiat / *Manager's signature* : _____

Date: (aa/mm/yy) _____

Nom/Name: **Masood Saidi-Nejat**

LOGIBRO INC.

Note: une dépense...

## A. TRANSPORT / TRANSPORTATION

| DATE Du From / Au To | LIEU LOCATION De From | A To | AVION/FLIGHT Montant Amount | PAYE CO | LOCATION AUTO / CAR RENTAL | TAXI CAB | UTILISATION AUTO CAR USAGE Mile | $ | STATIONNEMENT PARKING | DIVERS MISC. |
|---|---|---|---|---|---|---|---|---|---|---|
| 24-Oct-00 | PDX | ATL | Pre-Paid | | $ 340.61 | | | | $8.00 | |
| 25-Oct-00 | | | | | | | | | $8.00 | |
| 26-Oct-00 | | | | | | | 30 | 9.60 | $8.00 | |
| **TOTAL:** | | | $ - (1) | | $ 340.61 (2) | $ - (3) | | $ 9.60 (4) | $ 24.00 (5) | $ - (6) |

## C. REPAS / MEALS

| DATE | D | L | S | CONFERENCE CIE Co CONFERENCE | REPAS VOYAGE / TRAVEL MEAL | REPAS CLIENT-FOURNISSEUR /CLIENT-SUPPLIER MEAL | NOM DES PERSONNES INDIVIDUAL NAMES |
|---|---|---|---|---|---|---|---|
| 24-Oct-00 | 7.5 | 7.5 | 20 | | $ 35.00 | | |
| 25-Oct-00 | 7.5 | 7.5 | 20 | | $ 35.00 | | |
| 26-Oct-00 | 7.5 | 7.5 | 20 | | $ 35.00 | | |
| **TOTAL:** | | | | $ - (7) | $ 105.00 (8) | $ - (9) | |

## D. HOTEL

| CHAMBRE ROOM | AUTRE MISC. | SPECIFIER SPECIFY |
|---|---|---|
| $164.25 | | |
| $164.25 | | |
| $164.23 | | |
| $ 492.73 (10) | $ - (11) | |

# Exhibit 9

## Rhoda Harwood

**From:** Gantt Cookson [ganttc@vacationexpress.com]
**Sent:** Wednesday, November 08, 2000 1:41 PM
**To:** 'Rhoda Harwood'
**Cc:** Masood Saidi-Nejat; Joyce Ramsay; 'bryan.blenkin@corp.nalg.com'
**Subject:** RE: VEX Potential Upgrade


vexcustgc.doc

Okay Ms. Harwood.....

Let's shake a stick and get this done.

Ref our gateway for Amadeus....No, we
are not using the old DAT gateway. When
we moved from System One to Amadeus
we transferred everything from DAT (Tech 8
in my book) over to the Data Plus Product
and they provided us with new hardware...
(We had a Westinghouse board on DAT, and
Amadeus would not support...Have to move
to Lanyon....Are you sure Amadeus will support
your new board???????).....

Yes, we currently have 32 TAs...and I was
actually thinking about reducing these down.
Our sked air bookings are very low and it will
help me maintain free automation from Amadeus
by reducing this number.

The Data Plus product allows us to pool the TAs
where the old DAT used to assign a TA to an
individual at log in and that exact TA would stick
with that individual all day...I certainly hope that
is not the case any more with the new DAT.

*FYI*
*when you discuss*
*with Mariner*

I have gone thru the document that Joyce looked over
and tried to answer some of her questions. Hope that
helps. If she needs anything more specific, let me know,
or just have her email me directly.

Let me know if you need anything else from here that
will expedite this gig.

Thanks and regards,
Gantt

-----Original Message-----
**From:** Rhoda Harwood [SMTP:rhodah@tech7.com]
**Sent:** Wednesday, November 08, 2000 3:28 PM
**To:** Gantt Cookson
**Cc:** Masood Saidi-Nejat; Joyce Ramsay
**Subject:** VEX Potential Upgrade

Hi Gantt:

So much for my optimism about getting a proposal to you yesterday. I've run
into a couple of snags. One is that since Masood is out of the country on
vacation, I have to get the eComm pricing from someone else. She's been in
meetings with Sabre for 2 days, but I just spoke to her and she will try and
get me some answers as soon as possible.

The next thing is DAT. I don't see any info. from Masood on your DA gateway
setup (Data Plus's version), and since he's not here I can't ask if he
looked at your set-up. How many gateways and TA's do you currently have?

1

# Exhibit 10

# TECH 7 SYSTEMS INC

US Postal Service
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Z 435 484 937

Sent to

Vacation Express
2957 Clairmont Road, Suite 120
Atlanta, GA 30329

| Postage | $.99 |
| Certified Fee | 1.40 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | |

### "YEAR 2000 READINESS DISCLOSURE"

April 9, 1999

Kevin Hernandez
Vacation Express
2957 Clairmont Road, Suite 120
Atlanta, GA 30329

Subject: ___*SPEEDRES* Software  – Year 2000 Readin___

Dear Kevin:

TECH 7 SYSTEMS INC. has received requests for information from its customers regarding its *SPEEDRES* software Year 2000 readiness and regarding TECH 7's own plan to ensure internal Year 2000 readiness.

TECH 7 hereby wishes to remind all its customers, including customers who did not enter into a Support and Maintenance Agreement with TECH 7, about some of our previous communications on the subject. We also present to you a review and an update.

For almost two years now, TECH 7 has been providing you and all its customers with a number of communications regarding the Year 2000 readiness of its SPEEDRES product, including the following:

- Letters of March 24, 1997 and April 10, 1997: request for beta customers for Year 2000 conversion;
- Letter of May 14, 1997: status regarding beta testing;
- Letter of September 3, 1997: announcement of final testing and availability of automated update solution;
- Announcement of Year 2000 upgrade release;
- Letter of March 16, 1998: status on Year 2000 upgrade installation.

As a reminder, we enclose a copy of these communications (see attachment A). In order to take full advantage of the recently enacted *Year 2000 Information and Readiness Disclosure Act* (Public Law 105-271, 112 Stat. 2386), we must designate certain statements and communications we made or will make as "Year 2000 Readiness Disclosures". Please note that we are designating the enclosed communications and this letter as Year 2000 Readiness Disclosures and they should be treated as such.

1.

No insurance Coverage Provided

## "YEAR 2000 READINESS DISCLOSURE"

April 9, 1999
Vacation Express

## SPEEDRES System Year 2000 Readiness

Your customized SPEEDRES system was not specifically designed to address Year 2000 issues. We remind you that in order to do so, your SPEEDRES product requires an upgrade identified as: "SPEEDRES Year 2000 Enhancement".

In September 1997, TECH 7 informed all its customers of the availability of the SPEEDRES Year 2000 Enhancement. At about the same time, TECH 7 made available an upgrade to SPEEDRES version 8.S and certain other versions, that addresses the Year 2000 compliance. Later, in November 1998, TECH 7 released SPEEDRES version 9.0, which contained the SPEEDRES Year 2000 Enhancement. All of our customers have their own customised version of our SPEEDRES product. As such it is the customers responsibility to contact us, if they have not already done so, in order to obtain a proposed contract describing the SPEEDRES Year 2000 Enhancement for customer agreement and signature. This proposal may be obtained by contacting the TECH 7 Sales and Marketing manager or your TECH 7 account manager in our Portland, Oregon offices.

As some of you may already know if you purchase the SPEEDRES Year 2000 Enhancement separately instead of upgrading to version 9.0 or higher, the enhancement is conducted in two phases. The first phase is a diagnostic phase, consisting of an automated process and some manual testing of the Year 2000 compliance of your SPEEDRES software. This first phase allows TECH 7 to evaluate the scope of the modifications required for the SPEEDRES Year 2000 Enhancement. The second phase involves the completion of the SPEEDRES Year 2000 Enhancement, testing, and the live implementation. Testing performed by TECH 7 is limited to the tests outlined in the document entitled "SPEEDRES Year 2000 Upgrade Testing" and are limited to only the tests listed under TECH 7 responsibilities.

Please remember that any modifications, for Year 2000 purposes or otherwise, to the original licensed SPEEDRES software and system, made by anyone other than TECH 7 effectively terminates any warranty remaining on your system.

Please note that changes might be required to your existing data. The new requirements for data (in particular for the date format) are provided to each of our customers as part of the SPEEDRES Year 2000 Enhancement system testing information.

The SPEEDRES Year 2000 Enhancement is conditional upon you being equipped with the adequate version of third-party software and equipment. We attach a summary of third-party software and equipment Year 2000 readiness for certain products that may have been sold and supported by TECH 7. The compatibility and Year 2000 readiness of this software and equipment is solely based on the statements from third-party vendors ("third party" or "vendor" statements). Any testing done by

2

*"YEAR 2000 READINESS DISCLOSURE"*

April 9, 1999
Vacation Express

TECH 7 was performed on in-house equipment and in a configuration that may not be similar to the customers' installation.   TECH 7 can offer no assurances that its products are or will remain compatible with third-party products.   TECH 7 takes no responsibility regarding such third-party products as listed in the summary, with respect to their Year 2000 readiness or otherwise, or to the Year 2000 readiness or otherwise of any other third party product or vendors that you may have used. (See attachment B).

It is your responsibility to obtain the Year 2000 compliant version, release or patches for the third-party products before starting the upgrade system testing in your environment with the SPEEDRES Year 2000 Enhancement.

Another important aspect of *SPEEDRES* Year 2000 Enhancement readiness and compliance is the interface with your own clients and suppliers systems. Once again, it is your responsibility to ensure that the external software is able to handle the data formats of the SPEEDRES Year 2000 Enhancement.

We confirm the general availability of the SPEEDRES Year 2000 Enhancement and urge you to take steps to obtain a proposed contract for your review and signature from our Sales and Marketing Manager or TECH 7 account manager.   We encourage you to schedule the installation of your SPEEDRES Year 2000 Enhancement before the end of June 1999.

We remind you that nothing in this communication or in other communications regarding SPEEDRES' and TECH 7's Year 2000 readiness constitutes an addition or modification to existing warranties nor modifies any warranty limitations or waivers.

We refer you to the Limitations of Liability clauses found in your original written sales and licensing agreement(s), and any amendment made thereto, entered into between you and TECH 7 and remind you of such limitations.

TECH 7 cannot guarantee that difficulties will not arise with respect to its software with the arrival of the Year 2000.  TECH 7 further states that it shall not be held liable for any Year 2000 difficulties or damages that may arise in spite of the efforts exerted by TECH 7 and the tests made by it in order to ensure that its SPEEDRES Year 2000 Enhancement, (version 8.s upgrade, also available for certain other versions), or its new SPEEDRES version 9.0, which contains the SPEEDRES Year 2000 Enhancement, is Year 2000 compliant.  In no event shall TECH 7 be responsible or liable for any loss or damages caused by the arrival of the Year 2000 including direct, indirect, special, incidental, or consequential damages with respect to the use or performance of its software.

3.

**"*YEAR 2000 READINESS DISCLOSURE*"**

April 9, 1999
Vacation Express

TECH 7 will use reasonable efforts to address any Year 2000 issue arising in connection with the use of its products, provided that the SPEEDRES Year 2000 Enhancement, or version 9.0 or higher which includes the SPEEDRES Year 2000 Enhancement, has been purchased and installed, that you are currently under service contract with TECH 7 and that no third-party modifications have been made to the TECH 7 SPEEDRES software or your system. TECH 7 will make reasonable efforts to assist clients that have not complied with the above on an "as available" basis.

## TECH 7 SYSTEMS INC. YEAR 2000 READINESS

TECH 7 has taken steps to ensure its own internal Year 2000 readiness. We have adopted an action plan, which is in progress. We have taken steps to assess our third-party suppliers' software and equipment readiness and we are making required modifications when they become available.

We expect to complete our action and testing plan in the second half of 1999.

We will be pleased to answer further requests on this matter.

Sincerely,

*Jeff Kruse*
*General Manager*
*Tech 7 Systems Division, Logibro Inc.*

Attachments

4.

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

TECH 7 SYSTEMS, INC.,                     )
  840 Courtland Avenue                     )
  Park Ridge, IL 60068                     )
                              )
                Plaintiff,          )
                              )
           vs.                     )   **Civil Case No.  08-0436-JDB**
                              )
VACATION ACQUISITION, LLC, d/b/a          )
VACATION EXPRESS                          )
  301 Perimeter Center North, Suite 500    )
  Atlanta, GA 30346                        )
**Resident Agent:**                       )
  Corporate Service Company                )
  2711 Centerville Road, Suite 400         )
  Wilmington, DE 19808                     )
                              )
                Defendant.          )

## STATEMENT OF MATERIAL FACTS AS TO
## WHICH THERE IS NO GENUINE ISSUE Of DEFENDANT
## VACATION ACQUISITION, LLC, d/b/a VACATION EXPRESS

Pursuant to Local Civil Rule 7(h) defendant Vacation Acquisition, LLC, d/b/a

Vacation Express states that the following are material facts as to which there is no genuine issue

along with the supporting reference to the record:

1) Vacation Express, Inc. and Tech 7 Systems, Inc. ("Tech 7") entered into a Sales and Licensing Agreement effective June 26, 1990. <u>Source</u>:  Complaint, Exhibit 1 at p. 1.

2) The SLA provided a perpetual license for the Tech 7 software.  <u>Source</u>: Complaint, ¶ 9, Ex. 1, at p. 1.

3) Article III, paragraph 4 of the SLA states in relevant part:  "In no event will any warranty or liability on SELLER survive alteration or modification by anyone other than SELLER, unless SELLER agrees in writing." <u>Source</u>: Complaint, Exh. 1, at p. 3.

4) Article III, paragraph 5 of the SLA states in relevant part: "Help Desk support and additional training at either BUYER'S or SELLER's site are optional and not included in this Agreement." Source: Complaint, Exh. 1, at p. 3.

5) In an April 21, 1995 memo from Gantt Cookson of Vacation Express to Amnon Gibly of Tech 7, Mr. Cookson expressed his "unhappiness" with Tech 7's Worldspan Toursource product. The memo was produced by Tech 7 from its company files. Source: Cutler Certification ("Decl."), Exh. 1.

6) In a November 15, 1995 memo from Gantt Cookson of Vacation Express to Pamela Luan-Zaehler of Tech 7, Mr. Cookson registered a complaint concerning Tech 7's product, "Charter Load." The memo was produced by Tech 7 from its company files. Source: Cutler Decl., Exh. 2.

7) In a July 10, 1996 memo from Gantt Cookson of Vacation Express to Lyle Hobbs of Tech 7, Mr. Cookson requested a refund for the Toursource product. The memo was produced by Tech 7 from its company files. Source: Cutler Certification ("Decl."), Exh. 3.

8) A sample letter for the signature of Jeffrey R. Kruse, Executive Vice President of Tech 7, and dated April 10, 1997 stated, "In our last letter we promised a few announcements regarding some of the changes that we are currently making at Tech 7. One of these announcements was to cover the reorganization of our Customer Service department and the fact that we would be adding a new group of account coordinators. The primary objective of this group is to increase Tech 7 customer satisfaction." The document was produced by Tech 7 from its company files. Source: Cutler Decl., Exh. 4.

9) An email from Masood Saidi-Nejat of Tech 7 to Deanna Bernett and Jeff Kruse of Tech 7 dated May 14, 1998 is entitled "VAE – Information for you to know . . ." and refers to Vacation Express. The document states, among other things, "Y2K Data Plus told them that it will get done sometimes soon . . .Report writer DATA PLUS . . .Service DATA PLUS support." The document was produced by Tech 7 from its company files. Source: Cutler Decl., Exh. 5.

10) An email from Jeff K. to persons at Tech 7 dated June 8, 1998 states in relevant part, "[j]ust some notes from visit to Vacation Express - Rhoda and I visited this account last Thursday and met with Gantt Cookson, Exec. Dir. They are using Dataplus for service and customization. They originally switched to Dataplus because Toursource had been installed for two years and was not working. Dataplus has had it for another two years and they are just switching to Beta this month. Gantt said that Dataplus service was good at first but now he is no better off. I suggest we send him a current proposal." The email was produced by Tech 7 from its company files. Source: Cutler Decl. Exh. 6.

11) In a June 15, 1998 letter from Deanna Bernett, Marketing Executive at Tech 7 to Gantt Cookson of Vacation Express, Ms. Bernett stated, "They confirmed that you are still receiving system support services from Data Plus. . ." Ms. Bernett then stated, "you might want to look again at our support contract. I have enclosed a Support Services contract for your consideration." The document was produced by Tech 7 from its company files. <u>Source</u>: Cutler Decl., Exh. 7

12) Vacation Express, Inc. was purchased by My Travel, PLC, a United Kingdom-based company, in 1998 and made part of MyTravel subsidiary, North American Leisure Group (NALG). Vacation Express continued to use the Tech 7 software. <u>Source</u>: Complaint, ¶ 16.

13) NALG did not ask Tech 7 to transfer the software license acquired by Vacation Express with the signing of the SLA. <u>Source</u>: Complaint, ¶ 18.

14) An October 6, 2000 "Analysis/Consultation Proposal" from Logibro/Tech 7 Systems to Vacation Express was presented by Tech 7 as part of a three day on-site analysis by Masood Saidi-Nejat of Tech 7 whose purpose was to "determine what customizations need to be moved over from VACATION EXPRESS's current SpeedRes version to the new version 10.0" The Tech 7 proposal stated further, "[t]his proposal when accepted by an authorized agent of VACATION EXPRESS and returned to Logibro/Tech 7 Systems, will become an addendum to the Sales and Licensing Agreement between VACATION EXPRESS and Tech 7 systems." Attached to the proposal is an expense report in the name of Masood Saidi-Nejat for a three days on site analysis at Vacation Express. This document was produced by Tech 7 from its company files. <u>Source</u>: Cutler Decl., Exh. 8.

15) In a November 8, 2000 email from Gantt Cookson of Vacation Express to Rhoda Harwood of Tech 7, Mr. Cookson stated, "Ref our gateway for Amadeus . . . No, we are not using the old DAT gateway. When we moved from System One to Amadeus we transferred everything from DAT (Tech 8 in my book) over to the Data Plus Product . . ." This document was produced by Tech 7 from its company files. <u>Source</u>: Cutler Decl., Exh. 9.

16) In an April 9, 1999 letter from Jeff Kruse of Tech 7 to Kevin Hernandez of Vacation Express, Kruse stated: "TECH 7 hereby wishes to remind all its customers, including customers who did not enter into a Support and Maintenance Agreement with TECH 7, about some of our previous communications on the subject." <u>See</u> Cutler Decl., Exh. 10, p. 1. Mr. Kruse stated further, "[p]lease remember that any modifications, for Year 2000 purposes or otherwise, to the original licensed SPEEDRES software and system, made by anyone other than TECH 7 effectively terminates any warranty remaining on your system." <u>See</u> Cutler Decl., Exh. 10, p. 2. This

document was produced by Tech 7 from its company files. <u>Source</u>: Cutler Decl, Exh. 10, pp. 1-2.

Dated:  July 28, 2008                    Respectfully submitted,


**CURTIS, MALLET-PREVOST, COLT
 & MOSLE LLP**


_____/s/_____
Jeffrey I. Zuckerman
D.C. Bar #369120
1200 New Hampshire Avenue, N.W.
Suite 430
Washington, D.C. 20036
Tel:  (202) 452-7373
Fax:  (202) 452-7333

Admitted pro hac vice:
Gary L. Cutler
Priya Swaminathan
Curtis, Mallet-Prevost, Colt
 & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email: gcutler@curtis.com
         pswaminathan@curtis.com

Of Counsel:
Turner Smith
Curtis, Mallet-Prevost, Colt
 & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  tsmith@curtis.com

cc:
David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C.  20004
Tel.:  (202) 628-4199
Fax:  (202) 628-4177
Email:  ddickieson@schertlerlaw.com

### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF COLUMBIA

| | |
|---|---|
| **TECH 7 SYSTEMS, INC.,**<br>840 Courtland Avenue<br>Park Ridge, IL 60068 | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | )<br>) |
| **VACATION ACQUISITION, LLC, d/b/a**<br>**VACATION EXPRESS**<br>301 Perimeter Center North, Suite 500<br>Atlanta, GA 30346<br>**Resident Agent:**<br>Corporate Service Company<br>2711 Centerville Road, Suite 400<br>Wilmington, DE 19808 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

Civil Case No.  **08-0436-JDB**

### STATEMENT OF POINTS AND
### AUTHORITIES IN SUPPORT OF THE MOTION OF VACATION
### ACQUISITION, LLC, d/b/a VACATION EXPRESS FOR SUMMARY JUDGMENT

Defendant Vacation Acquisition, LLC, d/b/a Vacation Express ("Vacation

Express") submits this Statement of Points and Authorities In Support of the Motion of Vacation

Acquisition, d/b/a Vacation Express for Summary Judgment.  Vacation Express moves for

summary judgment  pursuant to Fed. R. Civ. P. 56(c) on all claims brought by Plaintiff Tech 7

Systems, Inc. ("Tech 7").  Vacation Express also respectfully requests a stay of further discovery

until the motion is decided.

### Preliminary Statement

Plaintiff filed its complaint in March 2008, seeking for the first time to assert

rights under a 1990 sales and licensing contract.  That contract gave Vacation Express a fully

paid-up, perpetual license to use Tech 7's reservation system software, known as "SpeedRes".

The system was plagued by problems and, within six or seven years, Vacation Express and Tech 7 had, for all intents and purposes, gone their separate ways. *All* of the acts that form the basis for the claims asserted in plaintiff's complaint occurred prior to 1998. Tech 7's own documents make this clear. Vacation Express is therefore entitled to summary judgment on all of plaintiff's claims because the statute of limitations has expired, or because the claims are barred by laches, waiver or estoppel.

## Overview of Grounds for Summary Judgment

There is no genuine issue of material fact in this action. Every alleged breach or violation of the Sale and Licensing Agreement ("SLA"), and every aspect of the claimed misappropriation of intellectual property, originally occurred in 1997 or 1998, and with the full knowledge and assent of Tech 7. For example, in 1997, Vacation Express stopped paying Tech 7 for maintenance and support, thereby cutting Tech 7 off from access to the software. Between 1997 and 2000, Tech 7 knew of and ratified Vacation Express's use of an outside vendor, Data Plus, to modify, maintain and repair Vacation Express's copy of the SpeedRes source code. In 1998, Tech 7 was aware of and did not protest or attempt to stop the transfer of SpeedRes to the new owner of Vacation Express, North American Leisure Group ("NALG"). In fact, it considered the SLA to have transferred to NALG.

In 1997 and 1998, Tech 7 could have brought the claims that it brings now, 11 years later. It did not. As a result, Vacation Express is entitled to summary judgment on all of Tech 7's claims because they are time barred by the statute of limitations or by reason of laches, waiver and estoppel.

It is also undisputed, based on Tech 7's own documents, that Tech 7 had no claim to assert against Vacation Express in the first place. It is clear from the documents Tech 7 produced in its initial disclosures, that Tech 7 interpreted the SLA as allowing other vendors to

provide modifications, maintenance and support to SpeedRes. Tech 7's position in this litigation is of recent vintage and at odds with its conduct throughout the 1990's. Historically Tech 7 chose not to sue customers who modified and maintained their own systems. As set forth in the SLA, the only legal consequence for a user that modified its own system was that the user voided the Tech 7 warranty.

Finally, Tech 7's own documents indicate that Tech 7 was aware in 1997 that Vacation Express had hired Data Plus to make modifications and perform maintenance and support on SpeedRes. Tech 7 did not object to Vacation Express using this outside vendor. It sought only to woo Vacation Express back as a maintenance and support customer. Having failed to bring this lawsuit at anytime during the 11 years since Tech 7 was relieved of its maintenance and support role, Tech 7 is now barred by laches from bringing its claims. Tech 7 also has waived any right to be the exclusive purveyor of maintenance and support services to Vacation Express, as it claims in this lawsuit.

## **Factual Statement**

The parties entered into the SLA in 1990. With the SLA, Vacation Express acquired a perpetual license to SpeedRes. Complaint ¶ 9 and Complaint Exh. 1, at p. 1.

Initially, Vacation Express used Tech 7 for support services including making custom modifications in the software for Vacation Express. (Declaration of Gantt Cookson ¶ 3.) Beginning in 1995, there were many quality programming issues. For example, new products and custom modifications failed to operate in accordance with specifications. Id., ¶ 5.

In 1995 and 1996, Vacation Express attempted to get Tech 7 to improve its service and make workable modifications to the software. Id., ¶ 6. Two 1995 memos from Vacation Express to Tech 7 register complaints with Tech 7 products. See Declaration of Gary L. Cutler in Support of Vacation Acquisition, LLC's Motion for Summary Judgment ("Cutler

Decl."), Exhs. 1 and 2. In 1996, Vacation Express sought a refund for its purchase of Tech 7's Toursource product. Cutler Decl., Exh. 3. The problems were apparently not confined to Vacation Express. On April 10, 1997, Tech 7's Jeffrey Kruse drafted a customer letter in which he referred to the reorganization of the Customer Service department and stated "the primary objective of this group is to increase Tech 7 customer satisfaction." Cutler Decl., Exh. 4.

By 1997, Vacation Express had given up on Tech 7's maintenance and support services, particularly in light of Tech 7's failure to adopt SpeedRes to airline booking programs. Vacation Express turned instead to Data Plus to perform modifications, maintenance and support. Cookson Decl., ¶¶ 5-9. Among other significant modifications it was able to accomplish, Data Plus developed code to allow Vacation Express access to Amadeus, an airline booking system. Given Vacation Express's experience with Tech 7's support services. Vacation Express had no confidence that Tech 7 could properly write such code, which was critical to the functioning of Vacation Express's business. Id., ¶ 8.

As confirmed in Tech 7's own documents and records, Tech 7 was aware of and accepted Vacation Express's use of Data Plus for maintenance and modifications – beginning in 1997 and for a period of years thereafter. Because Vacation Express was no longer using Tech 7 for maintenance and modifications, Vacation Express also stopped paying Tech 7's monthly support fee in 1997. Id., ¶ 9. Vacation Express also effectively cut-off Tech 7's access to Vacation Express's SpeedRes software. Id., ¶ 9.

None of this went unnoticed by Tech 7. In or about 1998 or 1999, a Tech 7 representative, Rhoda Harwood, began calling Vacation Express to get Vacation Express to return to Tech 7 for maintenance and modification work. Id., ¶ 10. Ms. Harwood repeatedly

called for about four years. Vacation Express refused to take up support service again from Tech 7. Id., ¶ 10.

All of this is confirmed in the documents Tech 7 produced as part of its initial disclosures. These documents show that in 1998, Tech 7 was aware that Vacation Express had engaged Data Plus for maintenance, support and modifications. The correspondence also demonstrates that Tech 7 accepted this situation, even as it tried to pitch Vacation Express for a new contract for support services.

(a) A May 14, 1998 email from Masood Saidi-Nejat of Tech 7 to Deanna Bernett and Jeff Kruse of Tech 7 entitled "VAE – Information for you to know . . ." lists for Vacation Express: "Report Writer DATA PLUS," "Service DATA PLUS support." See Cutler Decl., Exh. 5. Mr. Saidi-Nejat also stated in the email with respect to Y2K, "Data Plus told them that it will get done sometime soon." From the email it is clear that as of May 1998 Tech 7 was aware that Data Plus was Vacation Express's Report writer, service provider and Y2K upgrade provider.

(b) In a June 8, 1998 email from Jeff Kruse of Tech 7 to others at Tech 7, Mr. Kruse stated, "[j]ust some notes from visit to Vacation Express - Rhoda and I visited this account last Thursday and met with Gantt Cookson, Exec. Dir. *They are using Dataplus for service and customization.* They originally switched to Dataplus because Toursource had been installed for two years and was not working. Dataplus has had it for another two years and they are just switching to Beta this month. Gantt said that Dataplus service was good at first but now he is no better off. I suggest we send him a current proposal." See Cutler Decl., Exh. 6 (emphasis added). Again, Tech 7 was aware of and accepted the arrangement with Data Plus.

(c)  In a June 15, 1998 letter from Deanna Bernett, Marketing Executive at Tech 7 to Gantt Cookson of Vacation Express, Ms. Bernett confirmed that Tech 7 knew Vacation Express was receiving support services from Data Plus.  See Cutler Decl., Exh. 7.  Ms. Bernett then suggested to Mr. Cookson that Vacation Express may want to again consider using Tech 7.  Ms. Bernett stated, *"you are still receiving system support services from Data Plus,* but . . . you might want to take a look again at our support contract.  I have enclosed a Support Services contract for your consideration."  The remainder of the letter constitutes an effort to sell Vacation Express Tech 7's support services.  See Cutler Decl., Exh. 7 (emphasis added).  The document demonstrates Tech 7's awareness and acceptance of Vacation Express's arrangement with Data Plus.

(d)  In 2000, Tech 7 spent three days to a week investigating the changes Vacation Express had made to SpeedRes in an effort to sell Vacation Express a new maintenance and support services contract.  Cookson Decl., ¶ 11, Cutler Cert., Exh. 8.  At some point, Tech 7 was bought by Logibro of Montreal.  In 1998, Vacation Express was bought by NALG, which was using Logibro for other computer services.  In 2000, NALG decided to investigate the possibility of returning to Tech 7 for maintenance and modification services.  At that time, Tech 7 spent a week examining the changes that Vacation Express had made to the software since the mid-1990s.  Id., ¶ 11.  This fact is confirmed by Tech 7's own documents – its proposal to Vacation Express and time records of the Tech 7 employee who performed the review.  See Cutler Decl., Exh. 8.  Ultimately, NALG decided not to use Tech 7 for maintenance and modification services.  Cookson Decl., ¶ 11.  Significantly, the proposal Tech 7 presented to NALG treated the SLA as if it had fully transferred to NALG.  The proposal stated in relevant part: "[t]his proposal when

accepted by an authorized agent of VACATION EXPRESS and returned to

Logibro/Tech 7 Systems *will become an addendum to the Sales and Licensing Agreement*

*between VACATION EXPRESS and Tech 7 Systems, Inc."* (Cutler Cert., Exh. 8)

(emphasis added).

 (e)  In 2000, Gantt Cookson sent an email to Rhoda Harwood explaining that

Vacation Express was using a Data Plus product to replace a Tech 7 product for access to

Amadeus.  See Cutler Decl., Exh. 9.

 It is not surprising that Tech 7 chose not to sue Vacation Express when it became

clear that Tech 7 had lost Vacation Express as a support and service customer.  The SLA gave

Tech 7 no right to do so.  The use of a non-Tech 7 vendor to modify or revise the SpeedRes

software – the claim that underlies all of Tech 7's claims for monetary relief – had no

consequences under the contract, except to void the Tech 7 warranty.  The express terms of the

SLA make this clear.  So do Tech 7's own documents.

 In an April 9, 1999 letter from Jeff Kruse of Tech 7 to Kevin Hernandez of

Vacation Express, Tech 7 advertised its fix for Year 2000 Readiness.  Kruse stated:  "TECH 7

hereby wishes to remind all its customers, including customers who did not enter into a Support

and Maintenance Agreement with TECH 7, about some of our previous communications on the

subject."  See Cutler Decl., Exh. 10, p. 1.  "Please remember that any modifications, for Year

2000 purposes or otherwise, to the original licensed SPEEDRES software and system, made by

anyone other than TECH 7 effectively terminates any warranty remaining on your system."  See

Cutler Decl., Exh. 10, p. 2.  This document demonstrates that entering into a Support and

Maintenance Agreement with Tech 7 was optional, not mandatory, and the consequences of

going it alone were merely, "terminat[ion] of any warranty remaining on your system."

This point is driven home by the SLA, itself, which indicates that the only remedy Tech 7 reserved in the event of customer modification to the source code was the termination of the warranty. Article III, paragraph 4 of the SLA states in relevant part: "In no event will any warranty or liability on SELLER survive alteration or modification by anyone other than SELLER, unless SELLER agrees in writing."

Additionally, the SLA states that Help Desk support services and training are optional and not included in the agreement. Article III, paragraph 5 states in relevant part: "Help Desk support and additional training at either BUYER'S or SELLER's site are optional and not included in this Agreement."

In 2003, Data Plus went out of business. Since that time, Vacation Express has made its own arrangements for the maintenance and modifications of the software. Id., ¶ 12.

From the time that Vacation Express stopped using Tech 7 support and modification services in 1996-97 until the receipt of the demand letter from Tech 7 in January 2008, there was never any claim by Tech 7 that Vacation Express was in breach of its obligations under the 1990 license agreement. Id., ¶ 13.

**ARGUMENT**

Tech 7 purports to plead four counts in its Complaint. As a first count, it seeks equitable injunctive relief seeking permanent access to Vacation Express's software system. As a second count, Tech 7 seeks equitable injunctive relief to remove the software. As a third count, Tech 7 seeks money damages for breach of contract. As a fourth count, styled as "misappropriation of intellectual property", Tech 7 seeks equitable injunctive relief, compensatory and punitive damages. The claims for access to the software and removal of the software are derivative of the breach of contract claim. Vacation Acquisition, LLC, is entitled to summary judgment on each of these claims.

**A.    Vacation Express is Entitled to Summary Judgment
on the Misappropriation of Intellectual Property Claim**

**1.    Tech 7's Misappropriation of Intellectual
Property Claim Is Barred By Laches**

Tech 7's misappropriation of intellectual property claim (Count IV) is based on facts that Tech 7 has known since 1997. Because of Tech 7's 11-year delay in bringing suit, its misappropriation claim is barred by the equitable doctrine of laches.

The misappropriation claim is based on the following allegations in the complaint, each of which was known to Tech 7 beginning in 1997, when Vacation Express hired Data Plus to perform maintenance and repair and when Vacation Express stopped paying Tech 7 the monthly support fee:

> 37. Vacation Express has prevented Tech 7 from exercising any of its rights and powers as the owner of the Tech 7 Systems software and appropriated for its own use the software that was developed and owned by Tech 7 and its predecessors in interest.
>
> 39. The License Agreement with Vacation Express requires that Vacation Express preserve the copyright protection for the Tech 7 software.

40. Vacation Express has modified the proprietary product of Tech 7 without the consent of the licensor, to allow it to avoid paying for the Tech 7 support services that accompany the grant of the license.

41. Vacation Express has been operating as if it were the owner of the intellectual property rather than a mere licensee.

42. Vacation Express is profiting from the misappropriation of Tech 7's copyrighted software.

43 Vacation Express is profiting from the misappropriation of Tech 7's intellectual property.

Tech 7 also alleges that Vacation Acquisition, LLC failed to gain Tech 7's approval for the use of Tech 7 software. (See Complaint, ¶ 44). However, Tech 7 was aware in 2000 of a prior transfer of the software without Tech 7's approval – when NALG acquired Vacation Express. As noted above, a document produced by Tech 7 in its initial disclosures indicates that Tech 7 treated the SLA as if it had transferred to NALG in the sale. See Cutler Decl., Exh. 8 at p 1.

"Laches is an equitable defense that prevents a plaintiff, who with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." Danjac, LLC v. SONY Corp., 263 F.3d 942, 950 (9th Cir. 2001). Judge Learned Hand offered an often repeated rationale for the doctrine:

> It must be obvious to everyone familiar with equitable principles that it is inequitable for the owner of a copyright, with full notice of an intended infringement, to stand inactive while the proposed infringer spends large sums of money in its exploitation, and to intervene only when his speculation has proved a success. Delay under such circumstances allows the owner to speculate without risk with the other's money; he cannot possibly lose, and he may win.

Danjac, 263 F.3d at 951 (quoting Haas v. Leo Feist, Inc., 234 F. 105, 108 (S.D.N.Y. 1916)).

A presumption of laches is triggered if any claimed wrongful conduct occurred beyond the statute of limitations period. Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 837 (9th Cir. 2002). An allegation that the wrong is a continuing wrong does not shelter a

party from the defense of laches. Id., at 837. Otherwise, a party could delay filing a suit

indefinitely. Id., at 837. Tech 7 does not allege the statutory or common-law basis for its cause

of action for misappropriation of intellectual property. In no instance, however, would any

conceivable statute of limitations be long enough to reach events that occurred 11 years ago.[1]

Because the acts and events Tech 7 complains of were discovered by Tech 7 far longer than any

conceivable statute of limitations that would apply, there is a presumption of laches against Tech

7's claims.

In the event the presumption does not apply, "[t]o demonstrate laches, the

defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself."

Danjac, 263 F.3d at 951; Tillamook Country Smoker v. Tillamook County Creamery Assn., 311

F. Supp 2d 1023, 1029 (D. Or. 2004). A defendant's innocence and justifiable reliance on a

plaintiff's failure to prevent previous copyright infringement can lead to laches, barring the

assertion of copyright claims. Capitol Records, Inc. v. Naxos of America, Inc., 262 F.Supp. 2d

204, 212 (S.D.N.Y. 2003) (citing Saratoga Vichy Spring Co., Inc. v. Lehman, 625 F.2d 1037,

1041-1042 (2d Cir. 1980)(seven year failure to contest competitor's trade mark)).

"The relevant delay is the period from when the plaintiff knew (or should have

known) of the allegedly infringing conduct." Danjac, 263 F.3d at 952; Tillamook Country

Smoker, 311 F.Supp 2d at 1032. Tech 7's 11 year delay in bringing the current lawsuit is

unreasonable. See Era Publ'ns Int'l v. Henry Holt & Co., 873 F.2d 576, 585 (2d Cir.

1989)(holding that two year delay, combined with "severe prejudice" supports laches). In the

---

[1] Where a federal equitable action is not governed by a statute of limitations, courts look to the analogous state statute of limitations. See Jarrow Formulas, 304 F.3d at 836. The analogous state statute of limitations for misappropriation of intellectual property is fraud. See Jarrow Formulas, 304 F.3d at 838 (trademark infringement viewed as analogous to fraud for statute of limitations analysis). Under Oregon law, chosen by the parties to govern the SLA, the statute of limitations for fraud is two years from the date of discovery. Ram Technical Services, Inc. v. Koresko, 171 P.3d 374, 378 n 5 (Or. Ct. App. 2007); ORS 12.110(1).

face of Tech 7's knowledge and ratification of acts Tech 7 now alleges amount to

misappropriation, Vacation Express innocently and justifiably relied upon Tech 7's failure to

enforce alleged copyright infringements at the time.

Vacation Express suffers two forms of prejudice due to Tech 7's unreasonable

delay in bringing suit: 1) evidentiary and 2) expectations-based prejudice. See Danjac, 263 F.3d

at 955. As to the first, the passage of time has put many witnesses and numerous relevant

documents out of reach of the defendant. Vacation Express is in possession of few of the

documents that existed before Vacation Acquisitions acquired Vacation Express in December

2004. Cookson Decl., ¶ 14. It has virtually none of the correspondence with Tech 7 and other

related documents concerning: 1) the negotiation and initiation of the SLA in 1990; 2)

complaints Vacation Express made about Tech 7 software in 1995 and 1996; 3) stopping of the

monthly maintenance and support payment to Tech 7 by Vacation Express in 1997; 4) Tech 7's

awareness that Vacation Express had hired Data Plus to modify and maintain the SpeedRes

source code; 5) Tech 7's review in 2000 of Vacation Express's modifications to SpeedRes; 6) the

sale of Vacation Express to NALG or to FlightServe, Inc. Cookson Decl., ¶ 14. Additionally,

the Vacation Express employee who negotiated and interacted with Tech 7 from 1990 to 1995,

Bob Martin, is now deceased. Cookson Decl., ¶ 15.[2]

The second form of prejudice concerns the actions and consequences undertaken

by Vacation Express when Tech 7 failed to bring suit. Since that time, Vacation Express has

spent hundreds of thousands of dollars to make repairs and modifications to SpeedRes and to

---

[2] Tech 7's conduct in this case exacerbates Vacation Express's problem in getting access to evidence. It has so far produced only two documents called for by defendant's Request for Production of Documents served on June 6, 2008.

create applications for its business. The major applications that have been created over the years include the internet booking engine and the Airport Operations Menu. The Airport Operations Menu performs a number of important functions. Among them is the printing of passenger manifests and boarding passes. Cookson Decl., ¶ 16. Vacation Express had no inkling that any of its modifications and applications would someday be challenged. As a result of the modifications, the SpeedRes system is customized to fit Vacation Express's needs. Cookson Decl., ¶ 16. Now, 11 years later, Tech 7 demands that all of that work and expense be destroyed.

### 2.    Tech 7 Has Waived Its Claims

Tech 7's claims are also barred by the equitable doctrine of waiver. A claim of waiver requires proof of an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it. Capitol Records, Inc., 262 F.Supp.2d at 211. To establish abandonment, a defendant must show an intent by the copyright holder to surrender rights in the work and an overt act evidencing that intent. Id. at 211-212.

The 1998 emails and 1999 letter demonstrate that Tech 7 acknowledged and ratified its customers' access to SpeedRes source code to perform modifications, maintenance and support. The 2000 review by Tech 7 of Vacation Express's software also demonstrates plaintiff waived any alleged right to pre-approve transfer of the software. Tech 7 did this in a bid to gain Vacation Express back as a customer. The proposal, itself, indicates Tech 7 considered the SLA to have transferred to NALG. Once having abandoned the rights it asserts under copyright, Tech 7 has waived its claim for misappropriation of intellectual property.

### 3.    Tech 7 is Estopped from Making its Claims

Tech 7 is also estopped from making the claims it asserts in this action. Equitable estoppel requires a showing of 1) an act constituting a concealment of facts or a false misrepresentation; 2) an intention or expectation that such acts will be relied upon; 3) actual or

constructive knowledge of the true facts by the wrongdoers; 4) reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment. General Electric Capital Corp. v. Eva Armadora, S.A., 37 F.3d 41, 45 (2d Cir. 1994.)

Tech 7 is estopped from its claims because it never revealed its intention to assert rights under the SLA that Tech 7 allowed to lie dormant – particularly while Tech 7 was trying in 1999 and 2000 to win back Vacation Express as a customer. Vacation Express relied upon this misrepresentation to its detriment by expending hundreds of thousands of dollars on modifications to its SpeedRes system that Tech 7 would now have nullified.

As a result of the foregoing, Vacation Express respectfully requests that the Court enter an order for summary judgment dismissing Tech 7's claim for misappropriation of intellectual property.

**B.      Vacation Express is Entitled to Summary Judgment on the Breach of Contract Claims.**

**1.      The Statute of Limitations on the Breach of Contract Claim Has Expired**

Tech 7's claim for breach of contract is based upon alleged breaches that Tech 7 was aware of from 1997 to 2000. As a result, the six year Oregon statute of limitations bars Tech 7 from bringing this claim.

Tech 7 claims Vacation Express breached the SLA in a number of ways (see Complaint, ¶ 33):

> *"a. Refusing Tech 7 to access the system either via communications link or through inspection at the Vacation Express office."*

Tech 7 was cut-off from access to the Vacation Express system in 1997. If it had a right to demand access, the law required that it timely assert or sue upon that right. Tech 7 did not. The statute of limitations on this claim expired many years ago.

> *"b. Allowing persons unaffiliated with Tech 7 to modify, revise and add to the software, and expand the number of users of the software, without seeking the advance approval of Tech 7."*

Vacation Express first allowed an "unaffiliated person" to modify its system when it replaced Tech 7 with Data Plus.  As the documents show, Tech 7 knew that Data Plus had been substituted in 1997.  Tech 7 failed timely to bring suit.

> *"c. Hiring the unauthorized Data Plus contractors to modify the software, knowing that such persons were former employees of Tech 7 Systems, Inc."*

This alleged breach also occurred in 1997.

> *"d. Transferring the software to entities which were not approved to use the software by Tech 7."*

This alleged breach occurred in 1998 when Vacation Express was purchased by My Travel PLC and made a part of its subsidiary, NALG.  Tech 7 was fully aware of Vacation Express's use of SpeedRes after NALG acquired Vacation Express.  In 2000, Tech 7 was invited by NALG to review the changes made by Data Plus to the Vacation Express system.  In making its proposal to NALG, Tech 7 considered the SLA to have transferred to NALG.

> *"e. Failing to pay Tech 7 for modifications to the software, with such modification work to be contracted on an hourly basis."*

This alleged breach occurred with the hiring of Data Plus in 1997.

> *"f. Failing to pay Tech 7 for additional license fees arising from the expanded use of the software to the estimated 75 users."*

This alleged breach occurred when Vacation Express stopped paying Tech 7 for maintenance and support in 1997 and took on Data Plus as its maintenance and service vendor.

> *"g. Modifying the Tech 7 software source code to allow Vacation Express to use an unapproved web booking engine and thereby bypassing the Tech 7 booking engine."*

This alleged breach occurred when source code was first modified with the hiring of Data Plus in 1997.

*          *          *

The claimed contract breaches arose in 1997 and continued through 2000 with the full knowledge of Tech 7. Tech 7 failed to sue on those breaches and is barred by the applicable statutes of limitations from bringing this suit. The SLA is governed by the laws of Oregon. See SLA Article IV, ¶ 8. In Oregon, actions for breach of contract are governed by a six year statute of limitations. ORS 12.080(1); Neff v. Jackson County, 67 P.3d 977, 981 (Or. Ct. App. 2003); Bruns v. Walters, 28 P.3d 646, 649 (Or. Ct. App. 2001); Fontana v. Steenson, 929 P.2d 336, 337 (Or. Ct. App. 1996). As a result, the statute of limitations on Tech 7's claims for breach of contract expired in 2003.

### 2.    <u>The Breach of Contract Claim Is Barred By Laches</u>

In determining what is an unreasonable length of time to bring a claim in Oregon, courts look to the analogous statute of limitations. Fontana, 929 P.2d at 337. If the action is commenced after the expiration of the analogous statute of limitations (six years, in the case of breach of contract), the plaintiff must prove the absence of laches. Bruns, 28 P.3d at 649; Fontana, 929 P.2d at 337. "In other words, there is a rebuttable presumption that the elements of laches have been sufficiently proven." Fontana, 929 P.2d at 337.

A defendant need only offer uncontroverted evidence of the date of the event giving rise to plaintiff's claim in order to make out a prima facie showing of laches. See Fontana, 929 P.2d at 337 (defendant offered proof that partnership dissolved more than six years prior to the time plaintiff brought his claim for an accounting). To defeat the defense of laches, it is then up to the plaintiff to offer evidence that would entitle it to a directed verdict at trial if uncontroverted. Fontana, 929 P.2d at 337.

Without the presumption of laches, a defendant must demonstrate: 1) plaintiff delayed in asserting his claim; 2) with full knowledge of all relevant facts; 3) resulting in substantial prejudice to defendant such that it would be inequitable for a court to grant relief. Fontana, 929 P.2d at 337 (quoting Mattson v. Commercial Credit Business Loans, 723 P.2d 996 (1986)). A disadvantageous change in position can constitute such prejudice. Bruns, 28 P.3d at 650. Here prejudice is demonstrated by the hundreds of thousands of dollars Vacation Express spent devising new applications and maintaining and repairing its software system.

### 3.    The Breach of Contract Claim Has Been Waived

Waiver is the relinquishment of a known right. IKON Office Solutions v. American Office Products, Inc., 178 F. Supp.2d 1154, 1165 (D.Or. 2001). Here Tech 7 relinquished the various rights it claims when it accepted Vacation Express's use of Data Plus in 1997 to make modifications, repairs and service to SpeedRes, and it accepted the transfer of Vacation Express from Vacation Express, Inc. to NALG in 1998, all for the purpose of attempting to woo Vacation Express's business back.

### 4.    The Breach of Contract Claim is Barred By Estoppel

Equitable estoppel is employed to prevent a person from proving an important fact to be something other than what, by act or omission, he has led another party justifiably to believe. IKON Office Solutions, 178 F.Supp. 2d at 1164; see also, Belleville v. Davis, 498 P.2d 744, 749 (Or. 1972)(estoppel against asserting an interest in real property).

Here Tech 7, by failing to protest the transfer of ownership to NALG and tolerating the use of Data Plus and Vacation Express's own modifications to the software, is now estopped from claiming those rights.

C.    **Vacation Express is Entitled to Summary Judgment on the
      Claim for Injunctive Relief for Access to the Software**

        Count I, the claim for injunctive relief for permanent access to the software is

barred by the statute of limitations, laches, waiver and estoppel.  The claim is founded on an

alleged right in the SLA for Tech 7's access to the software during business hours.  See

Complaint, ¶ 25.  Tech 7 has not had permanent, daily access to the software since the early

1990's when it provided regular maintenance and support services.  Vacation Express terminated

that relationship in 1997 when it stopped paying Tech 7 and hired Data Plus.  As a result, any

breach of this aspect of the SLA occurred in 1997.  The statute of limitations on the claim for

permanent access therefore lapsed in 2003.

        Additionally, inasmuch as 11 years have transpired since Vacation Express barred

Tech 7 from daily access, a prima facie case of laches has been demonstrated.  Because Tech 7

consented to this situation for four years, while it sought to negotiate a renewed contract for

maintenance and support services, Tech 7 has waived its right to access.  Additionally, it is

estopped from asserting its right due to its silence on the issue from 1997 to 2008.

D.    **Vacation Express is Entitled to Summary Judgment
      on the Claim for Injunctive Relief for Removal of the Software**

        Similarly, Count II, the claim for equitable injunctive relief for removal of the

software system is barred by the statute of limitations, laches, waiver and estoppel.  This alleged

claim also derives from the SLA.  Tech 7 alleges that it has the right to enter Vacation Express's

premises to enforce any provision of the Agreement and enjoin any breach.  See Complaint, ¶ 30.

Tech 7 also alleges there have been multiple breaches.  See Complaint, ¶ 31.  Yet, Tech 7 could

have exercised these alleged rights at any time between 1997 and 2000 when it was aware of the

same alleged breaches it now complains about.  The statute of limitations began running in 1997

and lapsed in 2003.  The 11 years Tech 7 allowed to transpire before seeking this relief invokes

laches. Because Tech 7 consented to these alleged breaches for four years in an effort to regain a contract for maintenance and support services, Tech 7 has waived its right to access. Additionally, it is estopped from asserting its right due to its silence on the issue from 1997 to 2008.

**E.** **A Stay of Discovery Is Warranted**

       The parties currently have an August 22, 2008 discovery deadline. Tech 7 is seeking upwards of four depositions, while Vacation Express has noticed two. Given the meritorious nature of Vacation Express's limitation defenses, it would be a waste of precious litigation resources to go forward with the depositions and document discovery before this motion is decided. Tech 7 will be not prejudiced by such a stay. It has already obtained, under court order, full access to the SpeedRes software. It has used that access to make an expansive investigation and record of all of the SpeedRes modifications. Tech 7 programmers have used this right of access to explore virtually every aspect of Vacation Express's ongoing business. As a result, Vacation Express respectfully asks the Court to enter a discovery stay until the resolution of this motion.

## Conclusion

For all of the above reasons, Vacation Express respectfully requests that the Court grant its motion for summary judgment dismissing all claims by Tech 7.  Vacation Express also requests an order staying discovery until the motion is decided.

Dated:  July 28, 2008                                   Respectfully submitted,


                                                        **CURTIS, MALLET-PREVOST, COLT**
                                                        **  & MOSLE LLP**


                                                        _____/s/_____
                                                        Jeffrey I. Zuckerman
                                                        D.C. Bar #369120
                                                        1200 New Hampshire Avenue, N.W.
                                                        Suite 430
                                                        Washington, D.C. 20036
                                                        Tel:  (202) 452-7373
                                                        Fax:  (202) 452-7333

                                                        Admitted pro hac vice:
                                                        Gary L. Cutler
                                                        Priya Swaminathan
                                                        Curtis, Mallet-Prevost, Colt
                                                          & Mosle LLP
                                                        101 Park Avenue
                                                        New York, NY  10178
                                                        Tel:  (212) 696-6000
                                                        Fax:  (212) 697-1559
                                                        Email: gcutler@curtis.com
                                                                   pswaminathan@curtis.com

Of Counsel:
Turner Smith
Curtis, Mallet-Prevost, Colt
  & Mosle LLP
101 Park Avenue
New York, NY  10178
Tel:  (212) 696-6000
Fax:  (212) 697-1559
Email:  tsmith@curtis.com

cc:
David H. Dickieson, Esq.
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C.  20004
Tel.:  (202) 628-4199
Fax:  (202) 628-4177
Email:  ddickieson@schertlerlaw.com

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

**TECH 7 SYSTEMS, INC.,**                                      )
  840 Courtland Avenue                                )
  Park Ridge, IL 60068                                 )
                                                    )
                     Plaintiff,                      )
                                                    )
            vs.                                  )    **Civil Case No.  08-0436**
                                                    )
**VACATION ACQUISITION, LLC, d/b/a**               )
**VACATION EXPRESS**                                 )
  301 Perimeter Center North, Suite 500               )
  Atlanta, GA 30346                                  )
**Resident Agent:**                                   )
  Corporate Service Company                           )
  2711 Centerville Road, Suite 400                     )
  Wilmington, DE 19808                               )
                                                    )
                    Defendant.                      )

## <u>ORDER</u>

       This matter having come before the Court upon the Motion of Vacation

Acquisition, LLC d/b/a Vacation Express for Summary Judgment; and

       Vacation Acquisition, LLC d/b/a Vacation Express having moved for a stay of

discovery pending resolution of the Motion; and

       For good cause shown, it is hereby

       **ORDERED** that the Motion is **GRANTED**; and it is further

       **ORDERED** that discovery in this action is stayed until the Court renders a

decision on the Motion.

**SO ORDERED**

_____
JOHN D. BATES
United States District Judge

Dated:

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

**TECH 7 SYSTEMS, INC.,**                                    )
  840 Courtland Avenue                                   )
  Park Ridge, IL 60068                                   )
                                         )
                         Plaintiff,      )
                                         )
                 vs.             )     **Civil Case No.  08-0436**
                                         )
**VACATION ACQUISITION, LLC, d/b/a**                          )
**VACATION EXPRESS**                                          )
  301 Perimeter Center North, Suite 500                  )
  Atlanta, GA 30346                                      )
**Resident Agent:**                                          )
  Corporate Service Company                              )
  2711 Centerville Road, Suite 400                       )
  Wilmington, DE 19808                                   )
                                         )
                    Defendant.       )

## ORDER

This matter having come before the Court upon the Motion of Vacation Acquisition, LLC d/b/a Vacation Express for Summary Judgment; and

Vacation Acquisition, LLC d/b/a Vacation Express having demonstrated that there are no genuine issues of material fact; and

For good cause shown, it is hereby

**ORDERED** that pursuant to Fed. R. Civ. P. 56(c), the Motion is **GRANTED**; and it is further

**ORDERED** that Counts I, II, III and IV of Plaintiff Tech 7 Systems, Inc.'s Complaint are hereby dismissed.

**SO ORDERED**

_____
JOHN D. BATES
United States District Judge

Dated: